## IN THE UNITED STATES DISTRICT
## COURT FOR THE DISTRICT OF COLUMBIA

SOUTHEAST LAND DEVELOPMENT )
ASSOCIATES, L.P *et al.*                 )          Civil Action No. 05-1413 (RJR)
　　　v.                                          )
　　　　　　　　　　　　　　　　　　）
THE DISTRICT OF COLUMBIA, *et al.*  )
　　　　　　　　　　　　　　　　　　）
　　　　　　Defendant.                    )
_____)

## MOTION OF DEFENDANTS DISTRICT OF COLUMBIA AND ANTHONY A. WILLIAMS TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM

Defendants District of Columbia and Mayor Anthony A. Williams move to dismiss the

Complaint, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, for

lack of jurisdiction over the subject matter and failure to state a claim upon which relief can be

granted.

Under well established principles, the Court lacks subject-matter jurisdiction for a number

of reasons, any one of which is sufficient to require dismissal of the suit.

1.  Plaintiffs do not have standing to bring the present action;

2.  Plaintiffs have not presented a justiciable case or controversy;

3.  Plaintiffs' claim is not ripe for decision;

4.  Plaintiffs have not presented and cannot present a case for equity jurisdiction.

Under equally well established principles, Plaintiffs have also failed to state a claim on

which relief can be granted because the provisions of law on which they rely do not uphold their

claims.

1

This motion is supported by a memorandum of points and authorities. A proposed Order accompanies the motion.

Dated:  July _____, 2005

Respectfully submitted,

ROBERT J. SPAGNOLETTI
Attorney General for the District of
Columbia

GEORGE C. VALENTINE
Deputy Attorney General in Charge of
the Civil Division

EDWARD TAPTICH
Section Chief, Equity II

_____

DANIEL A. REZNECK 31625
Senior Assistant Attorney General
for the District of Columbia
441-4th St., N.W., 6th floor South
Washington, D.C., 20001
Attorney for Appellee
(202) 724-5691

## IN THE UNITED STATES DISTRICT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SOUTHEAST LAND DEVELOPMENT | ) | |
| ASSOCIATES, L.P. *et al.* | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Civil Action No. 05-1413 (RWR)** |
| v. | ) | |
| | ) | |
| THE DISTRICT OF COLUMBIA, et al. | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM

Plaintiffs are attempting to stop the proposed baseball stadium in its tracks by this action. Indeed, as shown in their prayer for relief, they are seeking to enjoin the District not only from exercising its power of eminent domain but even from making an offer to plaintiffs to buy their properties and negotiate with them for a voluntary purchase; such negotiations are a statutory prerequisite to the exercise of the power of eminent domain. They seek to embroil this Court into participating in a controversy that may be entirely academic, depending on the course of events which have not even happened. This Court – a federal court of limited jurisdiction-- should decline the invitation to inject itself into what is in essence a local land use dispute which the local courts of the District of Columbia are entirely competent to decide.

Plaintiffs seek injunctive and declaratory relief for alleged violation of two acts of the Council of the District of Columbia relating to baseball in the District of Columbia, the Ballpark Omnibus Financing and Revenue Act of 2004 (Act 15-717)("the Act"), and the Private or

Alternative Stadium Financing Act and Cost Trigger Emergency Act of 2004 (Act 15-718)("the

Emergency Act"). (These Acts are attached hereto as Appendices A and B).

The Act (Appendix A) is silent as to a requirement that eminent domain must be utilized to

acquire Plaintiffs' property or anybody else's. The only reference to eminent domain is in

Section 102(c)(3), which provides that funds raised for the projected ballpark may be used to

defray costs "arising out of or relating to the acquisition of real property, by *purchase*, *lease*, or

condemnation in accordance with D.C. Official Code §§16-1311 through 16-1321, *or other*

*means of acquiring or assembling real property or interests in real property*, including rights-of-

way or other easements, that will serve as the site for the ballpark…"(Emphasis supplied).

Under D.C. law referred to in the Act, Section 16-1311, entitled "Condemnation

proceedings by the District of Columbia," eminent domain is not available to the District

government unless it has been unsuccessful in acquiring the property through negotiations.

Section 16-1311 provides in relevant part:

> When real property in the District of Columbia is needed by
> the Mayor of the District of Columbia for…rights-of-way…or any
> other authorized municipal use, *and that property cannot be*
> *acquired by purchase from the owner thereof at a price*
> *satisfactory to the officers of the District authorized to negotiate*
> *for the property*, a complaint may be filed in the Superior Court of
> the District of Columbia in the name of the District of Columbia
> for the condemnation of the property or rights-of-way and the
> ascertainment of its value.(Emphasis supplied).

The D.C. statutes, like the Fifth Amendment to the U.S. Constitution, require that "just

compensation" be paid to the owner of the property for the taking, if it occurs. See §§ 16-1314 et

seq.

Section 107(d) of the Act also provides that "Prior to May 15, 2005, and prior to the date

upon which the District enters into any obligation to acquire or purchase any property" on the

primary ballpark site, the Chief Financial Officer of the District of Columbia ("CFO") "shall re-estimate the costs to the District for land acquisition and infrastructure and provide a report on this re-estimate to the Mayor and the Council."

