# Appendix A

**RE-ENROLLED ORIGINAL**

AN ACT

*Codification
District of
Columbia
Official Code*

**2001 Edition**

**2005 Winter
Supp.**

**West Group
Publisher**

IN THE COUNCIL OF THE DISTRICT OF COLUMBIA

—————————————————

To establish the Ballpark Revenue Fund, a nonlapsing special revenue fund, to pay or to support debt service on bonds or other evidence of indebtedness to be issued to pay certain costs of the development, construction, or renovation of a ballpark after October 1, 2004, that has, as its primary purpose, the hosting of professional athletic team events in the District of Columbia; to authorize the issuance of District of Columbia revenue bonds to pay the construction and related costs of the ballpark; to authorize and require the Mayor and the Sports and Entertainment Commission to acquire land, to develop and construct a ballpark, and to lease the ballpark; to require the solicitation of alternative, private financing proposals for the ballpark, which private financing shall constitute 50% of the cost of the construction of the stadium; to require the review of cost estimates by the Chief Financial Officer and, if the re-estimated cost exceeds $165 million, to deem the designated site financially unavailable and to require the Mayor and the Sports and Entertainment Commission to pursue a replacement site; and to require certain provisions in the Construction Administration Agreement, the lease for the ballpark, and the lease for Robert F. Kennedy Stadium; to amend the Omnibus Sports Consolidation Act of 1994 to make a conforming amendment to require that the Sports and Entertainment Commission develop, construct, and lease the ballpark; to amend Title 47 of the District of Columbia Official Code to impose a ballpark fee on the gross receipts of certain persons doing business within the District of Columbia, to impose a sales tax at the point of sale within the District of Columbia on tickets of admission to certain events at the ballpark, and to impose a sales tax on the sale of personal property and certain services at the ballpark; to establish the Community Benefit Fund, a nonlapsing special revenue fund, to be used to pay or to support debt service bonds or other evidence of indebtedness to be issued to pay certain cost of the development, construction, or renovation of recreation centers, library improvements, local small business development incentives, job training and readiness programs, and other community benefits and to authorize the issuance of District of Columbia revenue bonds to pay the construction and related costs of such activities; and to amend the Tax Increment Financing Authorization Act of 1998 to create a tax increment financing district and allocate the incremental real property tax revenues and sales tax revenues from the District.     BE IT ENACTED BY THE COUNCIL OF THE DISTRICT OF COLUMBIA, That this act may be cited as the "Ballpark Omnibus Financing

**RE-ENROLLED ORIGINAL**

and Revenue Act of 2004".

### TITLE I. CONSTRUCTION OF BALLPARK.

Sec. 101. The Council finds that:

(1) The ownership, construction, development, or renovation of a publicly financed stadium in the District of Columbia, after October 1, 2004, for use primarily for professional athletic team events is a municipal use that is in the interest of, and for the benefit of, the citizens of the District of Columbia because such a publicly-owned stadium or arena will contribute to the social and economic well-being of the citizens of the District of Columbia and significantly enhance the economic development and employment opportunities within the District of Columbia.

(2) To further that interest, it is appropriate for the District of Columbia to pay all or a portion of the cost of constructing, developing, or renovating a stadium and, to that end, to impose a ballpark fee based upon the gross receipts of certain persons doing business within the District of Columbia; to impose a tax on the sales of tickets, or rights to admission, to certain events at the stadium; to impose a tax on sales of personal property and certain services at the stadium and to utilize the revenues derived from such fees and taxes to pay all or a portion of the cost of development, construction, or renovation of the stadium or the debt service on bonds or other evidence of indebtedness issued to finance all or a portion of the cost of the development, construction, or renovation of the stadium; to acquire real property in furtherance of these public purposes; to lease the stadium to one or more professional baseball clubs; and for the District of Columbia and any duly designated District government agency or instrumentality to enter into binding and enforceable contracts to further these purposes.

Sec. 102. Creation of Ballpark Revenue Fund.

(a) For purposes of this section, the term "ballpark" shall have the meaning specified in D.C. Official Code § 47-2002.05(a)(1).

(b) There is established within the General Fund of the District of Columbia, a segregated, nonlapsing special revenue fund to be denominated as the Ballpark Revenue Fund. Except as provided in section 307 of the Washington Convention Center Authority Act of 1994, effective September 28, 1994 (D.C. Law 10-188; D.C. Official Code § § 10-1203.07), the Chief Financial Officer of the District of Columbia shall pay into the Ballpark Revenue Fund all receipts from those fees and taxes specifically identified by any provision of District of Columbia law to be paid into the fund and any rent paid pursuant to a lease of the ballpark. The Chief Financial Officer of the District of Columbia shall create a sub-account within the Ballpark Revenue Fund for each type of fee and tax that is to be paid into the fund and shall allocate the receipts from each type of fee and tax to the appropriate sub-account. The Mayor, or any District government agency or instrumentality that has been designated by the Mayor, may pledge and create a security interest in the funds in the Ballpark Revenue Fund, or any sub-account or sub-accounts within the fund, for the payment of the costs of carrying out any of the

**RE-ENROLLED ORIGINAL**

purposes set forth in subsection (c) of this section, for the payment of the debt service on any bonds or other evidence of indebtedness, any fees and charges incurred in connection therewith, any payments owing under any document or instrument entered into in connection with the indebtedness, including any credit enhancement agreement, insurance policy, security agreement, or other agreement or instrument establishing a swap or other derivative arrangement entered into by the District or any District government agency or instrumentality, and any of the purposes set forth in subsection (c) of this section, without further action as permitted by section 490(f) of the District of Columbia Home Rule Act, approved December 24, 1973 (87 Stat. 809; D.C. Official Code § 1-204.90(f)). If bonds or other evidence of indebtedness are issued, the payment shall be made in accordance with the provisions of the documents entered into by the District or any District agency or instrumentality in connection with the issuance of the bonds or other evidence of indebtedness. Notwithstanding Article 9 of Subtitle I of Title 28 of the District of Columbia Official Code, or any other provision to the contrary, any security interest created pursuant to this subsection shall be valid, binding, and perfected from the time that the security interest is created, with or without the physical delivery of any funds or any other property, with or without further action, and whether or not any statement, document, or instrument relating to the security interest is recorded or filed. The lien created by the security interest shall be valid, binding, and perfected with respect to any person, as defined in D.C. Official Code § 47-2001(i), having claims against the District, whether or not such person has notice of the lien.

    (c) The purposes for which the funds deposited in the Ballpark Revenue Fund shall be used are as follows:

        (1) To directly pay, or to finance the reimbursement of, any fund of the General Fund of the District of Columbia which has been the source of the payment of any loan, reprogramming, or transfer of funds to any District government agency or instrumentality for the payment of any reasonable and verified predevelopment and development costs that have been borne by the District or the District government agency or instrumentality for the ballpark;

        (2) To directly pay, or to finance the reimbursement of the District or any District government agency or instrumentality for, any and all reasonable and verified predevelopment and development costs that were borne by the District or the District government agency or instrumentality for the ballpark;

        (3) To directly pay, or to finance the reimbursement of, the District or any District government agency or instrumentality for any or all costs arising out of or relating to the acquisition of real property, by purchase, lease, or condemnation in accordance with D.C. Official Code §§ 16-1311 through 16-1321, or other means of acquiring or assembling real property or interests in real property, including rights-of-way or other easements, that will serve as the site for the ballpark or are otherwise necessary to facilitate the construction of the ballpark or use of the site for the ballpark;

        (4) To directly pay or finance all or any of the costs of the demolition of buildings located on the future site of the ballpark and the cost of environmental remediation of

**RE-ENROLLED ORIGINAL**

the land that is the future site of the ballpark;

(5) To directly pay or finance all or any of the costs of the design, development, construction, improvement, furnishing, and equipping of the ballpark;

(6) To directly pay or finance all or any of the costs of renovating Robert F. Kennedy Stadium for use as a ballpark until construction of the new ballpark has been completed;

(7) To directly pay or finance all or any of the costs of any future renovations, improvements, maintenance, or upgrades to Robert F. Kennedy Stadium or the new ballpark after its construction has been completed;

(8) To directly pay or finance all or any other costs of the District or any District government agency associated with the financing, development, construction, or renovation of the ballpark; and

(9) To pay debt service on bonds issued in accordance with this act.

Sec. 103. Bond issuance.

(a) For the purposes of this section, the term:

(1) "Ballpark Revenue Fund" means the Ballpark Revenue Fund established by section 102.

(2) "Bonds" means District of Columbia revenue bonds, notes, or other obligations (including refunding bonds, notes, and other obligations) in one or more series, authorized to be issued pursuant to section 490 of the Home Rule Act and this title.

(3) "Home Rule Act" means the District of Columbia Home Rule Act, approved December 24, 1973 (87 Stat. 809; D.C. Official Code § 1-201.01 *et seq.*).

(4) "Project" means:

(A) The financing, refinancing, or reimbursing of costs incurred in the site acquisition for, and the development, design, construction, improvement, furnishing, and equipping of, the ballpark as the term is defined in D.C. Official Code § 47-2002.05(a)(1);

(B) The funding of any required deposit to a debt service reserve fund or capitalized interest;

(C) The payment of certain costs of issuance, such as fees and premiums for any bond insurance or credit enhancement;

(D) The payment of any costs for which funds in the Ballpark Revenue Fund may be expended; and

(E) For which the aggregate expenditure of funds for the purposes set forth in subparagraphs (A) through (C) of this paragraph does not exceed $534,800,000.

(b)(1) The Council authorizes the issuance by the Mayor of one or more series of bonds in a total amount not to exceed $534,800,000 for payment of the costs of the project and to execute one or more declarations of intent pursuant to Treas. Reg. §1.150-2 to reimburse the District for expenditures made prior to the issuance of the bonds.

(2) There is hereby allocated to the bonds the funds in the Ballpark Revenue

RE-ENROLLED ORIGINAL

Fund, or such portion of the funds as shall be determined in accordance with the terms of the bonds, for the payment of debt service on the bonds and the payment of such other costs as are permitted to be paid with funds from the Ballpark Revenue Fund.

