IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SOUTHEAST LAND DEVELOPMENT ASSOCIATES, L.P., et al. ) ) )  Plaintiffs ) ) ) v. ) DISTRICT OF COLUMBIA, et al. ) ) Defendants ) ) | Civil Action No. 05-1413(RJR) |

DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION FOR AN EXTENSION OF TIME TO OPPOSE PLAINTIFFS' MOTION
FOR A PRELIMINARY INJUNCTION

We are surprised that plaintiffs oppose defendants' motion for an extension of time in which to file their opposition to plaintiffs' application for a preliminary injunction. One might expect that if they had confidence in that application, they would not try to prevent defendants from being heard on its merits. Plaintiffs' position scarcely serves the interests of the Court in reaching a considered decision on the application.

In fact, what plaintiffs are engaging in is gamesmanship to attempt to have their preliminary injunction application heard in advance of defendants' motion, filed July 22, 2005, to dismiss the complaint for lack of subject-matter jurisdiction and failure to state a claim on which relief can be granted.

A close and careful reading of plaintiffs' supporting exhibits, especially Exhibit B containing their two e-mails of July 22, 2005, shows that this is so. They were attempting to maneuver defendants to hold off filing their motion to dismiss—even

though it is made on jurisdictional grounds—until after their preliminary injunction application is heard. Such a sequence stands the proper order of the case on its head and is obviously unacceptable to the defendants.

It ought to be unacceptable to the Court as well. If our motion to dismiss on jurisdictional grounds is well-taken, the Court has no jurisdiction to grant the preliminary injunction or take any other action than dismissal of the complaint. So the motion to dismiss should be heard first and then the preliminary injunction application on a full record, but only if the Court determines that it has jurisdiction over the subject matter.

In that regard, we believe that plaintiffs are flatly mistaken in saying that briefing on our Motion to Dismiss cannot be completed prior to the time within which a hearing on the preliminary injunction must be held. (Plaintiffs' Opposition at 2). They state that "Plaintiffs' Opposition to Defendants' Motion to Dismiss is not due until August 5, 2005." (Plaintiffs' Opposition at 5). That is in error. Local Rule 7(b) of this Court's Civil Rules requires an opposition to a motion to be filed within 11 days of service. Our Motion to Dismiss was filed and served on July 22, 2005, and 11 days are up August 2, 2005. The Motion to Dismiss will then be ripe for decision, in advance of the time of hearing the application for preliminary injunction. This is as it should be.

Litigation is not a game in which the parties vie for tactical advantages at the expense of the integrity of the process and informed decision-making on the merits of the arguments made. This is especially so where subject-matter jurisdiction is at stake. One such suit has already been dismissed in the Superior Court on

2

jurisdictional grounds, and our motion papers in this Court show that a similar fate should await this lawsuit. That, of course, will moot the preliminary injunction application.

Moreover, plaintiffs' recital of events, in trying to depict defendants as being unreasonably unwilling to consent to a so-called "stand still" agreement, is notable for what it does not disclose. If any one is being "disingenuous" (Plaintiffs' Opposition at 3), it is plaintiffs on this point. In particular, plaintiffs failed to attach two documents which put this dispute in context and show the overreaching nature of their demands on defendants to cease all activity looking toward acquisition of any property on the baseball stadium site—<u>even if it does not involve plaintiffs' properties.</u>

Plaintiffs, in their e-mail of July 20, 2005 (part of Exhibit B), refer to their letter to the District of June 28, 2005, but do not attach it. (We attach a copy as Exhibit A hereto.) That letter, at page 4, made the following demands:

> "We ask the District to take the following actions immediately:
>
> 1. Cease all activity relating to the acquisition of the primary ballpark site until at least July 27, 2005 and rescind all outstanding letters indicating the District's and Mayor's intent to proceed;
>
> 2. Provide or make available to us, no later than July 13, 2005, <u>all</u> the documentation (including but not limited to notes of <u>i</u>nterviews, appraisals, calculations, and drafts) relied upon by the consultants and the CFO in developing the "Study" that is claimed to constitute the re-estimate as required by the Ball Park Financing and Emergency Cost Trigger Legislation; and
>
> 3. Make such consultants and CFO available to meet with us after we receive the information noted above, in order to answer questions regarding the "Study."

