

**Kirkpatrick & Lockhart Nicholson Graham LLP**

1800 Massachusetts Avenue, N.W.
Suite 200
Washington, DC  20036-1221
202.778.9000
Fax 202.778.9100
www.klng.com

Barry M. Hartman
202.778.9338
Fax: 202.778.9100
bhartman@klng.com

June 28, 2005

**Via Facsimile and Hand Delivery**

The Honorable Robert J. Spagnoletti
Office of the Attorney General
Government of the District of Columbia
John A. Wilson Building
1350 Pennsylvania Avenue, NW, Suite 407
Washington, DC 20004

> Re:    *Southeast Land Development Associates, LP*
>         Notice of Intent to Sue

Dear Mr. Attorney General:

This letter notifies you that our client Southeast Land Development Associates, LP ("SLDA") – which owns real property at 60-80 O Street, SE, square 70 – intends to file suit against the District of Columbia ("District") and the Mayor pursuant to 42 U.S.C. § 1983 for violations of their civil rights. Other similarly-situated landowners may join this suit. Although notice of this suit is not required by any law, we are giving this notice in an effort to avoid litigation. As outlined at the end of this letter, it is imperative that the Mayor and District immediately cease their unlawful actions regarding the primary ballpark site (including our client's property) and instead proceed to review other sites as required by law.

The District's ongoing actions to acquire our client's property for a professional ballpark violate our client's rights guaranteed by the Fifth Amendment to the United States Constitution. The Council of the District of Columbia has determined that acquiring what is known as the "primary ballpark site" serves a valid public purpose or need only if the District's Chief Financial Officer ("CFO") performs a valid estimate of the costs of acquiring the entire primary ballpark site before May 15, 2005, and that "re-estimate" demonstrates that the cost of acquiring this site will not exceed $165 million. No such valid estimate has been obtained, yet the District and the Mayor are moving forward to acquire the property. In so doing, your clients are directly interfering with our client's use of their property. Because no valid public purpose as defined by



**Kirkpatrick & Lockhart Nicholson Graham LLP**

The Honorable Robert J. Spagnoletti
June 28, 2005
Page 2

the Council exists to justify the taking of our client's property, the District and Mayor's unlawful actions unconstitutionally deprive our client of their liberty and property rights.

<u>Ball Park Financing and Emergency Cost Trigger Legislation</u>

The Private or Alternative Stadium Financing and Cost Trigger Emergency Act of 2004 and the Ballpark Omnibus Financing and Revenue Act of 2004 ("Ball Park Financing and Emergency Cost Trigger Legislation") establishes specific conditions precedent to any acquisition of the "primary ballpark site," and defines the public purpose and benefit that justifies taking our client's property.

The Ball Park Financing and Emergency Cost Trigger Legislation defines the "primary ballpark site," as:

> [T]he site bounded by N Street, S.E., Potomac Avenue, S.E., South Capitol Street, S.E., and 1st Street, S.E., *or such other* site as determined in accordance with subsection (b)(2) of this section *if this primary site shall be unavailable to be acquired by the Mayor.*

§ 105(a)(2) (emphasis added). The Ball Park Financing and Emergency Cost Trigger Legislation mandates that the primary ballpark site is "unavailable to be acquired by the Mayor" unless the District performs a valid re-estimate of certain acquisition costs by May 15, 2005, and that such cost re-estimate does not exceed $165 million. Specifically, section 107(d) and (e) provide:

> Sec. 107. Requirement to review costs and pursue alternative ballpark site.
>
> (d) Prior to May 15, 2005, and prior to the date upon which the District enters into any obligation to acquire or purchase any property on a site bounded by N Street, S.E., Potomac Avenue, S.E., South Capitol Street, S.E., and 1st Street, S.E. ("primary ballpark site"), the Chief Financial Officer shall re-estimate the costs to the District for land acquisition and infrastructure and provide a report on this re-estimate to the Mayor and the Council.
>
> (e) If the total amount of these re-estimated costs to the District exceeds $165 million, the primary ballpark site *shall be deemed financially unavailable by the District* pursuant to this title. Pursuant to this title, the Mayor and the Sports and Entertainment Commission *shall pursue replacement of the primary ballpark site with a substantially less costly site* in the District, subject to the approval of Baseball Expos, L.P., or its assigns or successors, in accordance with the Baseball Stadium Agreement.

§107(d), (e). The Ball Park Financing and Emergency Cost Trigger Legislation specifies that this re-estimate <u>must</u> include, among other things, "(1) One *separate appraisal of each parcel of*



Kirkpatrick & Lockhart Nicholson Graham LLP

The Honorable Robert J. Spagnoletti
June 28, 2005
Page 3

*land* to be acquired, which shall be performed after the effective date of this title;" and (2) "An estimate of the environmental remediation costs." §107(b), (c) (emphasis added).

