IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SOUTHEAST LAND DEVELOPMENT :
ASSOCIATES, L.P. *et al.,* :
            Plaintiffs :
    v:                            :       Civ. Act. No. 05-1413(RJR)
                                :
THE DISTRICT OF COLUMBIA, *et al.,* :
            Defendants :


DEFENDANTS' MEMORANDUM POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFFS' APPLICATION FOR A PRELIMINARY INJUNCTION


INTRODUCTION

      Plaintiffs have applied for a preliminary injunction which would prevent defendants not only from initiating eminent domain proceedings as to Plaintiffs' properties but would even prevent the District from negotiating with them for a voluntary purchase of their properties. Application for Preliminary Injunction ("Application") at 1.  Defendants have moved this Court to dismiss the Complaint for lack of subject-matter jurisdiction on numerous grounds and for failure to state a claim on which relief can be granted, pursuant to Rules 12(b)(1) ands 12(b)(6) of the Federal Rules of Civil Procedure.  If the Court agrees with any of the grounds for dismissal advanced by the defendants, the application for a preliminary injunction becomes moot. The Court will be justified in dismissing the Complaint and dispelling the cloud this suit has cast over the return of major league baseball to the District of Columbia in a new baseball stadium.

      Granting the motion to dismiss would not only moot the application for a preliminary injunction, it would also relieve the Court and the parties from having to wade through the huge

volume of Plaintiffs' exhibits, numbering many hundreds of pages, only to reach the result that is clearly mandated by the case law -- denial of the application.

Fortunately, the Court does not have far to search for a compelling precedent in this jurisdiction. A little over a month ago, Judge Urbina denied a preliminary injunction to block eminent domain proceedings from being undertaken in connection with a project in Southeast Washington, the Skyland Shopping Center. *Rumber v. District of Columbia*, Civ. Act. No. 04-1170 (RMU), Memorandum Opinion, decided May 31, 2005 ("Memorandum Opinion"). A copy of his opinion is attached as Appendix A to this Memorandum.

Judge Urbina's persuasive reasoning, in a factual and legal setting very similar to that in the present case, should commend itself to the Court on the present application and lead to the same result. It is not often that such a forceful recent precedent is so close at hand.

Large portions of our Memorandum in support of our Motion to Dismiss are also relevant to the present application. Rather than burdening the Court with repetitive pleading on the same issues, we respectfully incorporate that Memorandum by reference into this Opposition. We will direct the Court to the sections that are particularly pertinent to the decision on the preliminary injunction application.

We see no warrant or justification for Plaintiffs' suggestion in their application about combining the hearing on the preliminary injunction with a trial on the merits. If this case were ever to go to trial -- despite all the legal barriers standing in the way -- the Court would have to become involved in the most excruciating details of cost and budget estimating procedures relating to land acquisition, environmental remediation, and infrastructure construction, matters which the Council delegated to the Chief Financial Officer of the District of Columbia to resolve. These minutiae are hardly appropriate for decision on an application for interlocutory relief.

We now turn to the applicable standards for the grant of such interlocutory relief and the failure of Plaintiffs to meet any of them.

1. <u>The Standards for an Interlocutory Injunction.</u>

In order to obtain a preliminary injunction, Plaintiffs must satisfy *each* prong of the following four-part test: "(1) there is a substantial likelihood of success on the merits; (2) Plaintiffs will suffer irreparable harm should the relief be denied; (3) an injunction would not substantially injure other interested parties; and (4) the public interest will be furthered by the issuance of the requested order." *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998) (quoting *City Fed. Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995)).

Because interim injunctive relief is an extraordinary for of judicial relief, courts should grant such relief sparingly. *See e.g. Mazurek v. Armstrong*, 520 U.S. 968, 972 ("It frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."). In *Rumber*, Judge Urbina characterized this as the "hefty burden" plaintiffs must "shoulder" to justify injunctive relief. Memorandum Opinion at 2. Judge Urbina went on to emphasize:

> It is particularly important for the movant to demonstrate a substantial likelihood of success on the merits. *Cf. Benten v. Kessler*, 505 U.S. 1084, 1085 (1992) (per curiam). Indeed, absent a "substantial indication" of likely success on the merits, "there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review." *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 38 F. Supp. 2d 114, 140 (D.D.C. 1999) (internal quotation omitted).

*Id.* at 7.

He continued:

> Moreover, the other salient factor in the injunctive-relief analysis is irreparable injury. A movant must demonstrate at least "some injury" to warrant the granting of an injunction. Indeed, if a party makes no showing of irreparable injury, the court may deny the motion for injunctive relief without considering the other factors.

*Id.,* at 7-8 (citing *City Fed. Fin. Corp,.* 58 F.3d at 747).