Section 107(e) further provides:

> If the total amount of these re-estimated costs to the District exceeds $165 million, the primary ballpark site shall be deemed financially unavailable by the District pursuant to this title. Pursuant to this title, the Mayor and the Sports and Entertainment Commission shall pursue replacement of the primary ballpark site with a substantially less costly site in the District, subject to the approval of Baseball Expos, L.P., or its assigns or successors, in accordance with the Baseball Stadium Agreement.

As to the Emergency Act (15-718), there is not a word in it about eminent domain. Sections 3(c) and (d) of the Emergency Act simply track *in haec verba* the language of Sections 107(d) and (e), described and quoted above.

As shown by the Declaration of Joseph Wolfe, of the Office of Property Management of the District government, who is a Project Manager responsible for land acquisition related to this project, the District has not sought to exercise the power of eminent domain over Plaintiffs' properties. (Appendix C, Wolfe Dec. ¶ 15). There has been no exercise of the power of eminent domain by the filing of a condemnation complaint (*Id.*), and this Court can take judicial notice of the absence of the filing of any such complaint in this Court or the Superior Court as to Plaintiffs' properties or anybody else's in connection with the baseball stadium project. Likewise, there have been no offers by the District to purchase of any of the properties, or negotiations between Plaintiffs and their counsel on the one hand and District officials on the other, which are a prerequisite to the filing of a condemnation complaint under Section 16-1311. (*Id.* at ¶ 14). No notices to vacate have been given to any of the owners or occupants of these properties. (*Id.* at ¶16).

Not only have there been no such filings and no such offers or negotiations, there have also been no finalized appraisals of any of Plaintiffs' properties; such appraisals would be a prerequisite to the commencement of negotiations (*Id.* at ¶ 12). Indeed, Mr. Wolfe's requests to Plaintiffs Southeast Land Development Associates and Square 706 and their counsel to permit entry for inspection of the properties by the District's environmental consultant, to obtain information relevant to making an offer to Plaintiffs, have not been agreed to. (*Id.* at ¶ 13).

Under these circumstances, as we shall now show, there is no subject-matter jurisdiction in this Court for numerous reasons. Judge Alprin recently so held in a case brought in the Superior Court by another landholder on the stadium site on essentially the same theory asserted by the Plaintiffs here – that the District's CFO failed to perform adequately the duty imposed on him by the Council to reestimate costs. (A copy of Judge Alprin's Opinion is attached as Exhibit D.) Judge Alprin also held that the plaintiffs there had failed to state a claim on which relief could be granted because the Council of the District did not intend to create a private right of action to enforce the D.C. statute mandating cost reestimates.

The present suit is a transparent effort to make an end run around Judge Alprin's decision by dressing up the Plaintiffs' claims in the garb of Section 1983 and two provisions of the U.S. Constitution, the Takings Clause and substantive due process. As we shall show, the law does not accord validity to such efforts, especially in the context of local land use disputes, and they have been frequently rebuffed.

The Plaintiffs also try to perform a feat of acrobatics in an effort to avoid the effect of the Supreme Court's recent decision in *Kelo v. City of New London*, 2005 U.S. Lexis 5011 (2005), on the Takings Clause of the Fifth Amendment. We will discuss *Kelo* at greater length later. Suffice it to say at this point that even the dissenters in *Kelo*, led by Justice O'Connor,

4

acknowledged and agreed that a prime example of taking property for public use is "a stadium." 2005 U.S. Lexis 5011, slip opinion at p. 16.

Plaintiffs have a huge barrier to scale to overcome these pronouncements. Their suggestion that construction of the new stadium is concededly a "public use" if cost reestimates are below $165 million, but are mysteriously transmuted into a forbidden "private use" if the costs had exceeded $165 million might appeal to a medieval alchemist. But it finds no warrant in the statutory language or purpose, which are clearly to the contrary. The suit, which has been widely reported in the media, should be dismissed forthwith, to dispel any cloud it may have cast over the baseball stadium project.

I.    Plaintiffs Have Not Established and Cannot Establish Subject-Matter Jurisdiction over the Case in this Court.

The principles governing decision on a motion to dismiss, pursuant to Rule 12(b)(1), are well settled:

> On a motion to dismiss pursuant to Rule 12(b)(1), *the plaintiff bears the burden of establishing that the court has jurisdiction.* In evaluating whether subject-matter jurisdiction exists, the court must accept all the complaint's well-pled factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *The Court is not required, however, to accept inferences unsupported by the facts or legal conclusions that are cast as factual allegations.*
> Moreover, the court need not limit itself to the allegations of the complaint. Rather, the court may consider such materials outside the pleadings as it deems appropriate to determine whether it has jurisdiction in the case.

*Lockamy v. Truesdale*, 182 F.Supp.2d (D.D.C. 2001)(citations omitted)(Emphasis supplied).

A.    Plaintiffs Do Not Having Standing to Bring the Present Action.

The Supreme Court held in *Warth v. Seldin*, 422 U.S. 490 (1975), that standing and justiciability must be established at the outset: "This is the threshold question in every federal case, determining the power of the court to entertain the suit. The Court went on: "A federal court's jurisdiction can therefore be invoked only when the Plaintiff himself has suffered some threatened or actual injury resulting from the putatively illegal action . . . ." 422 U.S. at 499.