(c)(1) The Mayor may take any action necessary or appropriate in accordance with this title in connection with the preparation, execution, issuance, sale, delivery, security for, and payment of the bonds of each series, including determinations of:

(A) The final form, content, designation, and terms of the bonds, including a determination that the bonds may be issued in certificated or book entry form;

(B) The principal amount of the bonds to be issued and the denominations of the bonds;

(C) The rate or rates of interest on, and the method or methods of determining the rate or rates of interest on, the bonds;

(D) The date or dates of issuance, sale, and delivery of, the payment of interest on, and the maturity date or dates of, the bonds;

(E) Whether the bonds are to be sold at a competitive or negotiated sale and the terms and conditions of the sale;

(F) The terms under which the bonds may be paid, optionally or mandatorily redeemed, accelerated, tendered, called or put for redemption, repurchase, or remarketing before their respective stated maturities;

(G) Provisions for the registration, transfer, and exchange of each series of the bonds and the replacement of mutilated, lost, stolen, or destroyed bonds;

(H) The creation of any reserve fund, sinking fund, or other fund with respect to the bonds and the determination of the priority thereof;

(I) The time and place of payment of the bonds;

(J) Whether the bonds will be taxable, tax-exempt, or a combination thereof;

(K) Procedures for monitoring the use of the proceeds received from the sale of the bonds to ensure that they are properly applied to the project and used to accomplish the purposes of this title;

(L) Actions necessary to qualify the bonds under the blue sky laws of any jurisdiction where the bonds are marketed; and

(M) The terms and types of credit enhancement under which the bonds may be secured.

(2) The bonds shall contain a legend, which shall provide that the bonds are special obligations of the District, are without recourse to the District, are not a pledge of, and do not involve, the faith and credit or the taxing power of the District (other than the payments from the Ballpark Revenue Fund or any other security authorized by this title), do not constitute a debt of the District, and do not constitute lending of the public credit for private undertakings as prohibited by section 602(a)(2) of the Home Rule Act.

(3) The bonds shall be executed in the name of the District and on its behalf by

RE-ENROLLED ORIGINAL

the manual or facsimile signature of the Mayor. The Mayor's execution and delivery of the bonds shall constitute conclusive evidence of the Mayor's approval on behalf of the District of the final form and content of the bonds.

(4) The official seal of the District, or a facsimile of it, shall be impressed, printed, or otherwise reproduced on the bonds.

(5) The bonds may be issued at any time or from time to time in one or more· issues and one or more series and may be sold at public or private sale. A series of bonds may be secured by a trust agreement or trust indenture between the District and a corporate trustee having trust powers, and may be secured by a loan agreement or other instrument or instruments by means of which the District may:

(A) Make and enter into any and all covenants and agreements with the trustee or the holders of the bonds that the District may determine to be necessary or desirable relating to:

(i) The application, investment, deposit, use, and disposition of the proceeds of bonds and the other funds, securities, and property of the District;

(ii) The assignment by the District of its rights in any agreement;

(iii) The terms and conditions upon which additional bonds of the District may be issued;

(iv) The appointment of a trustee to act on behalf of bondholders and abrogating or limiting the rights of the bondholders to appoint a trustee; and

(v) The vesting in a trustee for the benefit of the holders of bonds, or in the bondholders directly, such rights and remedies as the District shall determine to be necessary or desirable;

(B) Pledge, mortgage or assign monies, agreements, property or other assets of the District, either in hand or to be received in the future, or both;

(C) Provide for bond insurance, letters of credit, interest rate swaps, or other financial derivative products or otherwise enhance the credit of and security for the payment of the bonds or reduce or otherwise manage the interest costs of the bonds and provide security therefor; and

(D) Provide for any other matters of like or different character that in any way affects the security for or payment on the bonds.

(d) The bonds are declared to be issued for essential public and governmental purposes. The bonds, the interest thereon, the income therefrom, and all monies pledged or available to pay or secure the payment of the bonds, shall at all times be exempt from taxation by the District, except for estate, inheritance, and gift taxes.

(e) The District hereby pledges and covenants and agrees with the holders of the bonds that, subject to the provisions of the financing documents, the District will not limit or alter the revenues pledged to secure the bonds or the basis on which the revenues are collected or allocated, will not impair the contractual obligations of the District to fulfill the terms of any agreement made with the holders of the bonds, will not in any way impair the rights or remedies

**RE-ENROLLED ORIGINAL**

of the holders of the bonds, and will not modify in any way, with respect to the bonds, the exemptions from taxation provided for in this title, until the bonds, together with interest thereon, with interest on any unpaid installment of interest and all costs and expenses in connection with any suit, action, or proceeding by or on behalf of the holders of the bonds, are fully met and discharged. This pledge and agreement for the District may be included as part of the contract with the holders of the bonds. This subsection shall constitute a contract between the District and the holders of the bonds. To the extent that any acts or resolutions of the Council may be in conflict with this title, this title shall be controlling.

(f)  Consistent with section 490(a)(4)(B) of the Home Rule Act, and notwithstanding Article 9 of Subtitle I of Title 28 of the District of Columbia Official Code:

(1)  A pledge made and security interest created in respect of the bonds or pursuant to any related financing document shall be valid, binding, and perfected from the time the security interest is created, with or without physical delivery of any funds or any property and with or without any further action;

(2)  The lien of the pledge shall be valid, binding and perfected as against all parties having any claim of any kind in tort, contract or otherwise against the District, whether or not the party has notice; and

(3)  The security interest shall be valid, binding, and perfected whether or not any statement, document, or instrument relating to the security interest is recorded or filed.

(g)  If there shall be a default in the payment of the principal of, or interest on, any bonds of a series after the principal or interest shall become due and payable, whether at maturity or upon call for redemption, or if the District shall fail or refuse to carry out and perform the terms of any agreement with the holders of any of the bonds, the holders of the bonds, or the trustee appointed to act on behalf of the holder of the bonds, may, subject to the provisions of the financing documents, do the following:

(1)  By action, writ, or other proceeding, enforce all rights of the holders of the bonds, including the right to require the District to carry out and perform the terms of any agreement with the holders of the bonds or its duties under this title;

(2)  By action, require the District to account as if it were the trustee of an express trust;

(3)  By action, petition to enjoin any acts or things that may be unlawful or in violation of the rights of the holders of the bonds; and

(4)  Declare all the bonds to be due and payable, whether or not in advance of or at maturity and, if all defaults be made good, annul the declaration and its consequences.

(h)(1)  The members of the Council, the Mayor, or any person executing any of the bonds shall not be personally liable on the bonds by reason of their issuance.

(2)  Notwithstanding any other provision of this title, the bonds shall not be general obligations of the District and shall not be a debt or liability of the District within the meaning of any debt or other limit prescribed by law. The faith and credit or the general taxing power of the District (other than funds in the Ballpark Revenue Fund or any other security

RE-ENROLLED ORIGINAL

authorized by this title) shall not be pledged to secure the payment of the bonds.

(i) The Mayor shall select the underwriter for the bonds through a request for proposals and recommend to the underwriter a counsel that shall serve as counsel to the underwriter regarding the issuance of bonds. The bonds shall be sold to the underwriter through a negotiated process.

Sec. 104.  Local, small, and disadvantaged business enterprises, First Source employment, and apprentice requirements.

(a) For purposes of this section, the term "ballpark" shall have the meaning specified in D.C. Official Code § 47-2002.05(a)(1).

(b) Notwithstanding any other provision of law, the Mayor shall take all measures as shall be reasonably necessary to assure that all contracts entered into by the District or any agency or instrumentality of the District with respect to the ballpark shall comply with the requirements of the Equal Opportunity for Local, Small, and Disadvantaged Business Enterprises Act of 1998, effective April 27, 1998 (D.C. Law 12-268; D.C. Official Code § 2-217.01 *et seq.*).

(c) The Mayor shall take all measures as shall be reasonably necessary to assure that all contracts entered into by the District or any agency or instrumentality of the District with respect to each major phase of the development and construction of the ballpark, including contracts for architectural, engineering, and construction services, shall provide that at least 50% of the work in the aggregate under such contracts shall be awarded to local business enterprises, local small business enterprises, or local disadvantaged business enterprises, as such terms are defined in section 2 of the Equal Opportunity for Local, Small, and Disadvantaged Business Enterprises Act of 1998, effective April 27, 1998 (D.C. Law 12-268; D.C. Official Code § 2-217.01); provided, that of the percentage of the work required by this section to be awarded to local business enterprises, local small business enterprises, or local disadvantaged business enterprises, 35% of the work shall be awarded to local small business enterprises or local disadvantaged business enterprises, as such terms are defined in section 2 of the Equal Opportunity for Local, Small, and Disadvantaged Business Enterprises Act of 1998, effective April 27, 1998 (D.C. Law 12-268; D.C. Official Code § 2-217.01); provided further, that if the 35% requirement is unattainable, the Mayor shall report this to the Council for reconsideration. Of the percentage of the work required by this section to be awarded to local small business enterprises or local disadvantaged business enterprises, not less than 20% of the work shall be awarded to local disadvantaged business enterprises.

(d) Notwithstanding any other provision of law, the Mayor shall take all measures as shall be reasonably necessary to assure that all contracts entered into by the District or any agency or instrumentality of the District with respect to the development and construction of the ballpark shall comply with First Source Employment requirements of the First Source Employment Agreement Act of 1984, effective June 29, 1984 (D.C. Law 5-93; D.C. Official Code § 2-219.01 *et seq.*).

**RE-ENROLLED ORIGINAL**

Fund, or such portion of the funds as shall be determined in accordance with the terms of the bonds, for the payment of debt service on the bonds and the payment of such other costs as are permitted to be paid with funds from the Ballpark Revenue Fund.