The undersigned responded to plaintiffs' counsel on July 11,

3

2005 that the District would not accede to plaintiffs' demands.

Plaintiffs also fail to disclose their letter of July 22, 2005, to the undersigned, during discussion about a possible extension of time. (We attach a copy as Exhibit B) In that letter they reiterated their demands as follows:

> "1. Your clients will not take any action to enter "into any obligation to acquire or purchase any property" at the "primary ballpark site" as described in the Ballpark Omnibus Financing and Revenue Act of 2004 and the Private or Alternative Stadium Financing and Cost Trigger Emergency Act of 2005 until after the hearing on our Motion for Preliminary Injunction. [footnote omitted].
>
> 2. Your clients will not make any offers to purchase or acquire, or otherwise begin negotiating for the purchase of the parcels of land located in the footprint of the "primary ballpark site", as that term is defined in the above-referenced legislation, until after the hearing on our Motion for Preliminary Injunction."

The unreasonableness of these demands is patent on their face. They are not even limited to plaintiffs' properties on the site, but demand cessation of any acquisition activities on "any property" at the "primary ballpark site", no matter who owns it or how willing other owners are to enter into negotiations with the District for voluntary purchase of their properties. It was to those demands that the undersigned responded on July 22, 2005 by stating: "Please be advised that the conditions in your letter to me of July 22, 2005, are not acceptable to our client." (See Exhibit E to Plaintiffs' Opposition).

Plaintiffs for some reason state as follows of this response:

> "Finally, at approximately 4:02 p.m.on July 22, 2005, Defendants stated in writing that they would not agree to any "stand still agreement." (Plaintiffs' Opposition at 5) (Emphasis supplied.)

4

What we clearly said was that we would not agree to the conditions plaintiffs sought to impose in the letter they have omitted to include in their Opposition.

In all candor, we must state that we find this process of debating "Who struck John?", which plaintiffs have initiated in their Opposition, to be demeaning and unprofessional. We urge this Court to cut through this tangle of accusations by plaintiffs and ripostes by defendants, permit us to file our opposition papers to the preliminary injunction application, and get on with the litigation.

Finally, plaintiffs say that it is "absurd" (Plaintiffs' Opposition at 6) for defendants to assert that the present suit may jeopardize the future of major league baseball in the District. As we will show in the Declaration of Mark H. Tuohey, III, Chair of the D.C. Sports and Entertainment Commission who negotiated and signed the Agreement that brought baseball here, that is precisely what is at stake here. The Agreement (Exhibit 5 to the Application for Preliminary Injunction) has numerous interrelated provisions, including:

1. an obligation to obtain site control of the baseball stadium site by December 31, 2005 (Section 7.02);
2. an obligation to enter into a lease and construction agreement for the new stadium by December 31, 2005 (Section 7.04);
3. an obligation to deposit the revenues from the sale of District bonds for the new stadium by December 31, 2005. (Section 7.06)

Delays in these interrelated provisions will delay construction of the stadium, and if the failures to meet deadlines and delays go on too long, the baseball team can terminate the Agreement and leave the District. (Section 8.03).

The team has also undertaken a host of comprehensive "Community Benefit Obligations" to the youth, workers, and small disadvantaged business people of the

5

District which would also terminate on departure of the team from the District. All this and more will be comprehensively laid out in Mr. Tuohey's Declaration, which we plan to file with the Court if plaintiffs do not succeed in preventing us from doing so.

The motion for an extension of time until July 27, 2005, within which to file defendants' opposition papers to the application for a preliminary injunction should be granted.

                    Respectfully submitted,

                    ROBERT J. SPAGNOLETTI
                    Attorney General for the
                    District of Columbia

                    GEORGE C. VALENTINE
                    Deputy Attorney General
                    Civil Litigation Division

                    EDWARD TAPTICH
                    Section Chief, Equity II

                    _____
                    /s/ DANIEL A. REZNECK 31625
                    Senior Assistant Attorney General for
                    the District of Columbia
                    441-4th St., N.W., 6th Floor South
                    Washington, D.C. 20001
                    202-724-5691

                    Attorneys for Defendants