Thus, cost is at the core of the Council's determination that there is a legitimate public purpose in going forward with this project at this location. The Council determined that a ballpark on our client's property "will contribute to the social and economic well-being of the citizens of the District of Columbia and significantly enhance the economic development and employment opportunities within the District of Columbia" – but only if it is *"financially available."* The Council drew the line where this particular public purpose and need ended: if a valid re-estimate of land acquisition costs for this particular site exceeds $165 million. Consequently, if those costs exceeded the cap, the Council specifically determined that neither the Mayor nor the District have the authority to confiscate our client's property. Under these circumstances, the District Council directed the District and Mayor to seek a replacement site.

<u>The Mayor and District's Actions</u>

On or about April 25, 2005, Chief Financial Officer Natwar Gandhi reported to the District of Columbia City Council that he had allegedly obtained from an outside consultant a re-estimate of land acquisition costs mandated by section 107 of the Ball Park Financing and Emergency Cost Trigger Legislation, entitled a "District of Columbia Office of the Chief Financial Officer Land Acquisition Cost Study, March 22, 2005" (hereafter "Study"). The CFO claimed that the re-estimated costs of land acquisition, environmental remediation, and infrastructure would be $161.3 million, only 2% below the $165 million cap.

The "Study" does not meet the express or implied requirements contained in the Ball Park Financing and Emergency Cost Trigger Legislation because, among other reasons: (a) the "Study" does not include separate appraisals for each parcel of land that are required by the Ball Park Financing and Emergency Cost Trigger Legislation; (b) the "Study" fails to meet professional standards for conducting such cost estimates; and (c) the "Study" fails to account for even the most simple and material facts that would cause the estimate to rise well beyond $165 million. By way of example, the land acquisition study ignores basic and crucial information about land values and comparable sales. In addition, the environmental remediation cost figures lack any factual basis.[1]

---

[1] In addition to the "Study" we also analyzed all documents supporting the "Study" that were made publicly available. We assume there are no secret or as yet undisclosed documents that have been withheld from public view. If such information is in existence, please disclose it as outlined below.



**Kirkpatrick & Lockhart Nicholson Graham** LLP

The Honorable Robert J. Spagnoletti
June 28, 2005
Page 4

Despite the absence of a valid re-estimate, the District and Mayor have begun the acquisition process and have advised our client that their property <u>will</u> be acquired.

<u>The Constitutional Violations</u>

The actions by the District and Mayor to confiscate our client's property violates our client's federally protected Fifth Amendment right protecting it from any deprivation of property and liberty without due process of law, the Public Use clause of the Fifth Amendment, and the Civil Rights Act, 42 U.S.C. § 1983. Under these circumstances, a promise to pay "just compensation" for unlawfully seized property does not cure these constitutional violations. *See Lingle v. Chevron*, 544 U.S. __ (2005) (slip op., at 13-14). Thus, there is no adequate remedy at law for these constitutional violations.[2]

We ask the District to take the following actions immediately:

1. Cease all activity relating to the acquisition of the primary ballpark site until at least July 27, 2005 and rescind all outstanding letters indicating the District and Mayor's intent to proceed;

2. Provide or make available to us, **no later than July 13, 2005**, *all* the documentation (including but not limited to notes of interviews, appraisals, calculations, and drafts) relied upon by the consultants and the CFO in developing the "Study" that is claimed to constitute the re-estimate as required by the Ball Park Financing and Emergency Cost Trigger Legislation; and

3. Make such consultants and CFO available to meet with us after we receive the information noted above, in order to answer questions regarding the "Study."

---

[2] Neither *Kelo v. City of New London*, 545 U.S. __, (2005) nor *Siegel v. District of Columbia*, C.A. No. 05-2770 (D.C. Super. Ct., June 23, 2005) provide support to your clients' actions. In *Kelo*, the Court recognized the importance of deferring to a legislature's determination of public need for purposes of confiscating private property pursuant to the Fifth Amendment, and also emphasized the need to avoid debating the wisdom of such choices. Unlike the *Kelo* plaintiffs, we are not necessarily seeking judicial review to debate the Council's wisdom reflected in legislation that taking our client's property for a ballpark may be a legitimate public purpose. We are seeking judicial review to preserve the Council's determination in that legislation that no such use exists in the current circumstances. Unlike *Siegel*, we are seeking to vindicate federally-protected rights secured by the United States Constitution and 42 U.S.C. §1983, not rights secured under the Ball Park Financing and Emergency Cost Trigger Legislation.



**Kirkpatrick & Lockhart Nicholson Graham** LLP

The Honorable Robert J. Spagnoletti
June 28, 2005
Page 5


Because of the speed with which the District is apparently moving to acquire our client's property, time is of the essence. Accordingly, if we do not hear from you by **Friday, July 8, 2005**, close of business, we will institute suit immediately, and seek appropriate preliminary and permanent relief, including attorneys' fees and costs as authorized by the Civil Rights Act.

We look forward to hearing from you.

Sincerely,

Barry M. Hartman
Charles Lee Eisen
*Counsel for SLDA*