Finally, he summed up as follows: "Therefore, although the trial court has the discretion to issue or deny a preliminary injunction, it is not a form of relief granted lightly. In addition, any injunction that the court issues must be carefully circumscribed and tailored to remedy the harm shown." *Id.* at 8 (citing *National Treasury Employees Union v. Yeutter*, 918 F.2d 968, 977 (D.C. Cir. 1990))

   2.  Lack of Substantial Likelihood of Success on the Merits.----

As we have shown in our Memorandum in support of our Motion to Dismiss, few propositions are better established than that a property owner cannot attack an underlying statutory or regulatory program involving condemnation of property or agency decision seeking to implement such a program before the completion of the state condemnation proceedings. The leading case supporting this proposition is *Williamson County Reg'l Planning Comm'n. v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194-195 (1985). In dismissing the plaintiffs' showing in *Rumber* for failure to demonstrate the likelihood of success on the merits, Judge Urbina followed the analysis of the Supreme Court in *Williamson County*. He stated:

> A takings claim, even one in the cloak of an equal protection claim, does not amount to a constitutional violation until the state has denied just compensation. *Williamson County,* 473 U.S. at 195. The plaintiffs additionally claim that the defendants violated their due process rights…. But again, there has been no taking of private property, there has been no denial of just compensation, and the threatening action in this case is the commencement of condemnation proceedings (which proceedings are in fact the mechanism by which D.C. would ensure that property is *not* taken

>without due process of law. See D.C. Official Code § 16-1311;
>*Berman v. Parker,* 348 U.S. 26, 36 (1954)

*Id.* at 10 (emphasis in original).

This is the same argument we have made in our. Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss For Lack of Subject Matter Jurisdiction and Failure to State a Claim ("Motion to Dismiss Memorandum") at 10-19.  We rely on these sections of our Memorandum on this point, in addition to Judge Urbina's analysis and Judge Alprin's decision in the Siegel case.

Plaintiffs here, like the plaintiffs in *Rumber*, assert both taking and due process claims. As has been shown, Judge Urbina dismissed both theories as a basis for finding a substantial likelihood of success on the merits.

Judge Urbina also relied, in discussing this factor, on the line of cases beginning with *Berman v. Parker,* 348 U.S. 26 (1954), which arose in this jurisdiction, and on the decision of our Court of Appeals in *Donnelly v. District of Columbia*, 269 F.2d 546 (D.C. Cir. 1959) (dismissing an effort to enjoin an eminent domain proceeding by the District) – Donnelly is cited in our earlier Memorandum in support of the Motion to Dismiss at 15.  Judge Urbina did not have the benefit of the subsequently decided ruling of the Supreme Court in *Kelo v. City of New London,* 545 U.S. ___ (2005), which further reinforces his decision on this point.

We showed in our Memorandum in support of the Motion to Dismiss that none of Plaintiffs' counts here alleges a claim on which relief can be granted, citing numerous additional authorities, including Judge Posner's statement that no taking in the last half century has been invalidated on "private use" grounds. *Gamble v. Eau Claire Cy.,* 5 F.3d 285, 287 (7th Cir. 1993). The Supreme Court's decision in *Kelo*, especially in light of the dissenters' agreement that a

stadium is a paradigm example of "public use," delivered the coup de grace to Plaintiffs' claims on the merits. *See Kelo*, 2005 Lexis 5011 at 16.

We respectfully refer the Court to pages 18-24 of our Memorandum in support of our Motion to Dismiss, as showing the insubstantiality of Plaintiffs' claims.

3. Lack of Irreparable Injury.----

In our Memorandum in support of our motion to dismiss, we have shown the reasons why irreparable injury is absent here. Plaintiffs have a fully adequate remedy at law—just compensation in a condemnation proceeding, in which they can also raise whatever defenses they have, included an asserted lack of authority for the taking. Their alleged harm is all monetary, not the stuff out of which equitable relief is fashioned. Judge Urbina had little difficulty in disposing of the plaintiffs' claim of irreparable injury, in words fully applicable to the present application:

> First and foremost, no condemnation proceedings have commenced. As previously stated, if and when condemnation proceedings are commenced pursuant to the eminent domain power, the court has no reason to believe anything other than that any plaintiffs with a protected property interest will have the opportunity to present their arguments and will receive just compensation for any financial loss. Also, as the defendants indicate, relocation payments are required under law for certain types of projects in which D.C. or federal funds are used (*citing*, Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. 4601 *et seq*.) At this point, the court has no reason to doubt the defendants will abide by all pertinent regulations in good faith to provide relocation assistance to the plaintiffs entitled to such benefits…. Reinforcing the court's confidence that the process is proceeding justly, none of the plaintiffs have been given any notice to vacate or any other deadline for vacating, or have been denied relocation assistance.... In short, the court agrees with the defendants and precedent that the mere prospect of having property taken by eminent domain is not an injury sufficient to support judicial intervention. *Williamson County, 473 U.S. at 194-95; Patel v. City of Chicago*, 383 F.3d 569, 574 (7th Cir. 2004).

Memorandum Opinion at 15-16.

Several sections of our Memorandum in support of our Motion to Dismiss also demonstrate that Plaintiffs have an adequate remedy at law, no basis for invoking equity jurisdiction, and hence no irreparable injury. *See* Motion to Dismiss Memorandum at 10-18.