A demonstration of standing by the plaintiff requires, as an "irreducible constitutional minimum" (1) that the plaintiff have personally suffered a "concrete and particularized" injury in fact, (2) that the injury be "fairly traceable to the challenged action of the defendant," and (3) that it be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *accord Valley Forge Christian College v. Americans United for Separation of Chuch and State*, 454 U.S. 464, 472 (1982); *San Diego Gun Rights Committee v. Reno.* 98 F.3d 1121, 1126 (9th Cir. 1996). The "injury in fact" must be "actual or imminent" and not "conjectural" or "hypothetical." *Lujan*, 504 U.S. at 560.[1]

Not only must these constitutional requisites for standing be met, but further prudential considerations must be satisfied for a plaintiff to have standing. Thus, as a prudential matter, a court may decline to exercise jurisdiction, *i.e.*, may deny standing, "to litigants who present abstract questions of wide public significance," *Navegar Inc. v. United States*, 103 F.3d 994, 998 (D.C. Cir. 1997), or a generalized alleged grievance shared by a large class of citizens. *See Valley Forge Christian College*, 454 U.S. at 474-475.

Plaintiffs fail to meet both constitutional and prudential requirements for standing in this case.

---

[1] *See also Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).

First, "injury in fact" is totally lacking. It is neither "actual or imminent;" it is "conjectural" or "hypothetical" within the meaning of *Lujan*.

At this point, it is impossible to see "actual" injury to Plaintiffs. Conclusory allegations to that effect do not suffice even under Rule 12(b)(6), much less under 12(b)(1), where the Court must make an independent judgment whether there is jurisdiction based on the record. *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276, (D.C. Cir. 1994); *Haase v. Sessions*, 835 F.2d 902, 905-06 (D.C. Cir. 1987).

Nor is it possible to see how any "injury in fact" could be "imminent." Even if the filing of a condemnation suit could constitute ever constitute "harm" -- a dubious proposition in view of the Constitutional and statutory right to just compensation -- it is not "imminent." A number of procedural steps would have to be taken first. The District has not even made an offer to purchase or commenced negotiations with Plaintiffs or given a notice to vacate, much less asserted its power of eminent domain. If ever an alleged injury was "conjectural" or "hypothetical" within the meaning of *Lujan*, this is it.

Second, it is impossible to see any injury "fairly traceable to the challenged action of the defendant," *Lujan*, 504 U.S. at 560-561. Since the harm has not occurred and is "conjectural" and "hypothetical," there is no causal nexus between any action of the District and any alleged harm to Plaintiffs. Certainly Dr. Gandhi's conclusions in his Cost Re-Estimate Study are not the source or cause of any such injury.

Third, the redress or relief Plaintiffs are seeking is to stop the whole project dead in its tracks and block the District from taking any action to acquire their property, even by purchase. Prayer for Relief, ¶C, p.14. Far from redressing the alleged injury, that relief might well send property values plunging downward in the area where Plaintiffs' properties are located, and

others would suffer as well as Plaintiffs, such as people who have invested nearby in reliance on the project.

A recent opinion by the Seventh Circuit, on remarkably similar facts, perceptively analyzes the concept of Constitutional injury. *Patel v. City of Chicago*, 383 F.3d 569 (7th Cir. 2004). There the City of Chicago had put certain properties on a target list for potential acquisition. The City actually went farther than the District has done here, since it sent letters containing offers to purchase certain of the properties and indicating its intention to commence eminent domain proceedings if the offers were declined. 383 F.3d at 571-572.   In affirming a Rule 12(b)(1) dismissal, the Court of Appeals said:

> The City has not initiated eminent domain proceedings against the Plaintiffs' property let alone failed to provide just compensation for taking those properties.  Hence, *the Plaintiffs have suffered no injury under the Constitution.* Moreover, we have specifically rejected taking claims, like the Plaintiffs', which alleged injury arising from a property's placement on a list of potential targets for eminent domain proceedings.

383 F.3d at 574 (citations omitted) (emphasis supplied).

(We discuss *Patel* further in connection with the "ripeness" doctrine, another ground for dismissal of the present complaint.)

We urge this Court to follow the reasoning of *Patel* and reach the same result.

B. Plaintiffs Have Not Presented a Justiciable Case or Controversy.

Many years ago Chief Justice Hughes wrote of the "case or controversy" requirement for justiciability:

> A "controversy" in this sense must be one that is appropriate for judicial determination. *A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical character, from one that is academic or moot.* The controversy must be definite and concrete touching the legal relations of the parties having adverse legal interests. It must be a real and

>    substantial controversy admitting of specific relief through a
>    decree of conclusive character, *as distinguished from what the law*
>    *would be upon a hypothetical statute of facts.*

*Aetna Life Ins. Co. v. Haworth*, 300 U.S. 229, 240-241 (1937) (emphasis supplied).

Thus, as Professor Charles Alan Wright has written, the United States courts "will not give advisory opinions"—he calls this "the oldest and most consistent thread in the federal law of justiciability…" Wright, *The Law of Federal Courts*, at 57 (4th edit. 1983). Whereas standing focuses on the plaintiff seeking adjudication of a particular issue, "case or controversy" focuses on "whether the issue itself is justiciable." *Id.* at 62-63.

We submit that the present suit is a classic example of a request for an advisory opinion. The whole case is premised on  a hypothetical state of facts – that the District will condemn Plaintiffs' property by eminent domain because no agreement can be reached with them through negotiations, which have not even begun since the District has not yet made them an offer as it is statutorily required to do before commencing eminent domain proceedings.