(c)(1)  The Mayor may take any action necessary or appropriate in accordance with this title in connection with the preparation, execution, issuance, sale, delivery, security for, and payment of the bonds of each series, including determinations of:

(A)  The final form, content, designation, and terms of the bonds, including a determination that the bonds may be issued in certificated or book entry form;

(B)  The principal amount of the bonds to be issued and the denominations of the bonds;

(C)  The rate or rates of interest on, and the method or methods of determining the rate or rates of interest on, the bonds;

(D)  The date or dates of issuance, sale, and delivery of, the payment of interest on, and the maturity date or dates of, the bonds;

(E)  Whether the bonds are to be sold at a competitive or negotiated sale and the terms and conditions of the sale;

(F)  The terms under which the bonds may be paid, optionally or mandatorily redeemed, accelerated, tendered, called or put for redemption, repurchase, or remarketing before their respective stated maturities;

(G)  Provisions for the registration, transfer, and exchange of each series of the bonds and the replacement of mutilated, lost, stolen, or destroyed bonds;

(H)  The creation of any reserve fund, sinking fund, or other fund with respect to the bonds and the determination of the priority thereof;

(I)  The time and place of payment of the bonds;

(J)  Whether the bonds will be taxable, tax-exempt, or a combination thereof;

(K)  Procedures for monitoring the use of the proceeds received from the sale of the bonds to ensure that they are properly applied to the project and used to accomplish the purposes of this title;

(L)  Actions necessary to qualify the bonds under the blue sky laws of any jurisdiction where the bonds are marketed; and

(M)  The terms and types of credit enhancement under which the bonds may be secured.

(2)  The bonds shall contain a legend, which shall provide that the bonds are special obligations of the District, are without recourse to the District, are not a pledge of, and do not involve, the faith and credit or the taxing power of the District (other than the payments from the Ballpark Revenue Fund or any other security authorized by this title), do not constitute a debt of the District, and do not constitute lending of the public credit for private undertakings as prohibited by section 602(a)(2) of the Home Rule Act.

(3)  The bonds shall be executed in the name of the District and on its behalf by

RE-ENROLLED ORIGINAL

the manual or facsimile signature of the Mayor. The Mayor's execution and delivery of the bonds shall constitute conclusive evidence of the Mayor's approval on behalf of the District of the final form and content of the bonds.

(4) The official seal of the District, or a facsimile of it, shall be impressed, printed, or otherwise reproduced on the bonds.

(5) The bonds may be issued at any time or from time to time in one or more issues and one or more series and may be sold at public or private sale. A series of bonds may be secured by a trust agreement or trust indenture between the District and a corporate trustee having trust powers, and may be secured by a loan agreement or other instrument or instruments by means of which the District may:

(A) Make and enter into any and all covenants and agreements with the trustee or the holders of the bonds that the District may determine to be necessary or desirable relating to:

(i) The application, investment, deposit, use, and disposition of the proceeds of bonds and the other funds, securities, and property of the District;

(ii) The assignment by the District of its rights in any agreement;

(iii) The terms and conditions upon which additional bonds of the District may be issued;

(iv) The appointment of a trustee to act on behalf of bondholders and abrogating or limiting the rights of the bondholders to appoint a trustee; and

(v) The vesting in a trustee for the benefit of the holders of bonds, or in the bondholders directly, such rights and remedies as the District shall determine to be necessary or desirable;

(B) Pledge, mortgage or assign monies, agreements, property or other assets of the District, either in hand or to be received in the future, or both;

(C) Provide for bond insurance, letters of credit, interest rate swaps, or other financial derivative products or otherwise enhance the credit of and security for the payment of the bonds or reduce or otherwise manage the interest costs of the bonds and provide security therefor; and

(D) Provide for any other matters of like or different character that in any way affects the security for or payment on the bonds.

(d) The bonds are declared to be issued for essential public and governmental purposes. The bonds, the interest thereon, the income therefrom, and all monies pledged or available to pay or secure the payment of the bonds, shall at all times be exempt from taxation by the District, except for estate, inheritance, and gift taxes.

(e) The District hereby pledges and covenants and agrees with the holders of the bonds that, subject to the provisions of the financing documents, the District will not limit or alter the revenues pledged to secure the bonds or the basis on which the revenues are collected or allocated, will not impair the contractual obligations of the District to fulfill the terms of any agreement made with the holders of the bonds, will not in any way impair the rights or remedies

**RE-ENROLLED ORIGINAL**

of the holders of the bonds, and will not modify in any way, with respect to the bonds, the exemptions from taxation provided for in this title, until the bonds, together with interest thereon, with interest on any unpaid installment of interest and all costs and expenses in connection with any suit, action, or proceeding by or on behalf of the holders of the bonds, are fully met and discharged. This pledge and agreement for the District may be included as part of the contract with the holders of the bonds. This subsection shall constitute a contract between the District and the holders of the bonds. To the extent that any acts or resolutions of the Council may be in conflict with this title, this title shall be controlling.

(f) Consistent with section 490(a)(4)(B) of the Home Rule Act, and notwithstanding Article 9 of Subtitle I of Title 28 of the District of Columbia Official Code:

(1) A pledge made and security interest created in respect of the bonds or pursuant to any related financing document shall be valid, binding, and perfected from the time the security interest is created, with or without physical delivery of any funds or any property and with or without any further action;

(2) The lien of the pledge shall be valid, binding and perfected as against all parties having any claim of any kind in tort, contract or otherwise against the District, whether or not the party has notice; and

(3) The security interest shall be valid, binding, and perfected whether or not any statement, document, or instrument relating to the security interest is recorded or filed.

(g) If there shall be a default in the payment of the principal of, or interest on, any bonds of a series after the principal or interest shall become due and payable, whether at maturity or upon call for redemption, or if the District shall fail or refuse to carry out and perform the terms of any agreement with the holders of any of the bonds, the holders of the bonds, or the trustee appointed to act on behalf of the holder of the bonds, may, subject to the provisions of the financing documents, do the following:

(1) By action, writ, or other proceeding, enforce all rights of the holders of the bonds, including the right to require the District to carry out and perform the terms of any agreement with the holders of the bonds or its duties under this title;

(2) By action, require the District to account as if it were the trustee of an express trust;

(3) By action, petition to enjoin any acts or things that may be unlawful or in violation of the rights of the holders of the bonds; and

(4) Declare all the bonds to be due and payable, whether or not in advance of or at maturity and, if all defaults be made good, annul the declaration and its consequences.

(h)(1) The members of the Council, the Mayor, or any person executing any of the bonds shall not be personally liable on the bonds by reason of their issuance.

(2) Notwithstanding any other provision of this title, the bonds shall not be general obligations of the District and shall not be a debt or liability of the District within the meaning of any debt or other limit prescribed by law. The faith and credit or the general taxing power of the District (other than funds in the Ballpark Revenue Fund or any other security

authorized by this title) shall not be pledged to secure the payment of the bonds.

(i) The Mayor shall select the underwriter for the bonds through a request for proposals and recommend to the underwriter a counsel that shall serve as counsel to the underwriter regarding the issuance of bonds. The bonds shall be sold to the underwriter through a negotiated process.

Sec. 104.  Local, small, and disadvantaged business enterprises, First Source employment, and apprentice requirements.

(a) For purposes of this section, the term "ballpark" shall have the meaning specified in D.C. Official Code § 47-2002.05(a)(1).

(b) Notwithstanding any other provision of law, the Mayor shall take all measures as shall be reasonably necessary to assure that all contracts entered into by the District or any agency or instrumentality of the District with respect to the ballpark shall comply with the requirements of the Equal Opportunity for Local, Small, and Disadvantaged Business Enterprises Act of 1998, effective April 27, 1998 (D.C. Law 12-268; D.C. Official Code § 2-217.01 *et seq*.).

(c) The Mayor shall take all measures as shall be reasonably necessary to assure that all contracts entered into by the District or any agency or instrumentality of the District with respect to each major phase of the development and construction of the ballpark, including contracts for architectural, engineering, and construction services, shall provide that at least 50% of the work in the aggregate under such contracts shall be awarded to local business enterprises, local small business enterprises, or local disadvantaged business enterprises, as such terms are defined in section 2 of the Equal Opportunity for Local, Small, and Disadvantaged Business Enterprises Act of 1998, effective April 27, 1998 (D.C. Law 12-268; D.C. Official Code § 2-217.01); provided, that of the percentage of the work required by this section to be awarded to local business enterprises, local small business enterprises, or local disadvantaged business enterprises, 35% of the work shall be awarded to local small business enterprises or local disadvantaged business enterprises, as such terms are defined in section 2 of the Equal Opportunity for Local, Small, and Disadvantaged Business Enterprises Act of 1998, effective April 27, 1998 (D.C. Law 12-268; D.C. Official Code § 2-217.01); provided further, that if the 35% requirement is unattainable, the Mayor shall report this to the Council for reconsideration. Of the percentage of the work required by this section to be awarded to local small business enterprises or local disadvantaged business enterprises, not less than 20% of the work shall be awarded to local disadvantaged business enterprises.

(d) Notwithstanding any other provision of law, the Mayor shall take all measures as shall be reasonably necessary to assure that all contracts entered into by the District or any agency or instrumentality of the District with respect to the development and construction of the ballpark shall comply with First Source Employment requirements of the First Source Employment Agreement Act of 1984, effective June 29, 1984 (D.C. Law 5-93; D.C. Official Code § 2-219.01 *et seq*.).

RE-ENROLLED ORIGINAL

(e)(1)  Notwithstanding any other provision of law, the Mayor shall take all measures as shall be reasonably necessary to assure that all contracts entered into by the District or any agency or instrumentality of the District with respect to the development and construction of the ballpark shall comply with the requirements of AN ACT To provide for voluntary apprenticeship in the District of Columbia, approved May 21, 1946 (60 Stat. 204; D.C. Official Code § 32-1401 *et seq.*).

(2)(A)  Notwithstanding any other provision of law, 50% of all apprenticeship hours performed pursuant to apprenticeship programs related to the construction and operation of the ballpark shall be performed by District of Columbia residents.