Plaintiffs cannot show irreparable injury in any form. As Judge Urbina stated, "It is well-settled that economic loss alone will rarely constitute irreparable harm." Memorandum Opinion at 16-17 (citing *Wisconsin Gas Co. v. Federal Energy Regulatory Comm'n,* 758 F.2d 669, 674 (D.C. Cir. 1985); *Barton v. District of Columbia,* 131 F. Supp. 2d 236, 247 (D.C. 2001)). He concluded:

> [B]ecause this case involves an eminent domain proceeding, which includes procedures to protect the rights of those with a property interest, and the court has no reason to believe that the defendants will not follow applicable law, the court concludes that this business-related economic damage falls into the realm of the availability of adequate compensatory or corrective relief being available at a later date. *See Va. Petroleum Jobbers Assoc. v. Fed. Power Comm'n.,* 259 F.2d 921, 925 (D.C. Cir. 1958). Accordingly, the court determines that the plaintiffs have not demonstrated irreparable harm.

*Id.* at 17.

4. The Balance of the Equities Overwhelmingly Favors the Defendants.---

In *Rumber* the defendants submitted an affidavit of the property manager of the Skyland project, who detailed a number of harms to the defendants resulting from an injunction. Memorandum Opinion at 18. After reciting these effects, Judge Urbina concluded:

> The plaintiffs fail to persuade the court that other parties will not be substantially injured, namely, the defendants, other owners and tenants not party to the suit, and the community. In fact, in balancing the equities as set forth by the parties, the court's scale weighs the potential harm to the defendants in issuing the

7

>injunction as more severe than the potential harm to the plaintiffs if condemnation proceedings were permitted to commence.

*Id.*

The same is true here.  Defendants have submitted the attached Declaration of Mark H. Tuohey, III, chairman of the D.C. Sports and Entertainment Commission, which is a party to the agreement that brought major league baseball back to the District.  Mr. Tuohey participated in the negotiations and is familiar with the contents of the agreement. He has explained in detail in his Declaration all the different types of potential harm and domino effects which will ensue if an injunction is granted, including but not limited to rendering the District's performance under the agreement with Major League Baseball difficult if not impossible.. Such injuries will accrue to the District and many persons in it, especially its youth, if this happens.  These potential harms include:

1. Failure to meet the deadline for obtaining site control by the specified date of December 31, 2005, which in turn will delay the construction of the new stadium.(Tuohey Dec. at ¶. 5).

2. Interference with the District's sale of the revenue bonds for the stadium, also scheduled to be concluded by December 31, 2005.  At a minimum this would mean higher interest costs for the District, even assuming the sale of bonds would not be chilled altogether *(id.)*;

3. Delay in the completion of the stadium, which is supposed to be ready for play in early 2008; this would expose the District to millions of dollars in losses (*id.* at ¶. 7);

4.  If the deadlines specified in the baseball agreement are missed by more than 24 months, the baseball team can exercise a right of termination of the agreement and once again leave the District without a major league team (*id.*);

5.  The loss of numerous community benefits to the District, its residents, and particularly its youth, if the team is freed from its Community Benefit Obligations as set forth in the Agreement. This would also entail the loss of jobs by D.C. residents and business opportunities for local, small and disadvantaged businesses in the District (*id.* at ¶¶ 8, 9);

6.  The District would also lose millions of dollars in rent for the new stadium and the surrounding area earmarked for development would suffer devastating effects (*id.* at ¶ 9).

Since there is nothing on Plaintiffs' side to show irreparable injury if the injunction is not granted, the harms potentially resulting from the grant of an injunction overwhelmingly tip the balance of the equities in favor of the defendants.

5. The Public Interest.-----

The potential harms to the District and other parties not only tip the balance of the equities overwhelmingly toward the defendants, but show that the public interest favors the denial of the injunction. As Judge Urbina concluded his Memorandum Opinion at 19:

> The Skyland Act itself speaks to the public interest of the project that the plaintiffs seek to enjoin. The defendants persuaded the court that an injunction would significantly threaten the success of this project, which the legislature has enacted for the public welfare. . . .Accordingly, the court concludes that the injunction would not further the public interest, but rather, would severely impede it.

The same is true here. The application for a preliminary injunction should be denied.

9

Date:  July 26, 2005                                Respectfully submitted,

                                            ROBERT J. SPAGNOLETTI
                                            Attorney General for the
                                            District of Columbia
                                            GEORGE C. VALENTINE
                                            Deputy Attorney General in
                                            Charge of the Civil Division

                                            EDWARD TAPTICH
                                            Section Chief, Equity II


                                            _____
/s/     DANIEL A. REZNECK
                                            Senior Assistant Attorney
                                            General for the District Of Columbia
                                            441-4th St., N.W.,6th Floor South
                                            Washington, D.C. 20001
                                            (202)724-5691

                                            Attorneys for Defendants