A more clearly hypothetical case can scarcely be imagined.  The Court cannot know at this time whether hypothesis will become reality. The Court is being asked to decide this case on a concededly speculative and hypothetical state of facts, which may never come into existence. This case lacks the concreteness necessary for informed decision-making. Nothing has happened yet to supply that concreteness and sharpen the focus of the inquiry.

We take it that the Court does not claim a "roving commission" to inquire into Dr. Gandhi's conduct of his office, to scrutinize his "good faith" in rendering his report, or to carry out its own independent investigation of the costs of building a new stadium, involving as this would such esoteric matters as land acquisition costs, environmental remediation costs, and infrastructure requirements, all of which are implicated by the present complaint. *See, e.g.,*

9

Complaint ¶ 21. Judge Alprin quite rightly disclaimed such a commission in the *Siegel* case. (See Appendix D at pp. 6-7.)

The Court should decline Plaintiffs' invitation to preside over and resolve a debate over the costs of the new stadium and to provide essentially an advisory decision outside the context of a true case or controversy between the parties. The case is not ripe for judicial decision, as we now demonstrate.

C.    Plaintiffs' Claim is Not Ripe for Decision

Few propositions are better established in the law of eminent domain than that a plaintiff cannot attack an underlying statutory or regulatory program or agency decision seeking to implement that program by eminent domain before the completion of eminent domain proceedings.

The leading case is *Williamson Planning Comm'n v. Hamilton Bank*, 473 U.S. 172 (1985), cited and followed by Judge Alprin. There a developer obtained Planning Commission approval of a plan for development of a tract in accordance with then existing statute and regulations. When the Planning Commission refused to give final approval to the proposed development, a successor in interest to the original developer sued, alleging that the refusal constituted an unlawful taking. The Supreme Court held that the claim could not go forward because of the lack of finality in the agency decision and the failure of the plaintiff to seek just compensation in a condemnation proceeding. The Court held that the claim was not ripe for decision, citing numerous cases in the field of eminent domain. *See* 473 U.S. at 186-187. The Court held that the property owner was required to go through the state procedures for securing payment of just compensation, stating:

> The Fifth Amendment does not proscribe the taking of
> property; it proscribes taking without just compensation. Nor

does the Fifth Amendment require that just compensation be paid in advance of, or contemporaneously with, the taking; all that is required is that a "reasonable, certain, and adequate provision for obtaining compensation," exist at the time of taking. If the government has provided an adequate process for obtaining compensation, and if resort to that process "yield[s] just compensation," then the property owner "has no claim against the Government" for a taking…Similarly, if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation.

473 U.S. at 194-95 (citations omitted).

The ripeness doctrine, like that of standing, "is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *National Park Hospitality Ass'n v. Dept. of the Interior*, 538 U.S. 803 1808 (2003) (quoting *Reno v. Catholic Social Services*, 509 U.S. 43, 57 n.18 (1993)). The doctrine ensures that "the requisite injury is in sharp enough focus and the adversariness of the parties concrete enough to permit a court to decide a real controversy and not a set of hypothetical possibilities." *Martin Tractor Co. v. Federal Election Comm'n*, 627 F.2d 375, 379 (D.C. Cir. 1980). Further, with respect to the prudential aspects of the doctrine:

> *[R]ipeness is in part an expression of the court's inherent discretion when declaratory or injunctive relief is sought.* The [Supreme] Court has noted the importance of discretion when called upon to make a declaration of right, repeating its caution "against declaratory judgments on issues of public moment, even falling short of constitutionality, in speculative situations.

*Id.* (quoting *Public Affairs Assoc. v. Rickover*, 369 U.S. 111, 112 (1962) (emphasis supplied).

Lack of ripeness is jurisdictional in nature, requiring the dismissal of an unripe case, as the Courts have repeatedly held. *See, e.g., Taylor Investment, Ltd. v. Upper Darby Township*, 983 F.2d 1285, 1289-90 (3rd Cir. 1993); *Estate of Himelstein v. City of Fort Wayne*, 898 F.2d

573, 576-77 (7th Cir. 1990); *St. Clair v. City of Chicago*, 880 F.2d 199 (9th Cir. 1989); *Bateman v. City of West Bountiful*, 89 F.3d 704, 706 (10th Cir. 1996).

Moreover, *the* Supreme Court made clear that the ripeness doctrine of *Williamson* applies to Section 1983 claims both for unlawful taking and substantive due process.  As Justice Blackman wrote in *Williamson*: "In sum, respondent's claim is premature, whether it is analyzed as a deprivation of property without due process under the Fourteenth Amendment, or as a taking under the Just Compensation Clause of the Fifth Amendment." 473 U.S. at 200.  The cases in the lower courts so hold.  *See*, e.g., *Taylor Investment, Ltd. v. Upper Darby Township, supra*, 983 F.2d at 1290, 1292, *Gilbert v. City of Cambridge*, 932 F.2d 51, 66 n.20 (1st Cir. 1991); *Estate of Himelstein v.City of Fort Wayne, supra*, 898  F.2d at 577-78; *St. Clair v. City of Chicago, supra*, 880 F.2d at 202; *Bateman v. City of West Bountiful, supra*, 89 F.3rd at 709; *Hager v. City of West Peoria*, 84 F.3d 865, 869 (7th 1996); *Golemis v. Kirby*, 632 F. Supp. 159, 163 (D.R.I. 1985).