(B)  Any prime contractor or subcontractor that fails to make a good faith effort to comply with the requirements of this paragraph shall be subject to a monetary fine in the amount of 5% of the direct or indirect labor costs of the contract.  Fines shall be imposed by the Contracting Officer and remitted to the Department of Employment Services to be applied to job training programs, subject to appropriations by Congress.

(f)  The Mayor shall encourage the owner of any professional baseball franchise that operates in the ballpark to enter into broadcast media rights agreements with broadcast media companies that are local business enterprises and disadvantaged business enterprises as such terms are defined in section 2 of the Equal Opportunity for Local, Small, and Disadvantaged Business Enterprises Act of 1998, effective April 27, 1998 (D.C. Law 12-268; D.C. Official Code § 2-217.01).

Sec. 105.  Ballpark development and construction.

(a)  For the purposes of this section, the term:

(1)  "Ballpark" means a baseball-specific stadium owned by the District and constructed on the ballpark site.

(2)  "Ballpark site" means the site bounded by N Street, S.E., Potomac Avenue, S.E., South Capitol Street, S.E., and 1st Street, S.E., or such other site as determined in accordance with subsection (b)(2) of this section if this primary site shall be unavailable to be acquired by the Mayor.

(3)  "Baseball Stadium Agreement" means the Baseball Stadium Agreement dated as of September 29, 2004 by and among the Government of the District of Columbia, the Sports and Entertainment Commission, and Baseball Expos, L.P., a Delaware limited partnership.

(4)  "MLB Team" means the entity that owns the Major League Baseball franchise that will play its home games in the ballpark.

(b)(1)  For purposes of this subsection, the term:

(A)  "Ballpark" shall have the meaning specified in D.C. Official Code § 47-2002.05(a)(1)(A).

(B)  "Baseball Stadium Agreement" shall have the meaning specified in subsection (a)(3) of this section.

RE-ENROLLED ORIGINAL

(2) The Mayor, subject to such conditions as the Mayor shall determine, shall:

(A) Acquire and convey to the Anacostia Waterfront Corporation, for use by the Sports and Entertainment Commission to satisfy its responsibilities under this title, all necessary real property, including rights-of-way or other easements, that shall be required to develop, construct, and complete a ballpark within the site bounded by N Street, S.E., Potomac Avenue, S.E., South Capitol Street, S.E., and 1st Street, S.E.; provided, that if this site shall be unavailable or infeasible for the timely completion of a ballpark on or prior to March 1, 2008 relying only on the funding authority provided in this title, any designated alternative site in the District of Columbia, including the site for Robert F. Kennedy Stadium, as defined in section 3(4) of the Omnibus Sports Consolidation Act of 1994, effective Aug. 23, 1994 (D.C. Law 10-152; D.C. Official Code § 3-1402(4)), that the Mayor determines, subject to the approvals required in section 4.01 of the Baseball Stadium Agreement, will be available and feasible for the timely completion of a ballpark relying only on the funding authority provided in this title; provided further, that if the designated alternative site is not within the Anacostia Waterfront, as that term is defined in the Anacostia Waterfront Act of 2004, signed by the Mayor on August 5, 2004 (D.C. Act 15-527; 51 DCR 9142), the alternative site shall be conveyed directly to the Sports and Entertainment Commission; and

(B) Provide to the Sports and Entertainment Commission all funds from the Ballpark Revenue Fund or from the issuance of bonds secured by the Ballpark Revenue Fund as shall be required by the Sports and Entertainment Commission for the development, construction, completion, and leasing of the ballpark on the ballpark site in accordance with this section.

(3) The Mayor shall provide the Council with the following information associated with the ballpark:

(A) A copy of any term sheet, loan commitment, or any other material obligation executed by the District or any District government agency or instrumentality to finance the District government's costs associated with the development of the ballpark;

(B) A copy of each material contract executed by the District or any District government agency or instrumentality for goods or services associated with the development of the ballpark; and

(C) On or before July 1, 2005, and every 6 months thereafter, a semiannual report which provides an accounting and itemization of all financial obligations and expenditures of the District government and all revenues generated to the District government associated with the development of the ballpark.

(c) The Sports and Entertainment Commission shall develop and construct a ballpark on the ballpark site in accordance with the following requirements:

(1) The ballpark shall be a first-class, open air baseball stadium to be constructed on the ballpark site, having a natural grass playing field, a capacity of approximately 41,000 seats, and market-appropriate concession, entertainment, and retail areas, fixtures,

RE-ENROLLED ORIGINAL

furnishings, equipment, features, and amenities.

(2) The ballpark shall be designed to comply with all public safety, accessibility, and urban planning requirements generally applicable to buildings of such scale, purpose, and location in the District of Columbia.

(3)(A) The Sports and Entertainment Commission shall enter into a Construction Administration Agreement with the Mayor and the MLB Team. The Construction Administration Agreement shall require the Sports and Entertainment Commission, the Mayor, and the MLB Team to form a Project Coordination Team to perform the following functions:

(i) Make non-binding recommendations to the Sports and Entertainment Commission and the MLB Team with respect to the retention of various design, engineering, construction, consulting, and construction management firms that will assist in the development and construction of the ballpark;

(ii) Receive reports from such firms pertaining to schedule, budget and other aspects of the development and construction of the ballpark; and

(iii) Make or provide the consents, authorizations, approvals, decisions, and other actions expressly required of the Project Coordination Team, to the extent legally permitted, under the Construction Administration Agreement.

(B) The Construction Administration Agreement shall provide for periodic regular meetings of the Project Coordination Team and for special meetings upon reasonable prior notice. The Sports and Entertainment Commission and the Mayor together shall have one vote and the MLB Team shall have one vote on the Project Coordination Team, and each will have the right to appoint and replace its voting representative by written notice to the other party. The voting representative who represents the Sports and Entertainment Commission and the Mayor shall be chosen jointly by the Sports and Entertainment Commission and the Mayor. Each voting member of the Project Coordination Team may act on behalf of the party or parties it represents, and in connection with the development and construction of the ballpark, may sign documents, authorize action, and otherwise bind the party or parties that it represents in connection with matters properly before the Project Coordination Team. The Project Coordination Team shall take action only by unanimous vote of its voting members.

(4) The Sports and Entertainment Commission shall use a competitive procurement process in accordance with its procurement regulations to select and engage the design, engineering, construction, consulting, and construction management firms and shall require such firms to comply with the First Source Employment Agreement Act of 1984, effective June 29, 1984 (D.C. Law 5-93; D.C. Official Code § 2-219.01 et seq.).

(5) The ballpark shall be designed and constructed in a manner to promote the minimization of:

(A) The life cycle cost and environmental impact of the facility and dependence on petroleum-based fuels by utilizing energy efficiency, water conservation, or solar or other renewable energy technologies; and

RE-ENROLLED ORIGINAL

(B)  Waste production, water pollution, and storm water runoff from the facility, taking into account applicable criteria in effect, on the effective date of this title, of the Leadership in Energy and Environmental Design Green Building Rating System for New Construction and Major Renovation, LEED-NC version 2.1, as defined by the U.S. Green Building Council.

(d)  The Sports and Entertainment Commission shall lease the ballpark, on behalf of the District, to the MLB Team pursuant to a lease agreement that has an initial term of at least 30 consecutive years, plus 5 2-year renewal options, and that is otherwise in accordance with the terms of the Baseball Stadium Agreement.

(e)(1)  The Sports and Entertainment Commission and the Anacostia Waterfront Corporation shall promptly enter into a memorandum of understanding which shall address these agencies' shared responsibilities for developing the master urban site plan and exterior design guidelines for the ballpark and parcels adjacent to the ballpark site within the Anacostia Waterfront.

(2)  Subtitles F and G of Title I of the Anacostia Waterfront Corporation Act of 2004, signed by the Mayor on August 5, 2004 (D.C. Act 15-527; 51 DCR 9142), shall not apply to the ballpark or the Robert F. Kennedy Stadium.

Sec. 106.  Requirement to invite and evaluate private financing.

(a)  For purposes of this section, the term "ballpark" shall have the meaning specified in D.C. Official Code § 47-2002.05(a)(1)(A).

(b)  There is hereby established the Baseball Financing Review Fund as a segregated, nonlapsing special revenue fund in the District separate and apart from the General Fund of the District of Columbia.  All fees specifically identified by subsection (c) of this section shall be deposited into the Baseball Financing Review Fund without regard to fiscal year limitation pursuant to an act of Congress.  All fees deposited into the Baseball Financing Review Fund shall not revert to the General Fund of the District of Columbia at the end of any fiscal year or at any other time, and shall be continually available to pay or reimburse the cost of services related to the evaluation and reporting of proposals as required by subsections (d) and (e) of this section, subject to authorization by Congress.

(c)(1)  Within 30 days of the effective date of this title, the Chief Financial Officer shall cause to be published a notice that the District is seeking the submission of supplemental or alternative financing plans and proposals for the development and construction of the ballpark in accordance with sections 104 and 105 that would provide for a meaningful and substantial reduction in:

(A)  The minimum annual amount of ballpark fees required to be collected under D.C. Official Code § 47-2762;  and

(B)  The principal amount of bonds that the District would otherwise need to issue under sections 103 and 105.

(2)  Any party submitting a supplemental or alternative financing plan or

RE-ENROLLED ORIGINAL

proposal shall also submit a reasonable proposal fee, in an amount to be determined by the Chief Financial Officer, to defray the costs to the District of evaluating and reporting upon the supplemental or alternative financing plan or proposal. All proposal fees shall be deposited into the Baseball Financing Review Fund.

(d)(1) The Chief Financial Officer, in consultation with the Mayor and the Council, shall:

(A) Establish criteria for the requested supplemental or alternative financing plans and proposals, and include this criteria within the notice required by subsection (c) of this section; and

(B) Evaluate such proposals in accordance with the criteria.

(2) The criteria shall limit consideration to only bona fide supplemental or alternative financing plans and proposals that have been submitted by parties that:

(A) Are financially capable of performing the supplemental or alternative financing plan and proposal; and

(B) Substantially reduce the amount or duration of the proposed ballpark fee as set forth in D.C. Official Code § 47-2762.