Likewise, the *Williamson* ripeness doctrine applies to all the relief sought, whether injunctive, declaratory, or damages.  *See, e.g., Gilbert v. City of Cambridge*, 932 F.2d at 63; *cf. Martin Tractor Co. v. Federal Election Comm'n, supra*, 627 F.2d at 379.

Finally, although it is not necessary to a decision in the present case, there is strong authority following *Williamson* that relief from claims like those brought here must be sought in the local courts, when a remedy is available there.  A leading case is Judge Posner's opinion in *Gamble v. Eau Claire Cy.*, 5 F.3d 285 (7th Cir. 1993), *cert denied*, 510 U.S. 1129.  The Seventh Circuit held that the plaintiff had a duty to pursue state remedies before trying to come to federal court. 5 F.3d at 286.  Judge Posner wrote: *"Williamson* holds that even if a taking can be challenged as a denial of substantive due process, a suit based on this theory is premature if the plaintiff has possible state remedies against the zoning regulation or other state action that he

want to attack." 5 F. 3d at 287.  This is in keeping with the Third Circuit's conviction that:

"strong policy considerations favor local resolution of land-use disputes."  *Taylor Investment*

*Ltd. v. Upper Darby Township, supra,* 983 F.2d at 1291; *see also Estate of Himelstein v. City of*

*Fort Wayne, supra,* 898 F.2d at 576.  Judge Selya, now on the First Circuit, eloquently addressed

this point when he was a District Judge in Rhode Island in *Gotemis v. Kirby, supra.*  He wrote:

> Such deference to the state's paramount interests (given the
> existence of a reasonable remedial scheme on the state level) is, of
> course, consistent with the prudential precept that "the federal
> courts [should] eschew the decision of cases on constitutional
> grounds unless and until all of the available avenues of resolution
> have been fully explored. It makes no difference that Gotemis
> couches his imprecation partially in terms of substantive due
> process; the Court has plainly signaled that the same
> considerations of ripeness must reasonably flaw any argument
> under the Due Process Clause in the circumstances of this case.  So
> long as the state offers a suitable prospect for recourse in respect to
> an alleged "taking," a landowner must mine that quarry before
> panning for gold in the federal hills.

632 F. Supp. at 163-164.

The District of Columbia provides such remedies.  D.C. law authorizes eminent domain

by the District, but the courts also recognize the so-called "inverse condemnation" procedure

whereby a landowner takes the initiative against the government.  *See, e.g., Mekuica v. WMATA,*

45 F. Supp. 2d 19 (D.D.C. 1999).  Understandably perhaps, in view of Mr. Siegel's lack of

success in the Superior Court before Judge Alprin, Plaintiffs here prefer to come to the District

Court in the first instance. They are apparently unwilling to hazard their claims in the local

courts, even though, as our Court of Appeals has recently emphasized, all Constitutional claims –

such as Plaintiffs here assert to try to stop the stadium project in midstream – are fully available

to them in the Superior Court.  *See JMM Corp. v. District of Columbia,* 378 F.3d 1117, 1121,

1123 (D.C. Cir. 2004) (applying the abstention doctrine to the District of Columbia).  The Court

can recognize the ingenuity of such sophisticated forum-shopping without acquiescing in it.

The letters from the District to the Plaintiffs evincing an intent to acquire their properties

add nothing to their case for subject-matter jurisdiction.  Here again their position is squarely

contrary to the Seventh Circuit decision in *Patel v. City of Chicago, supra*, which is on all fours

with the present case on this point.  The Court there held:

> Because the Plaintiffs have suffered no injury and will only do so
> if and when the City fails to compensate them justly for their
> properties, their claim is not ripe for review.  For this reason, we
> need not consider the Plaintiffs' motion to supplement the record,
> which included letters from the City to the Plaintiffs indicating its
> intention to commence eminent domain proceedings with respect
> to two of the motel properties if the Plaintiffs decline the City's
> offer to pay the properties' market value.  These letters do not alter
> our ripeness analysis, as under *Williamson County* only
> documentation showing that the Plaintiffs had unsuccessfully
> attempted to obtain just compensation through the procedures
> provided by the state for obtaining such compensation would allow
> us to exercise jurisdiction over the Plaintiffs' claim.  Thus, our
> analysis is unaffected by the contents of the Plaintiff's motion and
> the enclosed letters.

383 F.3d at 574-575.

Judge Alprin's reasoning on this point is impeccable. (Appendix D at 5)   We urge this

Court to follow it.

D.    Plaintiffs Have Not Presented and Cannot Present a Case for Equity Jurisdiction.

The present suit invokes the equity jurisdiction of this Court. The complaint seeks

injunctive and declaratory relief, both equitable remedies.

But it is hornbook law that a plaintiff may not invoke the equity jurisdiction of a court

when he has an adequate remedy at law. The absence of such a remedy is the essence of equity

jurisdiction. *See Sampson v. Murray*, 415 U.S. 61, 88 (1974); *Beacon Theatres v. Westover*, 359 U.S. 500, 506-507 (1959).