(e)(1) Not later than March 15, 2005, and not less than 45 days prior to the issuance of bonds authorized by this title, the Chief Financial Officer shall deliver a report to the Mayor and the Council, describing and evaluating all supplemental or alternative financing plans and proposals that were submitted in accordance with subsections (c) and (d) of this section.

(2) If the Chief Financial Officer finds that at least one supplemental or alternative financing plan or proposal meets the criteria established pursuant to subsection (c) and (d) of this section and certifies that at least 50% of the cost of constructing the ballpark can be financed privately, the Mayor, within 15 days of the submission of the report by the Chief Financial Officer, shall submit proposed legislation to the Council to replace part or all of the public financing otherwise required by this title and thereby substantially reduce the amount or duration of the proposed ballpark fee; provided, that the private financing legislation otherwise preserves the obligations and economics of the Baseball Stadium Agreement.

(f) This section shall not create any legal obligation or liability on the part of the District to any party who submits a supplemental or alternative financing plan or proposal pursuant to this section.

Sec. 107. Requirement to review costs and pursue alternative ballpark site.

(a) For purposes of this section, the term "ballpark" shall have the meaning specified in D.C. Official Code § 47-2002.05(a)(1)(A).

(b) For the purposes of this section, land acquisition costs shall include the following:

(1) One separate appraisal of each parcel of land to be acquired, which shall be performed after the effective date of this title;

(2) An estimate of the environmental remediation costs; and

(3) Legal expenses associated with land acquisition.

**RE-ENROLLED ORIGINAL**

(c) For purposes of this section, infrastructure costs shall include the following:

(1) The District Department of Transportation's estimate for basic road and sidewalk improvements;

(2) The cost of expanding the Navy Yard Metro station to accommodate the additional usage anticipated by the stadium; and

(3) Water and sewer relocation costs.

(d) Prior to May 15, 2005, and prior to the date upon which the District enters into any obligation to acquire or purchase any property on a site bounded by N Street, S.E., Potomac Avenue, S.E., South Capitol Street, S.E., and 1st Street, S.E. ("primary ballpark site"), the Chief Financial Officer shall re-estimate the costs to the District for land acquisition and infrastructure and provide a report on this re-estimate to the Mayor and the Council.

(e) If the total amount of these re-estimated costs to the District exceeds $165 million, the primary ballpark site shall be deemed financially unavailable by the District pursuant to this title. Pursuant to this title, the Mayor and the Sports and Entertainment Commission shall pursue replacement of the primary ballpark site with a substantially less costly site in the District, subject to the approval of Baseball Expos, L.P., or its assigns or successors, in accordance with the Baseball Stadium Agreement.

Sec. 108. Certain required provisions to be included in future agreements.

(a) The Construction Administration Agreement, referenced in section 105(c)(3), shall require a risk management program that minimizes the exposure of the Sports and Entertainment Commission and the District to cost overrun and late completion risk under section 8.04(c)(iii) of the Baseball Stadium Agreement, as defined in section 105(a)(3), including, but not limited to provisions that:

(1) Require the team to share equally with the District or the Sports and Entertainment Commission the cost of a program that includes:

(A) A mutually selected insurance consultant engaged to advise on the procurement of construction period insurance and the cost effective allocation of late completion risk in the construction documents;

(B) Mutually approved construction period insurance carried pursuant to section 4.05 of the Baseball Stadium Agreement; and

(C) A mutually selected value engineering consultant engaged to advise the project coordination team on mitigation of cost overrun risk;

(2) To the extent that the team is entitled to compensatory damages under section 8.04(c)(iii) of the Baseball Stadium Agreement as a result of a *force majeure* event for which there is insurance coverage under subparagraph (1)(A) of this subsection, provide that the team's recourse to the District or the Sports and Entertainment Commission for the recovery of such damages shall be limited exclusively to the proceeds of the insurance; and

(3) To the extent that the team is entitled to compensatory damages under section 8.04(c)(iii) of the Baseball Stadium Agreement with regard to a missed deadline, provide that

**RE-ENROLLED ORIGINAL**

the team's recourse to the District or the Sports and Entertainment Commission for the recovery of such damages, after giving effect to any insurance or other third party recoveries, shall be limited exclusively to:

(A) With regard to the first 12 months following the missing deadline, the right of offset against the license fees for the use of Robert F. Kennedy Stadium after March 1, 2008; and

(B) With regard to the second 12 months following the missed deadline, an amount calculated in accordance with the Baseball Stadium Agreement that shall not exceed $19 million.

(b) The ballpark lease agreement and the license agreement for interim use of Robert F. Kennedy Stadium shall each include provisions requiring Baseball Expos, L.P., or its assigns or successors, to maintain its Major League Baseball franchise in the District for the term of the agreement, and shall each include such other provisions and remedies as shall be necessary to ensure enforcement of this obligation, including all remedies available under District law, and provisions requiring Baseball Expos, L.P., or its assigns or successors, if the team relocates from the District prior to the expiration of the term of the agreement, to directly pay, or to finance the reimbursement of the District or any other party, for any and all outstanding costs to be borne by the District or any other party related to the ballpark as set forth in section 102(c), and for any lost revenue that the District or any other party would have received if the team had completed its term.

Sec. 109. The Omnibus Sports Consolidation Act of 1994, effective August 23, 1994 (D.C. Law 10-152; D.C. Official Code § 3-1401 *et seq.*), is amended by adding a new section 19a to read as follows:

"Sec. 19a. Development, construction, and leasing of ballpark.

"The Sports and Entertainment Commission shall develop, construct, and lease the ballpark in accordance with section 105 of the Ballpark Omnibus Financing and Revenue Act of 2004, passed on reconsideration on December 21, 2004 (Re-enrolled version of Bill 15-1028).".

Sec. 110. Title 47 of the District of Columbia Official Code is amended as follows:

(a) The table of contents for the title is amended by adding a new chapter designation "27B. Ballpark Fee." after the chapter designation "27A. Special Public Safety Fee.".

(b) Section 47-368.03(d)(1) is repealed.

(c) Section 47-1817.01(5)(B) is amended to read as follows:

"(B) "Qualified High Technology Company" shall not include:

"(i) An individual or entity that derives 51% or more of its gross revenues from the operation in the District of:

"(I) A retail store; or

"(II) An electronic equipment facility that is primarily occupied, or intended to be occupied, by electronic and computer equipment that provides

Amend
§ 47-368.03

RE-ENROLLED ORIGINAL

electronic data switching, transmission, or telecommunication functions between computers, both inside and outside the facility; <span style="float:right">Amend<br>§ 47-1817.01</span>

                 "(ii)  A professional athletic team, as defined in § 47-2002.05(a)(3); or

                 "(iii)  A business entity located in the DC Ballpark TIF Area, as defined in section 12a(a) of the Tax Increment Financing Authorization Act of 1998, passed on reconsideration on December 21, 2004 (Re-enrolled version of Bill 15-1028).".

    (d)  Chapter 20 is amended as follows:

        (1)  The table of contents is amended by adding the section designation "47-2002.05. Ballpark sales taxes." after the section designation "47-2002.04. Special event promoter obligations and penalties.".

        (2)  A new section 47-2002.05 is added to read as follows:

    "§ 47-2002.05.  Ballpark sales taxes.

    "(a)  For the purposes of this section, the term:

        "(1)  "Ballpark" means:

            "(A)  A stadium constructed after October 1, 2004 to be owned by the District on a site bounded by N Street, S.E., Potomac Avenue, S.E., South Capitol Street, S.E., and 1st Street, S.E., or such other site determined pursuant to section 105 of the Ballpark Omnibus Financing and Revenue Act of 2004, passed on reconsideration on December 21, 2004 (Re-enrolled version of Bill 15-1028), if the primary site shall be infeasible, including facilities functionally related and subordinate thereto and the accompanying infrastructure, including office and transportation facilities (including parking) adjacent to or serving the stadium, that has as its primary purpose the hosting of professional athletic team events and is constructed in whole or in part with funds deposited in, or bonds or other evidence of indebtedness the debt service upon which is financed in whole or in part by monies deposited in, the Ballpark Revenue Fund; and <span style="float:right">New<br>§ 47-2002.05</span>

            "(B)  Until such time as the hosting of professional athletic team events for which tickets are sold has commenced at the newly-constructed stadium, Robert F. Kennedy Stadium, described as that geographic area of the District of Columbia consisting of the areas designated as A, B, C, D, or E on the revised map entitled "Map to Designate Transfer of Stadium and Lease of Parking Lots to the District," prepared jointly by the National Park Service (National Capital Region) and the District of Columbia Department of Public Works for site development and dated October 1986 (NPS Drawing number 831/87284-A), and any other future additions thereto.

        "(2)  "Ballpark Revenue Fund" means the fund established by section 102 of the Ballpark Omnibus Financing and Revenue Act of 2004, passed on reconsideration on December 21, 2004 (Re-enrolled version of Bill 15-1028).

        "(3)  "Professional athletic team" includes any professional baseball, basketball, football, soccer, hockey, lacrosse, or other athletic team whose members receive financial compensation from their participation in the team's athletic exhibitions.

RE-ENROLLED ORIGINAL

"(4) "Ticket" means any physical, electronic, or other form of a certificate, documents, or token showing that a fare, admission, or license fee for a revocable right to enter the ballpark, or a right to purchase future rights to enter the ballpark, has been paid.

"(b) Notwithstanding any other provision of this chapter relating to the imposition of sales tax on either a retail sale or a sale at retail, there is hereby imposed an additional sales tax of 4.25% on the gross receipts of any person from the sale of tickets to any public event referred to in § 47-2001(n)(1)(H) sponsored by the person (or any affiliate of such person) and to be performed at the ballpark, regardless of whether the ticket is sold to a person who resells the ticket to another person or to a person who uses the ticket for admission to the event; provided, that with respect to tickets to events at Robert F. Kennedy Stadium, the tax shall apply only to professional baseball games or professional baseball-related events and exhibitions.