Here the Plaintiffs have a plain and adequate remedy at law—just compensation under the Fifth Amendment to the U.S. Constitution and the D.C. eminent domain statute. As a result, the courts uniformly reject efforts to enjoin an alleged taking when the remedy of just compensation is available. *See Ruckelshaus v.Monsanto Co.*, 467 U.S. 986, 1016 (1984); *Donnelly v. District of Columbia Redevelopment Land Agency*, 269 F.2d 546, 547 and n.1, 548 (D.C. Cir. 1959); *Patel v. City of Chicago, supra*, 383 F.3d at 569; *cf. Williamson Planning Comm'n v. Hamilton Bank*, *supra*.

This disposes of Plaintiffs' allegation (Compl. ¶57) that the District "has established, implemented, and is engaged in a policy of buying Plaintiffs' property." This allegation has no legal significance. *Williamson* and *Patel* establish that this does not make a claim ripe for decision or confer equity jurisdiction.

Plaintiffs' attempt to distinguish the issues arising in their case from those in a "just compensation" case by asserting that they rely on a claim of taking for "private use" rather than "public use" is a distinction without a meaningful difference. Regardless of how Plaintiffs choose to label their case, the underlying reality remains the same. The essential elements of standing, justiciability, ripeness, and equity jurisdiction, which make up subject-matter jurisdiction, must all still be met. Plaintiffs do not escape their burden on each of these elements by attaching a new label. Their challenge to the District's authority to go forward with the baseball stadium site still requires them to show that they have standing according to the judicial criteria we have outlined, including injury in fact already sustained or which they are in immediate danger of sustaining; that they have presented a justiciable controversy rather than a

hypothetical or speculative case; that they have brought a suit ripe for decision <u>now</u> and not premature; and that this Court has equity jurisdiction to grant relief against the entire stadium project.

Moreover, Plaintiffs are fully protected by their right to raise defenses in an eminent domain proceeding. Rules 71A of the Federal Rules of Civil Procedure and 71A of the Superior Court Rules of Civil Procedure deal with condemnation of property. Rule 71A(c)(2) of each rule requires the complaint in a condemnation proceeding to "contain a short and plain statement of the authority for the taking." Rule 71A(e) of each rule authorizes a defendant who "has any objection or defense to the taking of the property" to serve an answer stating "all the defendants' objections and defenses to the taking of the property."

The local Rule 71A is virtually identical to Federal Rule of Civil Procedure 71A. The Comment to the Superior Court rules states: "in adapting Federal Rule 71A to use by the Superior Court, only minor editorial changes have been made in the languageof that Rule."

The decisions under Federal Rule 71A hold that questions of authority can be litigated in the eminent domain proceeding. See, e.g., *United States v. State of South Dakota Game, Fish and Parks Dep't.*, 329 F.2d 665 (8th Cir. 1964); *Nicodemus v. Washington Water Power Co.*, 264 F.2d 614 (9th Cir. 1959).

We, of course, deny that Plaintiffs have a valid legal or factual basis for stopping the District from proceeding with the stadium project.[2] But, in the event that a condemnation

---

[2] We do not need to argue the merits of Plaintiffs' claim at this point, and it would be inappropriate to do so while the issue of this Court's jurisdiction remains unresolved. We do note, however, that to the extent that Plaintiffs assert that the Acts provide for an estimate of land acquisition costs by "one separate appraisal for each parcel of land" and that this was not complied with, Complaint ¶ 25, their contention is belied by one of the very exhibit they cite in their application for a Preliminary Injunction. In Dr. Gandhi's letter of April 25, 2005 to Chairman Cropp. Dr. Gandhi states that his cost estimate study "contains market value appraisals of the individual parcels as an interim step of the overall analysis . . . . " (Application for Preliminary Injunction, Exhibit 11 at 3).

proceeding results – which is by no means certain at this point in time – Plaintiffs can try to raise

the defense of lack of statutory authority as a reason why their property cannot be taken.

Likewise, they can challenge the District's claim to take title in the eminent domain

proceeding.

In *Catlin v. United States*, 324 U.S. 229, 241 (1945) the Supreme Court held as follows:

> While the language and the wording of the [antecedents of the
> Federal and D.C. eminent domain statutes] are not wholly free
> from doubt, we see no necessary inconsistency between the
> provisions for transfer of title upon filing of the declaration and
> making of the deposit and at the same time preserving the owner's
> preexisting right to question the validity of the taking as not being
> for a purpose authorized by the statute under which the main
> proceeding is brought. *That result may be reached if the statute is
> construed to confer upon the Government, upon occurrence of the
> events specified, only a defeasible title in cases where an issue
> concerning the validity of the taking arises* . . . The alternative
> construction, that title passes irrevocably, leaving the owner no
> opportunity to question the taking's validity or one for which the
> only remedy would be to accept the compensation which would be
> just if the taking were valid, would raise serious question
> concerning the statute's validity. In any event we think it would
> run counter to what reasonable construction requires. (Emphasis
> supplied).

The Eighth Circuit observed in *United States v. Herring*:

> The validity of the government's title under a declaration of taking
> is not conditional on the specific results of the subsequent
> condemnation proceeding *except in cases where an issue
> concerning the statutory validity of the taking arises. In these
> cases, the government takes only a defeasible title.*

750 F.2d 669, 671 (8th Cir. 1984) (citing *Catlin*) (emphasis supplied); *see also United States v.*

*125.2 Acres of land*, 732 F.2d 239, 244 (1st Cir. 1984) ("Title obtained pursuant to a declaration

of taking can be challenged at the compensation hearing "as not being for a purpose authorized

by the statute under which the main proceeding is brought"(citing *Catlin* among other cases);

*Maratico v. United States*, 302 F.2d 880, 887 (D.C. Cir. 1962).