"(c) Notwithstanding any other provision of this chapter, there is hereby imposed an additional sales tax of 4.25% on the gross receipts of any person from the sale at the ballpark during such times as shall reasonably relate to the performance of baseball games or baseball-related events and exhibitions at the ballpark of tangible personal property or services otherwise taxable under the provisions of this chapter, except the gross receipts from (1) sales of food and beverages subject to the tax imposed by § 47-2002(3), and (2) the sale of or charge for the service of parking motor vehicles; provided, that with respect to the sale of tangible personal property or services at Robert F. Kennedy Stadium, the additional tax shall apply only to professional baseball games or professional baseball-related events and exhibitions.

"(d) The following revenues shall be deposited into one or more accounts within the Ballpark Revenue Fund:

"(1) The revenues received by the District of Columbia from the taxes imposed by this section;

"(2) The portion of the sales tax imposed by § 47-2002 on the gross receipts of any person from the sale of tickets to any public event referred to in § 47-2001(n)(1)(H) sponsored by the person (or any affiliate of such person) and to be performed at the ballpark, regardless of whether any such ticket is sold to a person who resells the ticket to another person or to a person who uses the ticket for admission to the event, except that, with respect to events at Robert F. Kennedy Stadium, only the portion of the tax levied on professional baseball games or professional baseball-related events and exhibitions;

"(3) The portion of the sales tax imposed by § 47-2002 on the gross receipts of any person from the sale at the ballpark during such times as shall reasonably relate to the performance of baseball games or baseball-related events and exhibitions at the ballpark of tangible personal property or services otherwise taxable, except as otherwise provided in § 10-1203.07; and

"(4) The portion of the sales tax imposed on the gross receipts from the sale of or charge for the service of parking motor vehicles that shall reasonably relate to the performance of baseball games or professional baseball related events and exhibitions at the ballpark.

"(e) The Chief Financial Officer or his delegate shall promulgate regulations as may be necessary and appropriate to carry out the provisions of this section, including regulations relating to the determination of District gross receipts and electronic filing and payment of sales taxes and fees. Until such time as the Chief Financial Officer or his delegate shall promulgate the regulations, any promoter of any event at which gross receipts from the sale of tickets, tangible personal property, or services are potentially subject to the taxes imposed by this section shall comply with the requirements of §47-2002.04 as if the event were a special event.".

(e) Section 47-2501 is amended as follows:

(1) Subsection (a)(2) through (4) is amended to read as follows:

"(2) Until December 31, 2004, pay to the Mayor 11% of these gross receipts from sales included in bills for a telephone company, 11% of these gross receipts from deliveries for a person who delivers heating oil to an end-user in the District, or 11% of these gross receipts from sales determined from meters for a gas company; and until December 31, 2004, pay to the Mayor 11% of the gross receipts from the sales of natural or artificial gas by a nonpublic utility person delivered, by any method, to an end-user located in the District; **Amend § 47-2501**

"(3) After December 31, 2004, pay to the Mayor 11% of these gross receipts from sales included in bills rendered after December 31, 2004 for nonresidential customers and 10% of these gross receipts from sales included in bills rendered after December 31, 2004 for residential customers for a telephone company, 11% of these gross receipts from deliveries made after December 31, 2004 for nonresidential customers and 10% of these gross receipts from deliveries made after December 31, 2004 for residential customers for a person who delivers heating oil to an end-user in the District, or 11% of these gross receipts from sales determined from meters read after December 31, 2004 for nonresidential customers and 10% of these gross receipts from sales determined from meters read after December 31, 2004 for residential customers for a gas company; or

"(4) After December 31, 2004, pay to the Mayor 11% of the gross receipts from the sales of natural or artificial gas by a nonpublic utility person delivered after December 31, 2004, by any method, to a nonresidential end-user located in the District and 10% of the gross receipts from the sales of natural or artificial gas by a nonpublic utility person delivered after December 31, 2004, by any method, to a residential end-user located in the District.".

(2) A new subsection (a-2) is added to read as follows:

"(a-2) One-eleventh of the total tax collected pursuant to subsection (a)(3) and (4) of this section, or any successor tax, shall be deposited in the Ballpark Revenue Fund established by section 102 of the Ballpark Omnibus Financing and Revenue Act of 2004, passed on reconsideration on December 21, 2004 (Re-enrolled version of Bill 15-1028).".

(3) Subsection (d-1)(1)(B) is amended to read as follows:

"(B)(i) Pay to the Mayor a tax of $0.0077 for each kilowatt-hour of electricity delivered to end-users in the District of Columbia for the preceding calendar month; and

RE-ENROLLED ORIGINAL

                           "(ii)(I)  Pay to the Mayor a tax of $0.0007 for each kilowatt-hour of electricity delivered to nonresidential end-users in the District of Columbia for the preceding calendar month.

                           "(II)  Revenues received by the District pursuant to this sub-subparagraph shall be deposited in the Ballpark Revenue Fund established by section 102 of the Ballpark Omnibus Financing and Revenue Act of 2004, passed on reconsideration on December 21, 2004 (Re-enrolled version of Bill 15-1028).  Payments under this sub-subparagraph shall be in addition to any other payments under this section.".

     (f)  A new Chapter 27B is added to read as follows:

                       "Chapter 27B. Ballpark Fee.

"Sec.

"47-2761.  Definitions.

"47-2762.  Ballpark fee.

"47-2763.  Enforcement.

"47-2761.  Definitions.

      "For the purposes of this chapter, the term:

         "(1)  "Ballpark" shall have the same meaning as in § 47-2002.05(a)(1).

         "(2)  "Ballpark Revenue Fund" means the fund established by section 102 of the Ballpark Omnibus Financing and Revenue Act of 2004, passed on reconsideration on December 21, 2004 (Re-enrolled version of Bill 15-1028).

         "(3)  "Bonds" shall have the same meaning as in section 103(a)(2) of the Ballpark Omnibus Financing and Revenue Act of 2004, passed on reconsideration on December 21, 2004 (Re-enrolled version of Bill 15-1028).  <span style="float:right">New<br>§ 47-2761</span>

         "(4)  "Chief Financial Officer" means the Chief Financial Officer of the District of Columbia.

         "(5)  "District gross receipts" means all income derived from any activity whatsoever from sources within the District, other than income of a feepayer derived from an ownership or  beneficial interest in other feepayers subject to the ballpark fee, whether compensated in the District or not, prior to the deduction of any expense whatsoever connected with the production of the income, except that beginning with the ballpark fee that is required by this chapter to be paid in fiscal year 2005 and thereafter, the calculation of the income shall not include the collection of federal or local taxes on motor vehicle fuel.

         "(6)  "Feepayer" means any person, fiduciary, partnership, unincorporated business, association, corporation, or any other entity subject to:

           "(A)  Subchapter VII of Chapter 18;

           "(B)  Subchapter VIII of Chapter 18; or

           "(C)  Chapter 1 of Title 51 of the District of Columbia Official Code, except any employer in the employer's capacity as a householder as distinguished from an employer in the pursuit of a trade, occupation, profession, enterprise, or vocation.

      "§ 47-2762.  Ballpark fee.

RE-ENROLLED ORIGINAL

"(a)(1)  For the fiscal year beginning October 1, 2004, and each fiscal year thereafter until and including the fiscal year beginning October 1, 2038, or such earlier or later date as all obligations that are payable from or secured by the ballpark fee are repaid, each feepayer shall remit, on or before June 15 of each year, a ballpark fee that shall be based upon the annual District gross receipts of the feepayer for the feepayer's preceding tax year and computed according to the ballpark fee schedule provided in subsection (b) of this section.

New
§ 47-2762

"(2)  A feepayer that is exempt from taxation pursuant to § 47-1802.01 shall not be subject to the ballpark fee unless, as provided in§ 47-1802.01, the feepayer has unrelated business income subject to tax under section 511 of the Internal Revenue Code of 1986, approved August 16, 1954 (68A Stat. 169; 26 U.S.C. § 511).  If the feepayer exempt from taxation has unrelated business income, the feepayer shall remit the ballpark fee based upon the feepayer's annual District gross receipts that were associated with the feepayer's unrelated business income for the feepayer's preceding fiscal year.

"(b)  The amount of the ballpark fee shall be computed according to the following schedule:

"(1)  Each feepayer with annual District gross receipts of $5,000,000 to $8,000,000 shall pay $5,500;

"(2)  Each feepayer with annual District gross receipts of $8,000,001 to $12,000,000 shall pay $10,800;

"(3)  Each feepayer with annual District gross receipts of $12,000,001 to $16,000,000 shall pay $14,000; and

"(4)  Each feepayer with annual District gross receipts of greater than $16,000,001  shall pay $16,500.

"(c)  On or before December 1 of each year, the Chief Financial Officer shall certify to the Council the amount of revenue received by the District from imposition of the ballpark fee during the immediately preceding fiscal year and provide an estimate of the amount of revenue expected to be received from the ballpark fee in the then current fiscal year. If the amount estimated to be collected is less than $26 million, for the allocation of monies for payments of the bonds, as provided by section 103(b) of the Ballpark Omnibus Financing and Revenue Act of 2004, passed on reconsideration on December 21, 2004 (Re-enrolled version of Bill 15-1028), the Chief Financial Officer shall compute the amount of the ballpark fee under the schedule set forth in subsection (b) of this section needed to provide estimated revenue in the next fiscal year equal to $26 million by applying the same percentage increase to each amount of the then-current ballpark fee under the schedule set forth in subsection (b) of this section. The Chief Financial Officer shall notify the Council, the Mayor, and the taxpayers of the new schedule and, upon such notice, the amount of the ballpark fee under the schedule set forth in subsection (b) of this section shall be increased as of October 1 of the following year.

"(d)  The revenues received by the District from the ballpark fee imposed by this section shall be deposited into the Ballpark Revenue Fund.