Thus, plaintiffs have a fully adequate remedy in an eminent domain proceeding, if one eventually occurs, both to try to contest the taking of their property and to just compensation for it if they are unsuccessful in their contest.

II.    Plaintiffs Have Not Presented Claims on Which Relief Can be Granted.

Plaintiffs' claims all purport to be brought under the federal Civil Rights Act, 42 U.S.C. §1983. This includes both the "takings" and "substantive due process" claims.

It is well to recall certain basic principles in analyzing claims under Section 1983.

*First*, Section 1983 "is not itself a source of substantive rights", but merely provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).

*Second*, where a particular Amendment "provides an explicit textual source of constitutional protection" against a particular sort of government behavior, "that Amendment, not the more generalized notion of "substantive due process" must be the guide for analyzing these claims." *Graham v. O'Connor*, 490 U.S. 386, 395 (1989); *see also Albright v. Oliver*, 510 U.S. 266, 272 (1994) (opinion of Rehnquist, C.J.).

*Third*, neither the Supreme Court nor our Court of Appeals in recent years has shown an inclination to expand Section 1983 into a catchall for all kinds of grievances, especially in areas permeated by state law. That is, the courts are reluctant to constitutionalize under Section 1983 matters cognizable and remediable under state law or other provisions of federal law. See, *e.g.*, *Town of Castle Rock v. Gonzales*, 2005 U.S. Lexis 5214 (2005); *cf. City of Rancho Palos Verdes v. Abrams*, 2005 U.S. Lexis 2754 (2005); *Washington Legal Clinic for the Homeless v. Barry*, 107 F.3d 32 (D.C. Cir. 1997).

Accordingly, as applied to the present case, it appears manifest that the centerpiece of Plaintiffs' claims is the alleged "taking" for "private use" under the Just Compensation Clause of the Fifth Amendment; their substantive due process claims are "generalized" variants of that "explicit textual source of constitutional protection." *Graham v. O'Connor, supra*, 490 U.S. at 395. As we shall show, Plaintiffs are "pushing the envelop" on all these claims to and past the breaking point.

A. The "Takings" Claims

We turn first to the "takings" claims, grounded on the peculiar notion that the stadium is a permissible "public use" if the cost estimates are below $165 million under the D.C. statutes but it would have become a "private use" if they had exceeded that figure.

There is nothing in the D.C. statutes that supports such a distinction. Section 101 of the Ballpark Omnibus Financing and Revenue Act of 2004 (Appendix A at 2) contains detailed "public use" findings by the Council:

> [the] ownership, construction, development, or renovation of a publicly financed stadium [in the District of Columbia is] a municipal use that is in the interest of, and for the benefit of, the citizens of the District of Columbia because such a publicly-owned stadium or arena will contribute to the social and economic well-being of the citizens of the District of Columbia and significantly enhance the economic development and employment of participants within the District of Columbia.

There is not a word in either this statute or the "Private or Alternative Stadium Financing and Cost Trigger Emergency Act of 2004 (Appendix B) modifying these "public use" findings, or even faintly suggesting that the "public use" findings are in any way dependent on whether the reestimated costs exceed $165 million or not.

It is obvious on the face of both statutes that the Council's concern was with the possibility of incurring excessive costs for the stadium, not with defining what a "public use" for

19

a stadium is, or conditioning "public use" findings on cost reestimates below $165 million. As

we have already pointed out, even the dissenters in *Kelo* agreed that a stadium is a paradigm case

of public use, so there is no division on the Supreme Court on that point. Moreover, under the

ballpark legislation, the stadium is to remain in the public ownership of the District of Columbia.

See Section 105(a)(1) (Appendix A at 9). There is no suggestion or authority for turning it over

to private ownership, which is what kindled the controversy in *Kelo,* where private property was

to be condemned and turned over to other private parties.   Plaintiffs' claim that, if the cost

reestimate figures had exceeded $165 million, the new stadium would turn into something akin

to the transformation of Cinderella's coach into a pumpkin at the stroke of midnight, is far-

fetched.

     This kind of claim is so rare and tenuous that Judge Posner was moved to write in *Gamble*

*v. Eau Claire Cy, supra*, 5 F.3d at 287:"We can find no case in the last half century where a

taking was squarely held to be for a private use." A District Judge in Massachusetts was

similarly moved to write in *Buntzman v. Springfield Development Authority*, 918 F.Supp. 29, 30

(D. Mass. 1996): "Plaintiff's counsel has been unable to cite, and the court has been unable to

find, a single reported case anywhere in the country in which 42 U.S.C. § 1983 was successfully

or even unsuccessfully, employed to challenge an eminent domain taking."