"(e)  Except in the case of street vendors described in § 47-2002.01, the Chief Financial

**RE-ENROLLED ORIGINAL**

Officer may require taxpayers subject to the sales taxes and fees imposed by §§ 47-2002.05 and 47-2762 and all sales taxes described in section 12a of the Tax Increment Financing Authorization Act of 1998, passed on reconsideration on December 21, 2004 (Re-enrolled version of Bill 15-1028), to make payments of those taxes electronically.

"(f) The Chief Financial Officer or his delegate shall promulgate such regulations as may be necessary and appropriate to carry out provisions of this chapter.

"§ 47-2763. Enforcement.

"Any feepayer who fails to file a return or pay the ballpark fee due as required by § 47-2755 shall be subject to the same enforcement provisions and administrative provisions applicable to the ballpark fee as provided in Chapter 18, Chapter 41, Chapter 42 (except §§ 47-4211(b)(1)(B), 47-4214, and 47-4215), and Chapter 43.". <span style="float:right">New<br>§ 47-2763</span>

(g) Section 47-3902 is amended as follows:

(1) Subsection (a) is amended to read as follows:

"(a) A tax shall be imposed on all toll telecommunication companies for the privilege of providing toll telecommunication service in the District. The rate for nonresidential customers <span style="float:right">Amend<br>§ 47-3902</span> shall be 11% of the monthly gross charges from the sale of toll telecommunication service that originates or terminates in the District, and for which a charge is made to a service address located in the District, regardless of where the charge is billed or paid and the rate for residential customers shall be 10% of the monthly gross charges from the sale of toll telecommunication service that originates or terminates in the District, and for which a charge is made to a service address located in the District, regardless of where the charge is billed or paid.".

(2) Subsection (b)(1) is amended to read as follows:

"(b)(1) A tax shall be imposed on all wireless telecommunication companies for the privilege of providing mobile telecommunications service to a customer with a place of primary use within the District. The rate for nonresidential customers shall be 11% of the monthly gross charges from the sale of District-based wireless telecommunication services and the rate for residential customers shall be 10% of the monthly gross charges from the sale of District-based wireless telecommunication services. The tax shall be imposed and administered according to the provisions of § 47-3922. The tax under the mobile telecommunications service tax provisions of this chapter may be separately stated as a line item on the customer's bill.".

(3) A new subsection (d) is added to read as follows:

"(d) One-eleventh of the total tax collected pursuant to subsections (a) and (b) of this section, or any successor tax, shall be deposited in the Ballpark Revenue Fund established by section 102 of the Ballpark Omnibus Financing and Revenue Act of 2004, passed on reconsideration on December 21, 2004 (Re-enrolled version of Bill 15-1028). ".

TITLE II. COMMUNITY BENEFIT FUND.

Sec. 201. The Council finds that it is appropriate that the District of Columbia seek to utilize the economic benefits that will be derived from the construction of the ballpark for the benefit and well-being of the residents of the District.

**RE-ENROLLED ORIGINAL**

Sec. 202.  Creation of Community Benefit Fund.

(a) (1) There is hereby established within the General Fund of the District of Columbia, a segregated, nonlapsing special revenue fund to be denominated as the Community Benefit Fund.  The Chief Financial Officer of the District of Columbia shall pay into the Community Benefit Fund all receipts from those fees and taxes specifically identified by any provision of District of Columbia law to be paid into the fund.

(2) The Chief Financial Officer of the District of Columbia shall create a sub-account within the Community Benefit Fund for each type of fee and tax that is to be paid into the fund and shall allocate the receipts from each type of fee and tax to the appropriate sub-account. The Mayor, or any District government agency or instrumentality which has been designated by the Mayor, may pledge and create a security interest in the funds in the Community Benefit Fund, or any sub-account or sub-accounts within the fund for the payment of the costs of carrying out any of the purposes described in subsection (b) of this section, the payment of the debt service on any bonds or other evidence of indebtedness issued by the District, or any District government agency or instrumentality, or any of the purposes described in subsection (b) of this section, without further action as permitted by section 490(f) of the District of Columbia Home Rule Act, approved December 24, 1973 (87 Stat. 809; D.C. Official Code § 1-204.90(f)).

(3)  If bonds or other evidence of indebtedness are issued, the payment shall be made in accordance with the provisions of the documents entered into by the District or any District agency or instrumentality in connection with the issuance of the bonds or other evidence of a security interest created pursuant to this subsection shall be valid, binding, and perfected from the time the security interest is created, with or without the physical delivery of any funds or any other property and with or without further action.  The security interest shall be valid, binding, and perfected whether or not any statement, document, or instrument relating to the security interest is recorded or filed.  The lien created by the security interest is valid, binding, and perfected with respect to any person (as defined in D.C. Official Code § 47-2001(i)) having claims against the District, whether or not the person has notice of the lien.

(b)  The funds deposited in the Community Benefit Fund shall be used to directly pay or to finance community area priorities, including recreation centers, small business development incentives, job training and readiness programs, school athletic facilities, and such other projects that the Mayor shall find to be of benefit to any area of the District. Any working capital or operating expenses permitted by this section shall be derived from sources from which the funds may be authorized. In addition to the purpose set forth above for the funds deposited in the Community Benefit Fund, there shall be the following expenditures made from the Fund.  All expenditures from the Fund shall be submitted to the Council, by legislation for approval.:

(1)  $5 million shall be made available to the Department of Parks and Recreation for capital investment for a Learning and Sports Center facility to be located adjacent to Fort Greble Recreation Center;

**RE-ENROLLED ORIGINAL**

(2) $5 million shall be available for school-based athletics, which funds shall be allocated to the Sports and Entertainment Commission and expended based upon a needs assessment prepared by the Superintendent of the District of Columbia Public Schools;

(3) $5 million shall be available for future allocation to projects located within the boundaries of Ward 6;

(4) $5 million shall be available for future allocation to projects located within the boundaries of Ward 7;

(5) $2 million shall be available for equipment and supplies at McKinley Technology High School to deliver the specialized curriculum in biotechnology, information technology, and broadcast technology;

(6) $10 million shall be made available to assess the feasibility of, and begin planning for, the National Capital Medical Center on the grounds of the former D.C. General Hospital;

(7) Ten percent of the revenue generated by the bonds authorized pursuant to section 203(b) shall be allocated for commercial development in specified areas including the Good Hope Road, South Capitol Street, Martin Luther King Jr. Avenue, and Minnesota Avenue corridors; provided, that boundaries for the aforementioned development shall be designated by the Office of Planning within 120 days of the effective date of this title;

(8) An amount not to exceed $125 million shall be made available exclusively for school construction and modernization; and

(9) An amount not to exceed $45 million shall be made available for capital improvements for public neighborhood libraries in the District of Columbia.

Sec. 203. Bond issuance.

(a) For the purposes of this section, the term:

(1) "Community Benefit Fund" means the Community Benefit Fund established by section 202.

(2) "Bonds" means the District of Columbia revenue bonds, notes, or other obligations (including refunding bonds, notes, and other obligations) in one or more series, authorized to be issued pursuant to section 490 of the Home Rule Act, as implemented by this title.

(3) "DC Ballpark TIF area" means the tax increment financing area designated and established by section 12a of the Tax Increment Financing Authorization Act of 1998, passed on reconsideration on December 21, 2004 (Re-enrolled version of Bill 15-1028).

(4) "Home Rule Act" means the District of Columbia Home Rule Act, approved December 24, 1973 (87 Stat. 809; D.C. Official Code § 1-201.01 *et seq.*).

(5) "Projects" means the financing, refinancing, or reimbursing of costs incurred in the site acquisition for, and the development, design, construction, improvement, furnishing, and equipping of recreation centers, libraries, small business development incentives, job training and readiness programs, school athletic facilities, and such other projects to be of

**RE-ENROLLED ORIGINAL**

benefit to any community of the District.

(b)  The Council hereby authorizes the issuance of one or more series of Bonds in an aggregate amount not to exceed $450 million for payment of the costs of the projects, of which $50 million shall be used for infrastructure improvements in the DC Ballpark TIF Area. There is hereby allocated to the bonds the funds in the Community Benefit Fund, or such portion of the funds as shall be determined in accordance with the terms of the bonds, for the payment of debt service on the bonds and the payment of such other costs as are permitted to be paid with funds from the Community Benefit Fund.  The issuance of any series of bonds shall be approved by resolution of the Council.

(c)  The Mayor may take any action necessary or appropriate in accordance with this title in connection with the preparation, execution, issuance, sale, delivery, and payment of bonds, including determinations of:

(1)  The final form, content, designation, and terms of the bonds, including a determination that the bonds may be issued in certificate or book entry form;

(2)  The principal amount of the bonds to be issued and the denominations of the bonds;

(3)  The rate or rates of interest on, and the method or methods of determining the rate or rates of interest on, the bonds;

(4)  The date or dates of issuance, sale, and delivery of, the payment of interest on, and the maturity date or dates of, the bonds;

(5)  Whether the bonds are to be sold at a competitive or negotiated sale and the terms and conditions of the sale;

(6)  The terms under which the bonds may be paid, optionally or mandatorily redeemed, accelerated, called or put for redemption, repurchase, or remarketing before their respective stated maturities;

(7)  Provisions for the registration, transfer, and exchange of each series of bonds and the replacement of mutilated, lost, stolen, or destroyed bonds;

(8)  The creation of any reserve fund, sinking fund, or other fund with respect to the bonds and the determination of the priority thereof;

(9)  The time and place of payment of the bonds;

(10)  Whether the bonds will be taxable, tax-exempt, or a combination thereof;

(11)  Procedures for monitoring the use of the proceeds received from the sale of the bonds to ensure that they are properly applied to the projects and used to accomplish the purposes of this title; and

(12)  Actions necessary to qualify the bonds under the blue sky laws of any jurisdiction where the bonds are marketed.

(d)  The bonds shall contain a legend, which shall provide that the bonds shall be special obligations of the District, shall be nonrecourse to the District, shall not be a pledge of, and shall not involve, the faith and credit or the taxing power of the District (other than the payments from the Community Benefit Fund or any other security authorized by this title), shall not

RE-ENROLLED ORIGINAL

constitute a debt of the District, and shall not constitute lending of the public credit for private undertakings as prohibited by section 602(a)(2) of the Home Rule Act.