     In  addition to these long-established lines of authority, we now have the Supreme

Court's recent decision in *Kelo v. City of New London*.  The Court there held that a city's

decision to take property for the purpose of economic development satisfied the "public use"

requirement of the Fifth Amendment. 2005 U.S. Lexis at .6. The Court went back to *Berman v.*

*Parker*, 348 U.S. 26 (1954), arising in the District of Columbia, and  *Hawaii Housing Authority*

*v. Midkiff*, 467 U.S. 279 (1984), as meeting the standards for "public use" based on valid public

purposes. The new baseball stadium is an easier case for "public use" than either of these, as Justice O'Connor's dissent recognized. The Court emphasized that: "Just as we decline to second-guess the City's considered judgments about the efficacy of its development plan, we also decline to second-guess the City's determinations as to what lands it needs to acquire in order to effectuate the project." 2005 Lexis at 12.

We see nothing in *Kelo* that supports Plaintiffs' attack on the stadium project, and much that refutes it. The "takings" claim cannot stand.

2.  The Substantive Due Process Claim

This claim falls with the "takings" claims under the doctrine of *Graham v. O'Connor, supra*. But this claim is wholly insubstantial in any event, and it also fails for its own lack of merit.

The test of substantive due process is well-established by now. In *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998), the Supreme Court said: "for a half century now we have spoken of the cognizable level of executive abuse of power as that which shocks the conscience" (*citing Rochin v. California.* 342 U.S. 165 (1952) and other cases).

As Justice Stevens said for a unanimous Court in *Collins v. City of Harker Heights*, 503 U.S. 120, 125 (1992) (citations omitted):

> As a general matter, the Court has always been reluctant to expand the concept of substantive due process because guidelines for responsible decision-making in this unchartered area are scarce and open-ended. The doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field.

The judicial disinclination to expand the scope of substantive due process has been especially pronounced in land use disputes. As the First Circuit said in *Macone v. Town of Wakefield*, 277 F.3d 1, 9 (1st Cir. 2002): "We have constantly rejected substantive due process

claims arising out of disputes between developers and land planning authorities while leaving the door 'slightly ajar' for 'truly horrendous' situations."

Here in this Circuit the course of decision is the same. As our Court of Appeals said in *Yates v. District of Columbia*, 324 F.3d 724, 725 (D.C. Cir. 2003) (citing *County of Sacramento v. Lewis, supra* and other cases): "[O]nly the most egregious official conduct rises to the level of a due process violation." *See also United Artists Theatre Circuit v. Township of Warrington*, 316 F.3d 392, 401-402 (3d Cir. 2003); *Welch v. Paicos*, 66 F. Supp. 2d 138, 166 (D. Mass. 1999).

Essentially the underlying gravamen of the Plaintiffs' due process claim is that Dr. Gandhi did not comply with the statutory mandate of the Council on re-estimating costs. But the principle is firmly established here, as elsewhere, that "a breach of local law does not of itself violate substantive due process." *George Washington University v. District of Columbia*, 318 F.3d 203, 210 (D.C. Cir. 2003).

In *Barwood, Inc. v. District of Columbia,* 203 F.3d 290 (D.C. Cir. 2000), the Court of Appeals vacated a preliminary injunction obtained by plaintiffs challenging some taxicab regulations as *ultra vires* and relying on the Due Process clause of the Fifth Amendment. The Court of Appeals said that this was "a state law claim in federal garb" and "the fact of a state law violation does not resolve whether a plaintiff has been deprived of due process". 203 F.3d at 294. Precisely the same situation is presented by Plaintiffs in the present case. *See also WMX Technologies v. Gasconde County*, 105 F.3d 1195, 1200 (8th Cir. 1997) ("A violation of state law remains only a violation of state law and does not amount to the kind of 'truly irrational' governmental action which gives rise to a substantive due process claim. Such is a matter primarily of concern to the state and is better addressed to state courts and administrative

bodies."). *See also Natale v. Town of Ridgefield*, 170 F.3d 258, 262-63 (2d Cir. 1999); *Archie's v. City of Racine,* 847 F.2d 1211, 1217 (7th Cir. 1988) (en banc).

Tested by these standards, Plaintiffs' substantive due process claim does not state a valid claim -- any more than their "takings" claims under which the due process claim is subsumed states a valid claim. Judge Alprin's opinion establishes that the Plaintiffs do not have a private right of action under the D.C. statutes providing for the baseball stadium. The Plaintiffs' substantive due process claim, even if one makes every allowance for these allegations and stretches them to the utmost, does not come remotely close to meeting the "conscience-shocking" test of the Supreme Court and the Court of Appeals cases here and elsewhere applying that test. *See, e.g., Silverman v. Barry*, 845 F.2d 1072 (D.C. Cir. 1988), *cert denied*, 488 U.S. 986.

Section 1983 should not become a vehicle for circumventing local law decisions. Disputes over a matter such as cost reestimates for land acquisition should not be permitted to masquerade as federal constitutional claims.

Thus, even if this Court were to find that it has subject-matter jurisdiction over this case, despite the authorities we have cited, it should nonetheless dismiss the Complaint for failure to state a claim on which relief can be granted.

Dated: July 22, 2005                                  Respectfully submitted,

                                                      ROBERT J. SPAGNOLETTI
                                                      Attorney General for the
                                                       District of Columbia

                                                      GEORGE C. VALENTINE
                                                      Deputy Attorney General in Charge
                                                      of the Civil Division

EDWARD TAPTICH
Section Chief, Equity II

_____
DANIEL A. REZNECK 31625
Senior Assistant Attorney General
for the District of Columbia
441-4th St., N.W., 6th floor South
Washington, D.C., 20001
Attorney for Appellee
(202) 724-5691