(e)  The bonds shall be executed in the name of the District and on its behalf by the manual or facsimile signature of the Mayor. The Mayor's execution and delivery of the bonds shall constitute conclusive evidence of the Mayor's approval on behalf of the District of the final form and content of the bonds.

(f)  The official seal of the District, or a facsimile of it, shall be impressed, printed or otherwise reproduced on the bonds.

(g)  The bonds may be issued at any time or from time to time in one or more issues and one or more series and may be sold at public or private sale. A series of bonds may be secured by a trust agreement or trust indenture between the District and a corporate trustee having trust powers, and may be secured by a loan agreement or other instrument or instruments by means of which the District may:

(1)  Make and enter into any and all covenants and agreements with the trustee or the holders of the bonds that the District may determine to be necessary or desirable relating to:

(A)  The application, investment, deposit, use, and disposition of the proceeds of bonds and the other monies, securities, and property of the District;

(B)  The assignment by the District of its rights in any agreement;

(C)  The terms and conditions upon which additional bonds of the District may be issued;

(D)  The appointment of a trustee to act on behalf of bondholders and abrogating or limiting the rights of the bondholders to appoint a trustee; and

(E)  The vesting in a trustee for the benefit of the holders of bonds, or in the bondholders directly, such rights and remedies as the District shall determine to be necessary or desirable;

(2)  Pledge, mortgage or assign monies, agreements, property, or other assets of the District, either in hand or to be received in the future, or both;

(3)  Provide for bond insurance, letters of credit, interest rate swaps, or other financial derivative products or otherwise enhance the credit of and security for the payment of the bonds or reduce or otherwise manage the interest costs of the bonds; and

(4)  Provide for any other matters of like or different character that in any way affects the security for or payment on the bonds.

(h)  The bonds are declared to be issued for essential public and governmental purposes. The Bonds, the interest thereon, the income therefrom, and all monies pledged or available to pay or secure the payment of the bonds, shall at all times be exempt from taxation by the District, except for estate, inheritance, and gift taxes.

(i)  The District does hereby pledge and covenant and agree with the holders of the bonds that, subject to the provisions of the financing documents, the District will not limit or alter the revenues pledged to secure the bonds or the basis on which the revenues are collected or allocated, will not impair the contractual obligations of the District to fulfill the terms of any

RE-ENROLLED ORIGINAL

agreement made with the holders of the bonds, will not in any way impair the rights or remedies of the holders of the bonds, and will not modify in any way, with respect to the bonds, the exemptions from taxation provided for in this title, until the bonds, together with interest thereon, with interest on any unpaid installment of interest and all costs and expenses in connection with any suit, action or proceeding by or on behalf of the holders of the bonds, are fully met and discharged. This pledge and agreement for the District may be included as part of the contract with the holders of the bonds. This subsection shall constitute a contract between the District and the holders of the bonds. To the extent that any acts or resolutions of the Council may be in conflict with this title, this title shall be controlling.

(j) Consistent with section 490(a)(4)(B) of the Home Rule Act, and notwithstanding Article 9 of Subtitle I of Title 28 of the District of Columbia Official Code:

(1) A pledge made and security interest created in respect of the bonds or pursuant to any related financing document shall be valid, binding, and perfected from the time the security interest is created, with or without physical delivery of any funds or any property and with or without any further action;

(2) The lien of the pledge shall be valid, binding, and perfected as against all parties having any claim of any kind in tort, contract, or otherwise against the District, whether or not the party has notice; and

(3) The security interest shall be valid, binding, and perfected whether or not any statement, document, or instrument relating to the security interest is recorded or filed.

(k) If there shall be a default in the payment of the principal of, or interest on, any bonds of a series after the principal or interest shall become due and payable, whether at maturity or upon call for redemption, or if the District shall fail or refuse to carry out and perform the terms of any agreement with the holders of any of the bonds, the holders of the bonds, or the trustee appointed to act on behalf of the holder of the bonds, may, subject to the provisions of the financing documents, do the following:

(1) By action, writ or other proceeding, enforce all rights of the holders of the bonds, including the right to require the District to carry out and perform the terms of any agreement with the holders of the bonds or its duties under this title;

(2) By action, require the District to account as if it were the trustee of an express trust;

(3) By action, petition to enjoin any acts or things that may be unlawful or in violation of the rights of the holders of the bonds; and

(4) Declare all the bonds to be due and payable, whether or not in advance of or at maturity and, if all defaults be made good, annul the declaration and its consequences.

(l) The members of the Council, the Mayor, or any person executing any of the bonds shall not be personally liable on the bonds by reason of their issuance.

(m) Notwithstanding any other provision of this title, the bonds shall not be general obligations of the District and shall not be in any way a debt or liability of the District within the meaning of any debt or other limit prescribed by law. The faith and credit or the general taxing

RE-ENROLLED ORIGINAL

power of the District (other than monies in the Community Benefit Fund or any other security authorized by this title) shall not be pledged to secure the payment of the bonds.

Sec. 204.  Community investment plan.

(a)  The Mayor shall make a request for an appropriation for expenditures from the Community Benefit Fund, based on a community investment plan, which shall be:

(1)  Developed with input from Advisory Neighborhood Commissions, community groups, the faith community, representatives of the labor community, representatives of the business community, and other community stakeholders;

(2)  Submitted to the affected Advisory Neighborhood Commissions, community groups, the faith community, representatives of the labor community, representatives of the business community, and other community stakeholders for a comment period of one month; and

(3)(A)  Submitted by the Mayor to the Council for a 30-day period of review, excluding Saturdays, Sundays, legal holidays, and days of Council recess.

(B)  If the Council does not approve or disapprove the proposed plan, in whole or in part, by resolution within this 30-day review period, the proposed plan shall be deemed approved.

(b)  The request shall be designed to ensure that expenditures from the Community Benefit Fund are used to supplement, rather than supplant, capital funds already appropriated to District of Columbia agencies for similar purposes. The plans shall also seek to coordinate the expenditures of capital funds already appropriated to District government agencies to support community investment goals.

(c)  The request shall outline the manner in which funds shall be used to develop, maintain, and improve physical facilities and infrastructure owned by the District of Columbia, particularly for projects or improvements in community plans that do not qualify for capital budget funding.

Sec. 205.  The Tax Increment Financing Authorization Act of 1998, effective September 11, 1998 (D.C. Law 12-143; D.C. Official Code § 2-1217.01 *et seq*.), is amended by adding a new section 12a to read as follows:

"Sec. 12a.  DC Ballpark TIF Area.

"(a)  Notwithstanding any other provision of this act, there is hereby created a TIF area denominated as the DC Ballpark TIF Area, the real property tax increment revenues and the sales tax increment revenues from which shall be allocated as provided in this section. The DC Ballpark TIF Area is defined as the area  starting at the intersection of Half Street, S.W., and Interstate 395, proceeding in a southerly direction until the intersection of Half Street, S.W., with Water Street, S.W.; proceeding along an east/west line in an easterly direction to the Anacostia River shoreline; proceeding northeast along the Anacostia River shoreline to 1st Street, S.E.; proceeding in a northerly direction to M Street, S.E.; proceeding in an easterly

direction along M Street, S.E., to New Jersey Avenue, S.E.; proceeding in a northwesterly direction along New Jersey Avenue, S.E. to Interstate 395; proceeding in a northwesterly direction to the point of origin.

"(b)  Notwithstanding any other provision of this act, with respect to the DC Ballpark TIF Area, the initial sales tax amount shall mean the available sales tax revenue from locations within the area for the tax year preceding the year in which this section becomes effective and the initial assessed value shall mean the assessed value of each lot of taxable real property on the date this section becomes effective.

"(c)  Notwithstanding any other provision of this act, the real property tax increment revenues and the sales tax increment revenues from the DC Ballpark TIF Area shall be allocated and paid into the Community Benefit Fund, established by section 202(a) of the Ballpark Omnibus Financing and Revenue Act of 2004, passed on reconsideration on December 21, 2004 (Re-enrolled version of Bill 15-1028), and which is hereby declared to be a tax increment allocation account as described in section 6.  The revenues so deposited in the Community Benefit Fund shall be used for any of the purposes described in section 202(b) of the Ballpark Omnibus Financing and Revenue Act of 2004, passed on reconsideration on December 21, 2004 (Re-enrolled version of Bill 15-1028).

"(d)  Without limiting the generality of this act, including the ability to apply the real property tax increment revenues and the sales tax increment revenues to the payment of TIF bonds, the funds in the Community Benefit Fund may be used to secure bonds or other evidence of indebtedness issued in accordance with the provisions of section 490 of the District of Columbia Home Rule Act, approved December 24, 1973  (87 Stat. 809; D.C. Official Code § 1-204.90), without regard to any limitations contained in this act.

"(e)  The $300 million limitation on the issuance of TIF bonds contained in section 3(b) and the time limitation on the issuance of TIF bonds contained in such section shall apply to any bonds supported in whole or in part by real property tax increment revenues or sales tax increment revenues allocated to the Community Benefit Fund.".

TITLE III.  FISCAL IMPACT STATEMENT; EFFECTIVE DATE.
Sec. 301.  Fiscal impact statement.
The Council adopts the fiscal impact statement of the Chief Financial Officer, as amended December 21, 2004, as the fiscal impact statement required by section 602(c)(3) of the District of Columbia Home Rule Act, approved December 24, 1973 (87 Stat. 813; D.C. Official Code § 1-206.02(c)(3)).

Sec. 302.  Effective date.
This act shall take effect following approval by the Mayor (or in the event of veto by the Mayor, action by the Council to override the veto), a 30-day period of Congressional review as provided in section 602(c)(1) of the District of Columbia Home Rule Act, approved December 24, 1973 (87 Stat. 813; D.C. Official Code § 1-206.02(c)(1)), and publication in the District of

**RE-ENROLLED ORIGINAL**

Columbia Register.

Chairman
Council of the District of Columbia

Mayor
District of Columbia