# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SOUTHEAST LAND DEVELOPMENT ASSOCIATES, L.P., et al. | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Civil Action No. 05-1413 (RWR) |
| THE DISTRICT OF COLUMBIA, et al. | ) ) ) | |
| Defendants. | ) ) ) | |

**PLAINTIFFS' COMBINED MEMORANDA OF POINTS AND AUTHORITIES
IN REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' APPLICATION FOR
PRELIMINARY INJUNCTION AND
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT**

## TABLE OF CONTENTS

I.    INTRODUCTION AND SUMMARY OF ARGUMENT..............................................1

II.   ARGUMENT ...........................................................................................................8

    A.    There Is A Very Substantial Likelihood That Plaintiffs Will Succeed On The
        Merits .................................................................................................................8

        1.    This Court has Subject Matter Jurisdiction Over Plaintiffs' Claims of
             Violations of Federal Law and the Constitution of the United States.........8

             (a)    Plaintiffs have suffered and will suffer injury-in-fact ....................9

             (b)    The causal connection between Defendants' actions at issue in
                   this case and Plaintiffs' actual and imminent injury is
                   indisputable. ................................................................................ 11

             (c)    Plaintiffs' harm is redressable by Defendants............................... 12

             (d)    Plaintiffs satisfy prudential standing considerations..................... 13

             (e)    Consideration of the constitutional claims in this case falls
                   squarely within the civil rights and constitutional cases
                   traditionally heard by federal courts............................................. 13

        2.    Whether Defendants are Acting Pursuant to the Public Purpose
             Identified by the Council Presents a Justiciable Case or Controversy...... 16

        3.    Plaintiffs' Claims are Ripe for Decision .................................................. 18

        4.    There is No Adequate Remedy at Law and This Court has Equity
             Jurisdiction ................................................................................................ 22

        5.    Plaintiffs State a Cognizable Claim for Violation of the Fifth
             Amendment Public Use Clause and are Very Likely to Succeed on the
             Merits of this Claim .................................................................................. 23

        6.    Plaintiffs State a Cognizable Claim Based on the Substantive Due
             Process Clause and Plaintiffs are Very Likely to Succeed on the
             Merits of this Claim .................................................................................. 28

    B.    Irreparable Injury To Plaintiffs ........................................................................... 31

        1.    The Eminent Domain Statute Does Not Permit Injunctive Relief
             Ordering Return of Title Once Title is Taken ........................................... 32

2.      As a Practical Matter, Plaintiffs' Claims Cannot be Remedied in an
                Eminent Domain Proceeding ................................................................ 36

        C.      The Balance Of Equities Strongly Favor Plaintiffs Because Any
                Hypothesized "Injury" To Defendants Is Within Their Control To Prevent ........ 38

        D.      The Public Interest ................................................................................. 40

III.    **CONCLUSION**.........................................................................................**42**

# TABLE OF AUTHORITIES

## FEDERAL CASES

*99 Cents Only Stores v. Lancaster Redev. Agency*, 237 F. Supp. 2d 1123 (C.D. Cal. 2001) ........................................................................................... 26

*Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967), *overruled on other grounds*, *Califano v. Sanders*, 430 U.S. 99, 105 (1977) ............................ 18

*Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227 (1937)............................... 18

*Barwood, Inc. v. District of Columbia*, 202 F.3d 290 (D.C. Cir. 2000)............................. 14

*Berman v. Parker*, 348 U.S. 26 (1954)............................................. 11, 15, 23, 37

*Castle Rock v. Gonzales*, 125 S. Ct. 2796 (2005) ............................................. 14

*Catlin v. United States*, 324 U.S. 229 (1945)....................................... 33, 34, 37

*Chavous v. District of Columbia Finance Responsibility and Management Assistance Authority*, 154 F. Supp. 2d 40 (D.D.C. 2001) ................................ 8, 25, 30

*Ciambriello v. County of Nassau*, 292 F.3d 307 (2d Cir. 2002) ....................................... 15

*City of Los Angeles v. David*, 538 U.S. 715 (2003) ........................................... 13

*Conley v. Gibson*, 355 U.S. 41 (1957) ............................................................... 23

*Daniels v. Area Plan. Commission of Allen County*, 306 F.3d 445 (7th Cir. 2002) ..*passim*

*Donnelly v. District of Columbia Redevelopment Land Agency*, 269 F.2d 546 (D.C. Cir. 1959) ............................................................................. 5, 37

*Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59 (1978) ........................................................................................... 18

*Gamble v. Eau Claire County*, 5 F.3d 285 (7th Cir. 1993) ................................ 30

*George Washington University v. District of Columbia*, 318 F.3d 203 (D.C. Cir. 2003) ........................................................................................... 15

*Gilbert v. Homar*, 520 U.S. 924 (1997) ......................................................... 13

*Goss v. Lopez*, 419 U.S. 565 (1975).............................................................. 13

*Graham v. O'Connor*, 490 U.S. 386 (1989) ...................................................... 29

*Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564 (1982)................................. 34

*Haase v. Sessions*, 835 F.2d 902 (D.C. Cir. 1987)............................................. 10

*Herbin v. District of Columbia*, 362 F. Supp. 2d 254 (D.D.C. 2005) ............................... 24

*JMM Corp. v. District of Columbia*, 378 F.3d 1117 (D.C. Cir. 2004).............................. 14

*Kelo v. City of New London*, 545 U.S. __, 125 S. Ct. 2655 (2005)........................... *passim*

*Kowal v. MCI Communications Corp.*, 16 F.3d 1271 (D.C. Cir. 1994) .................... 10, 23

*Lingle v. Chevron*, 544 U.S. __, 125 S. Ct. 2074 (2005) ............................................ *passim*

*Los Angeles v. Lyons*, 461 U.S. 95 (1983) ........................................................ 10

*Loughran v. United States*, 317 F.2d 896 (D.C. Cir. 1963) ................................. 36

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)................................. 8, 9, 12

*Lynch v. Household Finance Corp.*, 405 U.S. 538 (1972).................................... 13

*Mekuria v. WMATA*, 45 F. Supp. 2d 19 (D.D.C. 1999) .............................. 22, 32

*Montgomery v. Carter County*, 226 F.3d 758 (6th Cir. 2000) ........................... 26

*Mylan Pharmaceuticals, Inc. v. Shalala*, 81 F. Supp. 2d 30 (D.D.C. 2000).................... 12

*Navegar Inc. v. United States*, 103 F.3d 994 (D.C. Cir. 1997) ......................... 13

*New York v. United States*, 505 U.S. 144 (1992) ....................................... 10, 18

*Nicodemus v. Washington Water Power Co.*, 264 F.2d 614 (9th Cir. 1959) .................. 35

*Opticians Association of America v. Independent Opticians of America*, 920 F.2d 187 (3d Cir. 1990).......................................................... 38

*Pappan Enterprises, Inc. v. Hardee's Food System, Inc.*, 143 F.3d 800 (3d Cir. 1998) ............................................................. 38

*Patel v. City of Chicago*, 383 F.3d 569 (7th Cir. 2004) ............................... 12, 21

*Patsy v. Board of Regents of State of Fla.*, 457 U.S. 496 (1982)....................... 14

*Pennsylvania v. West Virginia*, 262 U.S. 553 (1923).................................................... 10, 18

*Rancho Palos Verdes v. Abrams*, 125 S. Ct. 1453 (2005)................................................. 14

*Ruckelshaus v. Monsanto Co.*, 467 U.S. 986 (1984)........................................................ 21

*Schneider v. District of Columbia*, 117 F. Supp. 705 (D.D.C. 1953), *aff'd as
  modified, Berman v. Parker*, 348 U.S. 26 (1954)........................................................... 5

*Scott v. Metropolitan Development Commission of Marion County*, 2002 WL.
  31921295 (S.D. Ind. Dec. 20, 2002) ........................................................................... 26

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ........................................................ 23

*Terrace v. Thompson*, 263 U.S. 197 (1923) ................................................................... 35

*United States v. Herring*, 750 F.2d 669 (8th Cir. 1984).................................................. 35

*United States v. Phillip Morris Inc.*, 116 F. Supp. 2d 131 (D.D.C. 2001) ...................... 23

*United States v. South Dakota Game, Fish, and Parks Department*, 329 F.2d 665
  (8th Cir. 1964) .............................................................................................................. 35

*Utahns For Better Transport v. U.S. Department of Transport*, No. 01-4216, 2001
  WL. 1739458 (10th Cir. Nov. 16, 2001) ...................................................................... 38

*Walz v. Town of Smithtown*, 46 F.3d 162 (2d Cir. 1995) ................................................ 15

*Washington Legal Clinic for the Homeless v. Barry*, 107 F.3d 32 (D.C. Cir. 1997) ........ 14

*Williamson County Reg'l Planning Commission v. Hamilton Bank*, 473 U.S. 172
  (1985) ...................................................................................................................*passim*

*Yates v. District of Columbia*, 324 F.3d 724 (D.C. Cir. 2003)......................................... 15

## STATE CASES

*District of Columbia Redevelopment Land Agency v. Dowdey*, 618 A.2d 153
  (D.C. 1992).............................................................................................................. 33, 37

*Jones v. Grieg*, 829 A.2d 195 (D.C. 2003)..................................................................... 39

## DOCKETED CASES

*Robert Siegel, Inc. v. District of Columbia*, No. 05ca2770 (D.C. Super. Ct.) .................. 15

*Rumber v. District of Columbia*, Civ. Action No. 04-1170 (RMU) (May 31, 2005).. 28, 40

## FEDERAL STATUTES AND RULES

42 U.S.C. § 1983 ................................................................................................ 8, 20, 22

28 U.S.C. § 1331 ...................................................................................................... 8

28 U.S.C. § 2201 ...................................................................................................... 8

Fed. R. Civ. P. 71A ................................................................................................. 35

## STATE STATUTES

D.C. Code Ann. § 10-1601 ........................................................................................ 2

D.C. Code Ann. § 3-1401 ........................................................................................... 2

D.C. Code § 16-1301 et seq ................................................................................. 32, 34

D.C. Code § 16-1314 ........................................................................................ 33, 34, 37

## OTHER

Wright & Miller, Federal Practice & Procedure: Civil 2d § 1350 (1990) ........................ 16

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SOUTHEAST LAND DEVELOPMENT ASSOCIATES, L.P., et al. ) ) ) Plaintiffs, ) ) vs. ) ) THE DISTRICT OF COLUMBIA, et al. ) ) Defendants. ) ) ) | Civil Action No. 05-1413 (RWR) |

## PLAINTIFFS' COMBINED MEMORANDA OF POINTS AND AUTHORITIES IN REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' APPLICATION FOR PRELIMINARY INJUNCTION AND IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT

Pursuant to LCvR 7(b), (d), Plaintiffs Southeast Land Development Associates, L.P. ("SLDA"), Square 706, L.L.C., and Kenneth B. Wyban respectfully submit this Combined Memoranda of Points and Authorities In Reply to Defendants' Opposition to Plaintiffs' Application for Preliminary Injunction and In Opposition to Defendants' Motion to Dismiss Complaint.[1]

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs' Application for Preliminary Injunction should be granted because Plaintiffs have met the requirements for entitlement to injunctive relief.  Moreover, this Court clearly has

---

[1]    Because Defendants acknowledge that there is substantial overlap among jurisdictional and merits arguments, Plaintiffs have elected to file a single document opposing Defendants' Motion to Dismiss and replying to Defendants' Opposition to Plaintiffs' Application for Preliminary Injunction to assist in the expeditious consideration of this case.  Defendants consented to this procedure.  Plaintiffs' submission is 42 pages, less than the 45 permitted for an Opposition to Motion to Dismiss and the 25 pages permitted by LCvR 7(e) for a Reply to Opposition to Application for Preliminary Injunction.

jurisdiction to proceed, and this is the only forum where Plaintiffs' constitutional claims can be heard and remedied.

In our Application for Preliminary Injunction, Plaintiffs have established by affidavit, admission, Defendants' official records, testimony and statute law that:

- substantive federal constitutional questions are at issue in this case;

- the Council of the District of Columbia (the "Council") determined in the Private or Alternative Stadium Financing and Cost Trigger Emergency Act of 2004 (D.C. Code Ann. § 3-1401) and the Ballpark Omnibus Financing and Revenue Act of 2004 (D.C. Code Ann. § 10-1601) ("Ballpark Act") (collectively, "Ballpark Financing and Cost Trigger Legislation" or the "Legislation") that building a ballpark on the primary ballpark site is a valid public use and in the public interest only if the land acquisition and infrastructure costs to the District associated with the primary ballpark site will not exceed $165,000,000;

- the Legislation specifically prohibits Defendants from acquiring Plaintiffs' land for the "primary ballpark site" unless a valid re-estimate shows that the land acquisition and infrastructure costs to the District will not exceed $165,000,000;

- Defendants never produced a valid re-estimate of these land acquisition and infrastructure costs;

- Defendants failed to determine land acquisition costs by conducting parcel-by-parcel appraisals of the properties within the primary ballpark site as required in the Legislation;

- A valid re-estimate of land acquisition and infrastructure costs to the District will exceed $165,000,000, and will be at least $42 million more than Defendants claim;

- The $161.4 million figure that Defendants reported for land acquisition and infrastructure costs "to the District" as called for in the Legislation is not a valid measurement of what the costs will be to the District for land acquisition and infrastructure;

- Defendants fabricated the environmental remediation costs that the Council required they include in their estimate;

- Defendants' announcement of plans to acquire Plaintiffs' property and build a ballpark stadium on such property has had an immediate and current impact on property in the area;

- Plaintiffs, who own property in this area, have had their constitutionally protected property and liberty interests adversely affected by the announcement of plans to acquire Plaintiffs' property;

- There is no question that within the next few days or weeks, Defendants **will** act to acquire Plaintiffs' property in fee simple in order to build a ballpark;

Defendants do not present a single piece of evidence in the form of affidavits, testimony, public records or otherwise to dispute any of the foregoing facts, or to even present contrary ones. In several instances they affirmatively admit a number of material facts, including that their cost figure is not a re-estimate as required by the Legislation.

 With respect to the probability of success on the merits, Defendants argue that the Council did nothing more than authorize the construction of a stadium, which the Supreme Court has said constitutes a legitimate public use.  Defendants' arguments cannot be squared with the plain language of the statute – which they fail to address – in which the Council stated in no uncertain terms that the public purpose associated with building a stadium in the District **only exists** with respect to Plaintiffs' property if acquisition and infrastructure costs to the District do not exceed $165,000,000.  The text of the statute amply demonstrates, and the legislative history clearly reinforces, that these cost issues were an integral part of the Council's determination that building a stadium will provide economic benefit to the District.  Defendants present no facts disputing Plaintiffs' demonstration that there has not been a valid re-estimate that demonstrates that the acquisition costs to the District will be less than $165,000,000.  Thus, given the plain terms of the statute, there is a substantial likelihood that Plaintiffs will succeed in showing that Defendants' acquisition of Plaintiffs' property is not authorized by, and is inconsistent with, the public purpose that the Council explicitly identified to justify such acquisition.

With respect to irreparable injury, Defendants argue that there is no irreparable injury because Plaintiffs can have their claims heard in an eminent domain proceeding under District law.  They are wrong.  This is not a Just Compensation Clause case, and the Supreme Court has made it clear that in a Public Use or Due Process case, just compensation cannot provide an adequate remedy as a matter of law.  Further, the relief sought here may not and cannot be

obtained under the District's eminent domain statute and ample precedent exists for bringing this constitutional claim in federal court.

With respect to the impact of preliminary injunctive relief on the parties, and the impact on the public, Defendants recite a litany of dire predictions and alleged *potential* harms that *might* occur *if* the stadium is not built on Plaintiffs' property.  Absent from Defendants' argument is the acknowledgement that (a) the contract with Major League Baseball ("MLB") itself provides for consideration of a different site, and it is completely within Defendants' power to implement such consideration; (b) local law requires that alternative sites be considered; (c) the MLB contract anticipates that all of the benefits Defendants claim will accrue to the District will occur *at any* location in the District (which benefits will be even greater if the cost of land acquisition is below $165,000,000 as required under the Legislation); and (d) the Council has determined that the very benefits that Defendants claim will be protected if an injunction is denied, are not worth pursuing if the land acquisition and infrastructure costs exceed $165,000,000.

Instead of addressing these issues on their merits, Defendants raise jurisdictional arguments to suggest that although there is a federal question that triggers this Court's jurisdiction, the Court "should" not hear these claims.  Defendants' jurisdictional objections assume that Plaintiffs are alleging that Defendants violated the "Just Compensation Clause" of the Fifth Amendment and, consequently, because compensation has yet to be denied, no "injury" has occurred for purposes of satisfying constitutional and prudential jurisdictional requirements. Defendants are wrong.

Plaintiffs' claims are brought under the "Public Use" clause of the Fifth Amendment and the Due Process protections of the Fifth and Fourteenth Amendments.  The injury caused by these violations and the remedy sought have nothing to do with "just compensation." Defendants ignore the Supreme Court's unanimous and unambiguous statement that determining if these provisions have been violated is an inquiry that is independent of and must precede any question of just compensation, and that if Plaintiffs' rights are abridged in violation of these

provisions, no amount of compensation will be appropriate.[2]  Such issues are not required to be heard in a just compensation proceeding, and no case commands otherwise.  Indeed, this jurisdiction began hearing Public Use cases – outside the just compensation process – at least 50 years ago.[3]  Moreover, the Seventh Circuit, which Defendants strongly urge this Court to follow, has held that jurisdiction lies to hear a Section 1983 case alleging that a taking violated the Public Use Clause where, like here, only declaratory and injunctive relief are sought.[4]  Finally, although arguing that Plaintiffs can "try" to raise these constitutional issues in a just compensation proceeding, Defendants do not dispute that the relief necessary to vindicate these rights cannot be granted in such a forum.  Even assuming *arguendo* that it could, by the time it happens the only title that could be returned would be to a corner of far right-field in a professional baseball stadium.

Defendants then claim that the case is unripe or that Plaintiffs are seeking an advisory opinion because there is not yet a final decision that sufficiently crystallizes the issues.  Again they are wrong on the facts.  Here, there is a final decision that focuses and crystallizes the issues.  The public purpose the Council decided justified acquisition of Plaintiffs' property for a ballpark located in the District of Columbia only exists if the land acquisition and infrastructure costs to the District do not exceed $165,000,000 as set forth in Legislation.  Therefore, the determination of whether Defendants are acting consistent with the public purpose is based on whether they have produced a valid estimate demonstrating that the cost to the District of acquiring certain property (including Plaintiffs' property) and infrastructure for a ballpark will not exceed $165,000,000.  Defendants have publicly admitted that the document that purports to

---

[2]      *See Lingle v. Chevron*, 544 U.S. __, 125 S. Ct. 2074, 2084 (2005) ("no amount of compensation" can authorize government action that "fails to meet the 'public use' requirement or is so arbitrary as to violate due process**.**").

[3]      *See, e.g., Schneider v. District of Columbia*, 117 F. Supp. 705 (D.D.C. 1953), *aff'd as modified, Berman v. Parker*, 348 U.S. 26 (1954); *Donnelly v. District of Columbia Redevelopment Land Agency*, 269 F.2d 546, 548 n.1 (D.C. Cir. 1959).

[4]      *See Daniels v. Area Plan. Comm'n of Allen County*, 306 F.3d 445 (7th Cir. 2002).

be the required estimate is a final decision in this regard. All of the facts to determine if the statutory requirement essential to determining if the Council's public purpose has been met have been developed.

Defendants' additional argument, that this case is unripe because eminent domain proceedings have not begun or been concluded is also without foundation. As noted above, the District's eminent domain statute does not permit, either legally or practically, the granting of the relief sought here. Finally, Defendants' vague suggestion that allowing this case to proceed will somehow "constitutionalize" issues better decided in local courts is spurious. Defendants rely on cases where challenges are permitted under the statute pursuant to which Defendants are acting, such as the Legislation. Defendants have argued, however, that the Legislation provides no right of action.

Alternatively, Defendants try to avoid judicial review of their conduct by seeking dismissal pursuant to Rule 12(b)(6) for failure to state a claim. This motion is without merit. Defendants do not apply the proper standard against which such motions must be determined; that: (1) all allegations are taken as true, (2) all allegations are to be liberally construed, (3) all inferences are drawn in favor of the Plaintiffs, and (4) no set of facts as alleged would entitle Plaintiffs to relief. With respect to Counts I and III, Defendants urge the Court to find that the public purpose is something other than what the Council said it is. In contrast, Plaintiffs ask this Court to decide if Defendants' actions are consistent with the public purpose as determined by the Council.

With respect to Plaintiffs' substantive due process claim (Count II), again Defendants apply the wrong standard. Instead of accepting as true all material allegations of the Complaint, Defendants selectively choose which allegations to accept. Defendants ignore the allegations that: (1) Defendants did not conduct a valid re-estimate, blatantly violating the requirements of law, (2) the document that Defendants label a "re-estimate" contains data demonstrating that the estimated cost to the District of acquiring the property will far exceed $165,000,000, by tens of millions of dollars, and (3) the result of their action has already impacted Plaintiffs' use of their

property and will unquestionably result in the complete loss of all of Plaintiffs' property rights in mere days.  (Compl. ¶¶ 24-31.)  These allegations are supported by extensive facts which Defendants do not refute in their Opposition to Plaintiffs' Application for Preliminary Injunction ("Defs.' Opp'n").

The Legislation expressly prohibits construction of the stadium on Plaintiffs' property. No rationale could conceivably justify Defendants' seizure or acquisition of Plaintiffs' property to build a ballpark pursuant to a law that expressly prohibits them from doing so.  This conduct clearly violates substantive due process.  Defendants' alternative argument, that perhaps they can "buy Plaintiffs off" during the negotiations process, and therefore render this case moot, must also fail.  If Defendants lack the authority to acquire the property for a baseball stadium, then they have no authority to "buy Plaintiffs off."

This case is about affording Plaintiffs the protection that the Constitution guarantees they have against having their property taken for a use that the Legislature determined is not a valid public purpose, and to protect their rights to be free from irrational and arbitrary action taken by the Defendants, who, without a statutory basis, are trying to arm themselves with the power to acquire private property even though the Council has expressly prohibited them from doing so. Defendants have no more authority to acquire Plaintiffs' property for a ballpark than they have to seize it and build a new home for the CFO's family.  Since the direct consequences of this conduct violates Plaintiffs' constitutional rights protected by the Public Use and Due Process Clauses, Plaintiffs' Application for Preliminary Injunction should be granted and Defendants' Motion to Dismiss denied.[5]

---

[5]       Granting a preliminary injunction to preserve the status quo is unrelated to whether baseball will remain in Washington.  Plaintiffs seek no involvement by the Court in this regard.

## II.    ARGUMENT

### A.    There Is A Very Substantial Likelihood That Plaintiffs Will Succeed On The Merits

1.    This Court has Subject Matter Jurisdiction Over Plaintiffs' Claims of Violations of Federal Law and the Constitution of the United States

There is no dispute that Plaintiffs have properly raised federal questions and correctly invoked this Court's original jurisdiction under 28 U.S.C. §§ 1331 and 2201, and 42 U.S.C. § 1983, based on violations of the Fifth and Fourteenth Amendments to the Constitution. Plaintiffs also have standing to assert these claims.  Standing to sue in federal court is based on the constitutional requirement limiting federal courts to hearing a "case-or-controversy." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).[6]  There are both constitutionally required elements of standing that must be met for a party to pursue a matter in federal court, and prudential standing concerns that although not required, assist in determining if there are considerations inherent in certain cases that suggest federal courts should decline to exercise jurisdiction.  Plaintiffs have clearly met all the elements of constitutional standing by demonstrating: 1) an "actual or imminent" injury; 2) that is "fairly traceable to the challenged action of the defendant;" and 3) that may be redressed by court action.  *Lujan*, 504 U.S. at  560. *See also Chavous v. District of Columbia Financial Responsibility and Management Assistance Authority*, 154 F. Supp. 2d 40, 44 (D.D.C. 2001).  Although the prudential considerations argued by Defendants do not apply to this case, Plaintiffs have met those as well.

---

[6]    The Court's guiding principle when ruling on a motion to dismiss on grounds of standing is that "trial courts must 'accept as true all material allegations of the complaint,' and further, must 'construe the complaint in favor of the complaining party.' In other words, the trial court must accept as true the complainant's pleaded legal theory."  *Chavous v. District of Columbia Fin. Responsibility and Mgmt. Assistance Auth.*, 154 F. Supp. 2d 40, 44 (D.D.C. 2001) (citations omitted).  Thus, the court must accept as true Plaintiffs' claims that Defendants arbitrarily and without any rational basis have flouted the Council's determination of the public purpose as embodied in the Legislation.

(a)    <u>Plaintiffs have suffered and will suffer injury-in-fact</u>

Plaintiffs have sufficiently pled injury-in-fact (both imminent and actual) as required by *Lujan*. In *Lujan*, the Supreme Court held that "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presume that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan*, 504 U.S. at 561 (citation omitted). *Lujan* goes on to hold that "[w]hen the suit is one challenging the legality of government action or inaction … standing depends considerably upon whether the plaintiff is himself an object of the action (or forgone action) at issue. If he is, there is ordinarily little question that the action or inaction has caused him injury." *Id.* at 561-62. In *Lujan*, plaintiffs brought suit against the federal government after Congress failed to extend the Endangered Species Act to actions taken in foreign nations. Plaintiffs alleged as injury the prediction that at some future unspecified date they might travel to foreign countries and become injured by their inability to view the species. Such injury necessarily depended on a confluence of improbable or uncertain events – far too attenuated for the Court to apply the label of "actual or imminent" to the injury.

Plaintiffs here have demonstrated that actual injury has already occurred and that imminent and certain injury will occur in the very near future. Defendants admit that the mere announcement of plans to build the ballpark has already impacted property interests in the area where the ballpark is to be located. (Defs.' Mem. in Supp. of Mot. to Dismiss at 7 ("Defs.' Mem.").) Defendants cannot credibly argue that such an announcement benefits some property owners without conceding that it harms others. Plaintiffs have explained precisely how that announcement has already harmed them – their property is no longer useful or marketable. (Ex. 2 to Appl. ¶¶ 12-15; Ex. 4 to Appl. ¶¶ 7-8.)

Defendants do not deny that Plaintiffs' property is within the "primary ballpark site" designated in the Legislation for acquisition. (App. C to Defs.' Mem. ¶ 5.) Defendants do not deny that the District of Columbia ***will*** "acquire the property." (Ex. 2, Attach. F to Appl.) This is far different from a plaintiff who provides no evidence that the alleged improper behavior is

-9-

certain to continue.  *See Haase v. Sessions*, 835 F.2d 902 (D.C. Cir. 1987) (plaintiff must present evidence that illegal conduct certain to happen in the future); *see also Los Angeles v. Lyons*, 461 U.S. 95 (1983) (plaintiff must present evidence that illegal conduct certain to happen in the future).

Defendants argue that the only injury-in-fact that will suffice in this case requires that the property actually be taken and until that happens and until just compensation is denied, no "injury in fact" occurred.  (Defs.' Mem. at 6.)  Defendants' argument is based on an incorrect premise, *i.e.,* that this case is alleging a violation of the "Just Compensation Clause" of the Fifth Amendment.  In fact, Plaintiffs assert violations of the Public Use and Due Process Clauses (*see* Compl. ¶¶ 2, 6-8, 31-69), which are completely different violations that call for completely different remedies.  In fact, the Supreme Court made this clear when it stated that "no amount of compensation" can authorize government action that "fails to meet the '***public use***' requirement or is so arbitrary as to violate ***due process***."  *Lingle v. Chevron*, 544 U.S. __, 125 S. Ct. 2074, 2084 (2005) (emphasis added).  Not surprisingly, Defendants fail to address this principle.[7]  A party "does not have to await the consummation of threatened injury to obtain preventive relief.  If the injury is certainly impending that is enough."  *Pennsylvania v. West Virginia*, 262 U.S. 553, 593 (1923); *see also New York v. United States*, 505 U.S. 144, 175 (1992).[8]  Standing exists where a party seeks equitable and declaratory relief based on the prospective taking of property in violation of the Public Use Clause, and such violation is based on the state's failure to properly complete the process necessary to determine if public use as defined by the Legislature exists to justify the taking.  *See Daniels v. Area Plan Comm'n of Allen County*, 306 F.3d 445,

---

[7]     Defendants' argument that this case is not ripe because Plaintiffs have not pursued their claim in an eminent domain proceeding is discussed *infra* at Sec. III.A.3.

[8]     Defendants' reliance on *Kowal v. MCI Communications Corp.*, 16 F.3d 1271 (D.C. Cir. 1994), in claiming that Plaintiffs have *alleged* only a conclusory injury is misplaced.  In *Kowal*, this Circuit dismissed the case not because the allegations of injury were conclusory, but because MCI had no duty under any law to take the action that plaintiff alleged was causing injury.  *Id.* at 1277.  Indeed, the court held that forward looking statements are considered "statements of fact" for purposes of determining whether an injury has occurred.  *Id.*

457-58 (7th Cir. 2002).[9]  Moreover, this Circuit has considered Public Use claims outside of eminent domain proceedings.  *See Berman v. Parker*, 348 U.S. 26 (1954).

> (b)  <u>The causal connection between Defendants' actions at issue in this case and Plaintiffs' actual and imminent injury is indisputable.</u>

The Council has expressly determined in the Legislation that building a stadium on Plaintiffs' property is only a valid public use if the cost to the District of doing so will not exceed $165,000,000.  By letter dated April 26, 2005, Defendants told Plaintiffs that based on "clearance" from the CFO (who was supposed to perform the required estimate), they "***require possession***" of Plaintiffs' property by December 31, 2005.  (Wolfe Decl., App. C ¶¶ 7, 9, and 11, Defs.' Mem.) (Emphasis added.)  Defendants concede that the mere announcement of the plans to build the ballpark on Plaintiffs' property has immediately impacted property owners in the area.  (*See* Touhey Decl., App. B ¶ 9, Defs.' Opp'n) ("In addition, the drastic economic effects on the area around the new stadium would include . . . a decline in property values ***for those who have invested in the area in reliance on the construction of the new stadium*** . . ." (emphasis added).  Defendants do not dispute Plaintiffs' evidence that they have been impacted by the same events.  (*See* Ex. 2 to Appl., SLDA Decl. ¶¶ 14-15.)  In the face of these indisputable facts, Defendants do not directly challenge the causal connection between their actions and Plaintiffs' harm.  Instead, they bootstrap their argument regarding lack of harm, saying that if there is no harm, there is no causation.  (*See* Defs.' Mot. to Dismiss at 7.)  Plaintiffs have demonstrated both.

---

[9]  Defendants have suggested that Plaintiffs sought to distinguish this case because it is a "private use" case. (Defs.' Mem. at 15; Defs.' Opp'n at 5.)  That is not correct.  However, if what Defendants meant is that a Public Use Claim and Due Process Claim are indistinguishable from a Just Compensation Claim, they are wrong.  The Supreme Court has recognized that the adequacy of post-takings remedies such as eminent domain proceedings in Just Compensation Clause cases do not apply to Due Process Clause cases where pre-deprivation remedies are often more important because of the "obvious value in reaching an accurate decision."  *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 195 n.14 (1985).

(c)    Plaintiffs' harm is redressable by Defendants

Redressability depends on whether the named defendant has the power and authority to implement any remedy that the Court might grant to plaintiffs, not whether the remedy will actually provide the relief requested by the plaintiffs. *See Lujan*, 504 U.S. at 570-71. In the case at bar, there is no question that the Defendants can provide the relief requested by Plaintiffs – they simply have to cease their efforts to acquire Plaintiffs' property and remain free to look at alternate sites for the ballpark, just as the statute requires and Defendants' agreement with Major League Baseball anticipates. *See* Ballpark Omnibus Financing and Revenue Act of 2004 §§ 105(b)(2), 107(e); (Ex. 5 to Appl. at § 4.01.)

Defendants also mischaracterize the requirement of redressability by arguing without support that Plaintiffs' injuries are not redressable because if an injunction is granted there is no certainty that Plaintiffs' alleged lost land value will be restored. (Defs.' Mem. at 7-8) Such speculation is not the test of redressability. *See Lujan*, 504 U.S. at 570-71. Moreover, if the result of the injunction is to put Plaintiffs in the position they were in before the announcement that the ballpark would be built on their site, then the injunction will have rightfully preserved the *status quo* prior to the illegal action by Defendants announcing their intent to build the ballpark at this location. *See Mylan Pharmaceuticals, Inc. v. Shalala*, 81 F. Supp. 2d 30, 36 (D.D.C. 2000) ("preliminary injunctions are typically issued to maintain the status quo until the matter can be resolved on the merits").

Defendants conclude their discussion of injury with a discussion of *Patel v. City of Chicago*, 383 F.3d 569 (7th Cir. 2004). *Patel* focused on ripeness and in Section II.A.3. below Plaintiffs explain why this case does not support Defendants' argument. *Patel* is inappropriate in any event because, like Defendants' other arguments, it is premised on a Just Compensation Clause violation, not Public Use and Due Process Clause violations.[10]

---

[10]    Defendants also engage in speculative musings about how an injunction might cause property values to plunge. (Defs.' Mem. at 8-9.) These unsupported assertions have nothing to do with whether Plaintiffs have standing. *See* Sect. III.C., *infra* (discussing the purported impact to Defendants as well as to the public).

(d)     <u>Plaintiffs satisfy prudential standing considerations</u>

Case law generally addresses prudential standing issues in the context of ripeness, and as Plaintiffs explain in Section II.A.3. below, this case is clearly ripe.  However, Defendants also argue that the Court should find that Plaintiffs lack prudential standing because Plaintiffs are presenting "abstract questions of wide public significance." (Defs.' Mem. at 6.)  Notably absent from their argument is any explanation of why the undisputed promise that Defendants *will* soon own Plaintiffs' property one way or the other is somehow abstract.  This Circuit has held that plaintiffs who bring a declaratory action in anticipation of prosecution under a statute that does not name them but refers to products that only they sell, generally have standing to sue.  *See Navegar Inc. v. United States*, 103 F.3d 994, 1001 (D.C. Cir. 1997).  Here, Defendants have ***promised*** to acquire or seize property that ***only*** Plaintiffs own.  Moreover, as explained below, there is nothing hypothetical about whether the Defendants have demonstrated, as required in the Legislation, that acquiring the site where Plaintiffs' property is located is for a valid public purpose because acquisition and infrastructure costs to the District will not exceed $165,000,000.

(e)     <u>Consideration of the constitutional claims in this case falls squarely within the civil rights and constitutional cases traditionally heard by federal courts</u>

This case presents the question of whether the Defendants are violating Plaintiffs' federally protected constitutional rights while acting under color of state law, custom or practice. The rights involved are explicitly protected by the Fifth and Fourteenth Amendments and exist independent of any District law.  Defendants are violating those rights while claiming to be acting under color of the Legislation. (Compl. ¶¶ 37-44.)  Legions of cases confirm that such claims are exactly what the Civil Rights Act was enacted to protect.  *See, e.g., City of Los Angeles v. David*, 538 U.S. 715 (2003); *Gilbert v. Homar*, 520 U.S. 924 (1997); *Goss v. Lopez*, 419 U.S. 565 (1975); *Lynch v. Household Finance Corp.*, 405 U.S. 538, 552 (1972).

Defendants observe that federal courts have shown no "inclination to expand Section 1983 into a catchall for all kinds of grievances, especially in areas permeated by state

-13-

law….[and] are reluctant to constitutionalize under Section 1983 matters cognizable and remediable under state law or other provisions of federal law."  (Defs.' Mem. at 18.)[11]  Apart from being an inaccurate statement of the law,[12] Defendants do not explain why this concern should apply here.  Indeed, it should not.

First, the substantive rights at issue are textually created in the Fifth and Fourteenth Amendments.  Defendants do not dispute this, nor is there any suggestion that Plaintiffs' property rights are created as a result of the Legislation.  Only the power to take those property rights is addressed in the Legislation.  *See* Ballpark Omnibus Financing and Revenue Act of 2004 §§ 105(b)(2).  Thus, any concern that this action will somehow result in the creation of property rights with no independent constitutional basis is groundless.  *See, e.g., Castle Rock v. Gonzales*, 125 S. Ct. 2796 (2005); *Washington Legal Clinic for the Homeless v. Barry*, 107 F.3d 32 (D.C. Cir. 1997); *Cf. Barwood, Inc. v. District of Columbia*, 202 F.3d 290 (D.C. Cir. 2000).

Second, as opposed to the cases Defendants cited, the claims made and remedies sought in this case are not cognizable or remediable under other provisions of state or federal law.  *See Rancho Palos Verdes v. Abrams*, 125 S.Ct. 1453, 1456 (2005) (holding that alleged violations of Telecommunications Act that had property rights implications should be brought under the comprehensive enforcement scheme provided for in that law rather than under Section 1983); *JMM Corp. v. District of Columbia*, 378 F.3d 1117 (D.C. Cir. 2004) (holding that Section 1983 action may not be brought to enjoin ongoing local zoning enforcement proceedings where, in defense of enforcement proceedings, all issues can be raised and all relief effectively obtained).  Defendants have already argued – successfully – that there is no private right of action to enforce

---

[11]    Defendants make this argument as grounds for their Motion for Failure to State a Claim, although none of the authority they cite involved dismissal of cases pursuant to Rule 12(b)(6) on these grounds. Plaintiffs address this "policy" argument here because it relates to whether the court should exercise jurisdiction.

[12]    In this regard, the Supreme Court has stated that "exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983." *Patsy v. Board of Regents of State of Fla.*, 457 U.S. 496, 516 (1982).

the underlying Legislation.  (*See* App. D to Defs.' Mem., *Robert Siegel, Inc. v. District of Columbia*, No. 05ca2770 (D.C. Super. Ct.).)[13]  Accordingly, suggesting here that such alternatives exist is disingenuous at best.[14]

Third, the fact that local conduct, local issues, and even local laws are involved has never been held to preclude a properly pled Section 1983 action.  Indeed, every allegation of misconduct which is often the subject of Section 1983 actions involve local issues, local conduct, and is brought notwithstanding local remedies ranging from internal police disciplinary boards to negligence suits.  *See, e.g., Ciambriello v. County of Nassau*, 292 F.3d 307 (2d Cir. 2002) (demotion of county employee); *Walz v. Town of Smithtown*, 46 F.3d 162 (2d Cir. 1995) (denial of local excavation permit by local agency).  This case is not seeking to second-guess any land-use decisions made by the Council, nor is it asking this Court to review those decisions.  It is quite the opposite.  Plaintiffs only challenge the Defendants' exercise of authority to acquire Plaintiffs' property under the Legislation because the Council has strictly and specifically limited the public use justification for the exercise of that authority, and Defendants' blatant violation of that limit directly infringes on Plaintiffs' Fifth and Fourteenth Amendment rights.

Finally, both long standing and recent precedent confirms the propriety of this claim in this court.  In *Berman v. Parker*, 348 U.S. 26 (1954), plaintiffs challenged the validity of the public use and purpose that underlay the decision to condemn their properties for redevelopment efforts. The only difference between the claim brought in *Berman* and the instant case is that the

---

[13]    *See also George Washington Univ. v. District of Columbia*, 318 F.3d. 203 (D.C. Cir. 2003) (agency's substantive determination under local zoning law that limiting number of students living in certain areas consistent with the goal of the law to provide for quieter neighborhoods and is within the broad discretion of the agency to determine, and subject to judicial review); *Yates v. District of Columbia*, 324 F.3d 724 (D.C. Cir. 2003) (public school employee may not bring Section 1983 action for wrongful termination where procedures exist for pursuing challenge to termination and facts demonstrate that there was a rational connection between the school board's actions and its legitimate interest in ensuring students a competent educational staff).

[14]    *See* Sect. II.B.2 *infra* (addressing why eminent domain proceedings provide no alternative cognizable right or remedy in this case).

statute in question here is much more narrowly drawn.[15]  In 2002, *Daniels* held that a Section 1983 action may be brought for a violation of the Public Use Clause where just compensation is not sought and the claim is that an agency failed to properly determine that the legislature's defined public purpose exists.  *Daniels*, 306 F.3d at 469.

          2.     Whether Defendants are Acting Pursuant to the Public Purpose Identified by the Council Presents a Justiciable Case or Controversy

Certain facts must be taken as true for purposes of Defendants' Motion to Dismiss.  *See* WRIGHT & MILLER, Federal Practice & Procedure: Civil 2d § 1350 (1990).  They include the following:

- In December 2004, the Council enacted the Ballpark Financing and Cost Trigger Legislation (Compl. ¶ 17);

- The Legislation determined that building a professional ballpark at the primary ballpark site would achieve a public purpose only under two conditions:  (i) the CFO must perform a re-estimate of the costs of land acquisition and infrastructure and report the findings to the Council and the Mayor by May 15, 2005; and (ii) the total of the re-estimated costs cannot exceed $165 million (Compl. ¶¶ 4-5, 20);

- The CFO failed to perform a *valid* re-estimate of the acquisition and infrastructure costs as specifically defined by the Legislation (Compl. ¶¶ 5, 24-27);

- If the CFO had performed a valid re-estimate, it would show that the acquisition and infrastructure costs would exceed $200 million at least (Compl. ¶ 28);

- The Legislation requires that because the estimated land acquisition and infrastructure costs will not be less than $165 million, the primary ballpark site "***shall be deemed financially unavailable***" and "**the Mayor and the Sports and Entertainment Commission *shall pursue replacement of the Primary ballpark site with a substantially less costly site* in the District . . .**" (Compl. ¶ 22);

- The Legislation required that as part of the re-estimate, *by May 15, 2005* the CFO must perform at least ***one separate appraisal of each parcel of land*** to be acquired and an estimate of the environmental remediation costs (Compl. ¶ 21);

- Defendants did not conduct separate appraisals of each parcel of land to be acquired.  (*See* Wolfe Decl., App. C ¶¶ 6, 12-13, Defs.' Mem.; Compl. ¶ 25); and

- Based solely on the CFO's erroneous "Report," the District has informed Defendants that the District "recently received clearance from its [CFO] to proceed with plans to build a baseball stadium complex in Near Southeast.  In order to construct the

---

[15]     As the Supreme Court noted in *Kelo*, a more narrowly drawn statute may well have changed the result in *Berman*.  *See Kelo v. City of New London*, 545 U.S. __, 125 S. Ct. 2655, 2666 n.13 (2005).

stadium, the District needs to acquire title" to your property and, therefore, "requires possession of your property by December 31, 2005, and as such, it **will** be necessary to move no later than December 31, 2005." (*See* Wolfe Decl. ¶ 7, App. C to Defs.' Mem.; Compl. ¶ 30.) (emphasis added).

Defendants' justiciability argument ignores these facts.  Instead, Defendants argue, with no supporting facts or affidavits, that the issues before the Court are "hypothetical" and represent a "request for an advisory opinion," because the District has not yet engaged in eminent domain proceedings and it may never have to institute such proceedings if Plaintiffs can be bought off. (Defs.' Mem. at 8.)  However, Plaintiffs are not claiming that Defendants have violated the Just Compensation Clause of the Fifth Amendment.  Plaintiffs' claims do not allege injury arising from a failure to pay just compensation.  The Complaint specifically alleges a violation for the Public Use Clause of the Fifth Amendment and Due Process Clause of the Fifth and Fourteenth Amendment. (Compl. ¶¶ 2, 4-7, 19-67.)  The injury here is the illegal interference with constitutionally protected liberty and property interests that just compensation cannot address. The Supreme Court has stated:  "If a government action is found to be impermissible—for instance because it fails to meet the 'public use' requirement or is so arbitrary as to violate due process—*that is the end of the inquiry.  No amount of compensation can authorize such action*."  *Lingle*, 125 S. Ct. at 2084 (emphasis added).

Plaintiffs' allegation is straightforward and concrete: the Council determined that building a ballpark on Plaintiffs' property is a valid public purpose *only* if the land acquisition and infrastructure costs did not exceed $165,000,000.  As Plaintiffs stated in their opening brief:

> This specific cost issue is at the heart of the Council's determination that no valid public purpose would be served by locating the ballpark on Plaintiffs' property.  For purpose of preliminary relief, the fundamental factual "merits" question is whether Defendants failed to provide a valid re-estimate of the acquisition costs for the primary ballpark demonstrating that the acquisition costs will not exceed $165 million.  If Plaintiffs can show that Defendants failed to provide the requisite estimate, then Defendants' efforts to seize Plaintiffs' properties do not serve any valid public purpose as determined by the Council and thus, are arbitrary and irrational.

(Appl. at 17-18.)

All of the facts that can be developed to determine if the financial cap has been met – the statutory requirement essential to the Council's finding of a public purpose – have been completed. These facts can get no more concrete than what they are now. The court does not have to engage in speculation to determine whether Defendants' actions flout the Legislation and are not in conformance with the public purpose as defined by the Council that authorizes acquisition of Plaintiffs' property. *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 242 (1937) ("That the dispute turns upon questions of fact, does not withdraw it…from judicial cognizance. The legal consequences flow from the facts and it is the province of the courts to ascertain and find the facts in order to determine the legal consequences.")

3.    Plaintiffs' Claims are Ripe for Decision

A matter must be ripe for resolution for it to be justiciable in federal court. *See Duke Power Co. v. Carolina Envt'l Study Group, Inc.*, 438 U.S. 59, 81 (1978). The ripeness doctrine is intended "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967), *overruled on other grounds*, *Califano v. Sanders*, 430 U.S. 99, 105 (1977). Though the ripeness doctrine prevents the Court from reviewing injury that is speculative, it is well-settled that "one does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending that is enough." *Pennsylvania v. West Virginia*, 262 U.S. 553, 593 (1923); *see also New York v. United States*, 505 U.S. 144, 175 (1992).

Defendants' argue that the 'special' ripeness rules that apply to 'taking litigants' demonstrate that this case is unripe are misplaced because, once again, they incorrectly assume that Plaintiffs have filed a cause of action under the Just Compensation Clause. (Defs.' Mem. at 10.) *See Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172 (1985).

There are two prongs to the *Williamson County* rule applicable to taking litigants. The first is referred to as the "Final Decision Requirement," which requires the plaintiff to

-18-

demonstrate that he or she has received a "final decision" from the relevant government entity. The second is the "Exhaustion Requirement," which directs the plaintiff to first seek "compensation" through the procedures the State has provided for doing so.[16]  *See Daniels v. Area Plan Comm'n of Allen County*, 306 F.3d 445, 454 (7th Cir. 2002).

The Final Decision Requirement has been applied in the context of regulatory taking claims, not confiscatory taking claims like this one.  This is logically so because if a final decision has not occurred, it is possible that the state agency may actually change its regulatory action and avoid conduct that would constitute a "taking" and therefore avoid any just compensation issue.

> As in *Hodel*, *Agins* and *Penn Central*, then, respondent has not yet obtained a final decision regarding how it will be allowed to develop its property. Our reluctance to examine takings claims until such a final decision has been made is compelled by the very nature of the inquiry required by the Just Compensation Clause… This Court has consistently indicated that among the factors of particular significance in the inquiry are the economic impact of the challenged action and the extent to which it interferes with reasonable investment-backed expectations…. Those factors simply cannot be evaluated until the administrative agency has arrived at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question.

*Williamson*, 473 U.S. at 190-91 (citations omitted).[17]  The parties do not dispute that there is no process available in the instant case that could result in something less than complete loss of Plaintiffs' property.

In this case the final decision for which review is sought clearly exists.  The "final decision" that makes Plaintiffs' claim ripe is the CFO's submission of the purported re-estimate

---

[16]    "The question whether administrative remedies must be exhausted is conceptually distinct, however, from the question whether an administrative action must be final before it is judicially reviewable."  *Williamson*, 473 U.S. at 192.

[17]    Indeed every case cited by Defendants concerning the Final Decision Requirement under *Williamson* dealt solely with regulatory taking issues.  (*See* Defs.' Mem. at 12.)

as required by the Legislation.  The report had to be submitted by May 15, 2005.  (Ex. 8 to Appl.

at § 107(d).)  Defendants conceded that this is a final decision on April 25, 2005:

> "As instructed by the Private and Alternative Stadium Financing
> and Cost Trigger Emergency Act of 2004 (the Act) the Chief
> Financial Officer has re-estimated the costs of land acquisition,
> environmental remediation, and infrastructure improvements . . .
> for the new baseball stadium."

(Ex. 11 to Appl.)  Defendants then advised Plaintiffs that based on "clearance" from the

CFO, Defendants **will** take Plaintiffs' property.  (Wolfe Decl. App. C to Defs.' Mem. ¶ 7.)  All of

the facts that can be developed to determine if the statutory requirement essential to the

Council's funding of a public purpose have been developed.  The final decision in this case is

indistinguishable from the final decision in *Daniels*, in which the Seventh Circuit permitted a

Public Use claim to proceed in federal district court pursuant to 42 U.S.C. § 1983 where just

compensation was not sought. *See Daniels v. Area Plan Comm'n of Allen County*, 306 F.3d 445

(7th Cir. 2002).  In that case, the final decision was a Planning Commission's determination that

an area was "blighted."  That determination was required to be made in accordance with specific

legislative requirements (including obtaining cost estimates).  The plaintiffs challenged that

decision as not constituting "public use" within the meaning of the authorizing legislation.

In this case, the Legislation defines the public purpose as building a ballpark on

Plaintiffs' property if the cost to the District of doing so will not exceed $165,000,000, and

further requires that Defendants perform an estimate to determine if this will be the case.

Defendants' final decision that constitutes that estimate is blatantly inconsistent with the

Council's requirements regarding that estimate.  Consequently, the CFO's submission of the

final report satisfies *Williamson County*'s final agency requirement.  *See Williamson County*, 473

U.S. at 186-87.

For ripeness purposes, the "Exhaustion Requirement" presupposes a valid public purpose

for the taking.  If a valid public purpose exists, then it is axiomatic that all that is required is "just

compensation" for the taking as long as the state alternative remedy affords a plaintiff the

opportunity to obtain just compensation.  Thus, the Court stated in *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016 (1984): "Equitable relief is not available to enjoin an alleged taking of property for public use, ***duly authorized by law***, when a suit for compensation can be brought against the sovereign subsequent to the taking." (emphasis added); *see also Patel*, 383 F.3d at 573 (where claim is essentially one for just compensation, eminent domain proceedings must be pursued).  Conversely, if just compensation is not an adequate remedy, *see Lingle*, 125 S. Ct. at 2084, or it is not sought in a Section 1983 action, then equitable relief must be available.  *See Daniels*, 306 F.3d at 457-58 (enjoining defendants from impacting plaintiff's use of property where defendants failed to establish it used legislatively mandated procedures to assure that the public use authorized by the Legislature was present).

Because Plaintiffs are not alleging a Just Compensation Clause violation, and are not seeking a just compensation remedy, Defendants are incorrect in arguing that this case is not ripe because Plaintiffs have "a duty to pursue state remedies before coming to federal court" is misplaced.  (Defs.' Mem. at 13-14.)  They argue that the District provides such remedies in eminent domain or inverse condemnation proceedings.[18]

Defendants' reliance on *Patel v. City of Chicago*, 383 F.3d 569 (7th Cir. 2004) in which just compensation was sought, provides no support for Defendants' argument that Plaintiffs must first take their case through eminent domain proceedings.[19]  The Seventh Circuit has clearly held

---

[18]     Defendants have raised this "alternative remedy" issue in various arguments including ripeness.  (Defs.' Mem. at 12-13); lack of equity jurisdiction, (Defs.' Mem. at 14-17); failure to state a claim, (Defs.' Mem. at 18-19 and 22-23); and lack of likelihood of success on the merits, (Defs.' Opp'n. at 4).  To the extent Defendants argue exhaustion as necessary to achieve final orders, we address that issue here.  To the extent they argue exhaustion because alternative remedies exist to grant the requested relief, we respond in Section III.B below.

[19]     *Patel* does not control the outcome here.  The *Patel* court stated:  "we have also recognized that *bona fide* equal protection claims arising from land-use decisions can be made independently from a takings claim and without being subject to *Williamson* ripeness." (citations omitted).  *Patel*, 383 F.3d at 573.  *Daniels*, which was authored by Judge Manion who also sat on the *Patel* panel, confirms that *bona fide* constitutional challenges may be made in Section 1983 actions without being subject to the *Williamson* ripeness issues. Apparently in *Patel* nothing in the pleadings caused the court to believe that the case raised genuine constitutional

that under circumstances where, as here, plaintiffs seek only equitable remedies and inverse condemnation is unavailable or inadequate, the *Williamson County* ripeness doctrine is not applicable.  *See Daniels v. Area Plan Comm'n of Allen County*, 306 F.3d 445 (7th Cir. 2002).  In *Daniels*, the plaintiffs challenged the Plan Commission's vacating of a restrictive covenant on their residential property that permitted construction of a shopping center nearby.  The plaintiffs filed a complaint under 42 U.S.C. § 1983 in federal court, seeking declaratory relief and a permanent injunction.  Plaintiffs claimed that "they bypassed state court first because they were not seeking monetary compensation, which is the only remedy available through the state's inverse condemnation procedures" and because "state court relief is not mandated in Takings Clause cases where plaintiffs are only seeking equitable remedies." *Id*. at 452.  The court held that Takings Clause litigants need not satisfy *Williamson County* exhaustion requirements by taking their claim to state court if doing so would prove inadequate.  *Id*. at 456-58.  Because plaintiffs alleged interference with use of their property and were not seeking compensation, the court concluded that state court inverse condemnation procedures would be "inadequate to address the Daniels' injury."  *Id*. at 457.  Plaintiffs do not allege a violation of the Just Compensation Clause and do not seek just compensation as a remedy.  Further, an inverse condemnation proceeding is not available here because this is not a regulatory confiscation case.  *See Mekuria v. WMATA*, 45 F. Supp. 2d 19, 27 (D.D.C. 1999) (holding that if a case does not present a physical taking, it must be analyzed as a regulatory taking or an inverse condemnation).

    4.    <u>There is No Adequate Remedy at Law and This Court has Equity Jurisdiction</u>

Defendants argue that this Court cannot exercise its equity powers because Plaintiffs allegedly have an adequate remedy at law in the form of the District's eminent domain statute. (Defs.' Mem. at 15.)  Defendants' argument is misplaced in the context of a Motion to Dismiss

---

issues, and instead simply involved property owners who objected to the fact that their property, among others, *might be* selected for redevelopment.

for lack of subject matter jurisdiction because the question of an adequate remedy at law does not generally refer to the Court's subject matter jurisdiction, but to the remedy available to Plaintiffs. Accordingly, this issue is properly addressed in the context of the second prong of Plaintiffs' Application for Preliminary Injunction: the irreparable harm Plaintiffs will suffer absent preliminary relief and the lack of an adequate remedy at law.  *See* Section II.B.  As explained there, the District's eminent domain statute cannot and will not provide adequate relief.  *See Berman v. Parker*, 348 U.S. 26 (1954) (hearing public use argument outside of eminent domain proceedings); *Daniels v. Area Plan Comm'n of Allen County*, 306 F.3d 445 (7th Cir. 2002) (same).

     5.     <u>Plaintiffs State a Cognizable Claim for Violation of the Fifth Amendment Public Use Clause and are Very Likely to Succeed on the Merits of this Claim</u>

Not only have Plaintiffs adequately stated their Public Use Claim for purposes of Rule 12(b)(6), but given Defendants' failure to dispute the facts demonstrated by Plaintiffs, Plaintiffs are highly likely to succeed in establishing that Defendants are not acting consistent with the public purpose.[20]  In their opening brief, Plaintiffs explained that Counts I and III allege violations of the Public Use Clause, and that, consistent with *Kelo v. City of New London*, 545 U.S. __, 125 S. Ct. 2655 (2005), the Public Use for purposes of the Fifth Amendment is identified by looking at what the Council said it is in the Legislation:  building a ballpark on Plaintiffs' property if certain costs associated with doing so will not exceed $165,000,000.

---

[20]     A complaint should not be dismissed for failure to state a claim unless the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.  *See Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).  The factual allegations of the complaint are presumed to be true and are construed liberally in plaintiff's favor, and plaintiff receives the benefit of all inferences that can be derived from the facts alleged.  *See Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994); *see also United States v. Phillip Morris Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2001).  A ruling on a motion under Rule 12(b)(6) does not test a plaintiff's likelihood of success on the merits; rather, it tests whether a plaintiff properly has stated a claim.  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002).  In this case, Defendants' arguments fail to follow these standards.

Unlike *Kelo*, Plaintiffs' Complaint does not question the wisdom of that public purpose. Rather, Plaintiffs' Complaint alleges that Defendants' action to acquire Plaintiffs' property are not consistent with or authorized by the public purpose identified by the Council because Defendants cannot show that land acquisition and infrastructure costs to the District will be below $165,000,000, and have blatantly violated the law requiring them to do so.

Defendants do not dispute that they have blatantly violated the terms of the Legislation and have not performed a valid re-estimate showing that the cost of building a ballpark on Plaintiffs' property will be less than $165,000,000. Instead, Defendants take issue with the definition of "Public Use" in the Legislation. Defendants argue that the Supreme Court has already recognized the legitimacy of building a stadium as a valid public use, and since that is what the Legislation authorized, Plaintiffs' Public Use Clause claim cannot succeed as a matter of law. (Defs.' Mem. at 4-5.) Defendants' argument is wrong.

The Supreme Court has held that the determination of what the public purpose is that justifies acquisition of private property is made by the legislature, and the legislature is free to tailor a narrow or broad public purpose. *Cf. Kelo*, 125 S. Ct. 2655, 2666 n.13 (2005) ("Had the public use in *Berman* been defined more narrowly, it would have been difficult to justify the taking of the plaintiff's nonblighted department store."). The court is to identify that determination based on the language of the legislation, *Kelo*, and in reviewing legislation, the entire statute must be reviewed, and the plain meaning controls. *See Herbin v. District of Columbia*, 362 F. Supp. 2d 254, 263 (D.D.C. 2005).

Plaintiffs explained in their opening brief that the plain language of the Legislation and the legislative history demonstrate that the Council determined that acquiring Plaintiffs' property to build a ballpark is a valid public purpose only if certain costs to the District associated with doing so will be less than $165,000,000. (Pls.' Appl. at 17-18.). Without addressing either the specific language of the Legislation or the confirming legislative history, Defendants say that "[t]here is not a word in this statute...modifying these 'public use' findings, or even faintly suggesting that the 'public use' findings are in any way dependent on whether the re-estimated

costs exceed $165 million or not." (Defs.' Mem. at 19.)[21] There are many words that say exactly what Defendants deny. *See* Section II.D., *infra*.

In this case, Plaintiffs are not questioning whether the Council may determine that a baseball stadium is a public use justifying acquisition of private property. Clearly it can, but that is not what happened here. Here, the Council more narrowly drew its public purpose justification, and Defendants are unquestionably acting outside that authorization. In this regard, the analysis used by the Seventh Circuit in *Daniels* is particularly instructive.

In *Daniels*, the Indiana legislature defined "public use" and delegated the duty to the local Plan Commission to determine what constituted a public use for the purpose of eminent domain. *See Daniels v. Area Plan Comm'n of Allen County*, 306 F.3d 445, 461 (7th Cir. 2002). The court determined that the Plan Commission still ***had no authority to contradict specific legislative determinations of what did and did not constitute public use***. Under Indiana law, the Plan Commission had no authority to condemn property if "commercial development" was the "sole public purpose." *Id*. at 462. Because Indiana law "specifically prohibits a commission from exercising the right of eminent domain in an economic development area," the court found that "the Indiana legislature has determined that economic development on its own does not constitute a public purpose sufficient to satisfy the public use requirement inherent in the exercise of eminent domain under Indiana law." *Id*. at 463. In order to exercise the power of eminent domain to "achieve the purpose of commercial development," the statute required that the stated area must be "blighted." *Id*. The law then established a "specific and detailed" process that a local commission must follow in order to determine if an area is blighted. It included the preparation of 1) maps and plats showing the affected areas and designated public

---

[21]    If Defendants are arguing as a factual matter that "the Council's concern was with the possibility of incurring excessive costs," (Defs.' Mem. at 19), but not the public purpose, such argument must be rejected because for purposes of their Motion to Dismiss, all allegations in the complaint be taken as true. *See Chavous v. District of Columbia Fin. Responsibility and Mgmt. Assistance Auth.*, 154 F. Supp. 2d 40, 44 (D.D.C. 2001). That means accepting that as a factual matter the Council's determination that building a ballpark on Plaintiffs' property is a valid public purpose only if the acquisition and infrastructure costs do not exceed $165 million.

uses, 2) lists of the owners of each property to be acquired, and 3) estimates of the cost of acquisition and development. *Id.* The Plan Commission failed to follow this statutorily required process. "Instead it simply justified the vacation based on conclusory and largely unsupported statements . . . ." *Id.* The court held that

> "[b]ecause the Plan Commission has neglected to follow the statutory requirements for determining blight, they cannot now rely on that legislatively determined public use in order to justify their taking. To hold otherwise would obviate the procedural requirements of Indiana's blight code."

*Id.* at 464. Consequently, the court affirmed the requested injunction against the Plan Commission.[22] *Id.* at 468; *see also Scott v. Metropolitan Development Comm'n of Marion County*, 2002 WL 31921295, at *3-*4 (S.D. Ind. Dec. 20, 2002) (retaining jurisdiction and granting preliminary injunction where dispositive issue before the court was "whether the taking of a recognized property right" was a taking for a public use and "not whether the taking was justly compensated."); *accord Montgomery v. Carter County*, 226 F.3d 758, 767 (6th Cir. 2000) (plaintiffs claiming a taking which completely lacks public purpose and is unconstitutional regardless of whether just compensation is paid ***do not have to exhaust state remedies*** before suing in federal court.); *99 Cents Only Stores v. Lancaster Redev. Agency*, 237 F. Supp. 2d 1123 (C.D. Cal. 2001) (city could not institute eminent domain powers where such exercise of power went beyond the legislature's narrow determination of public use).

The similarities between *Daniels* and the instant case are remarkable. Just as the Indiana legislature determined that acquiring certain properties for economic development was a valid public purpose ***if the area was blighted***, the D.C. City Council determined that acquiring Plaintiffs' property for a ballpark is a valid public use ***if the certain acquisition costs will not exceed $165,000,000***. Just as the Indiana legislature set forth very specific procedures that had

---

[22]    The court determined the public use by looking at the entire statute, not just the preamble as Defendants suggest. (*See* Defs.' Mem. at 19.)

-26-

to be followed (including the preparation of cost estimates) to make sure the area to be targeted for acquisition was blighted before that property was acquired, so too the D.C. Council set forth very specific procedures that had to be followed for the re-estimate, and specific results that had to be obtained before the Defendants would be authorized to acquire the targeted property.  Just as the Indiana law prohibited the Commission from acquiring property absent proper evidence of blight, so too does the Legislation prohibit acquisition of plaintiffs' property if the costs exceed the specified cap.  Finally, the Seventh Circuit found that the failure of the defendant to follow the statutory requirements rendered the defendant's efforts to impact plaintiffs' constitutionally protected property rights a violation of the Fifth Amendment Public Use Clause.  This is exactly the claim that has been made here.

Just as in *Daniels*, Defendants here have failed to pursue the statutorily required process prior to taking for a valid public use as defined by the legislature.  The Council specifically required that the components that must be included in the estimated "costs to the District for land acquisition and infrastructure" include, among other things: (a) at least one separate appraisal of each parcel of land to be acquired; and (b) an estimate of the environmental remediation costs. (Ballpark Financing and Cost Trigger Legislation, § 107(b); Compl. ¶ 21.)  Defendants admit that they have not conducted separate appraisals of each parcel of land to be acquired.  (*See* Wolfe Decl. App. C ¶¶ 6, 12-13, Defs.' Mem.)  Consequently, just as in *Daniels*, Defendants "cannot now rely on that legislatively determined public use in order to justify their taking.  *Id*. at 764.  To hold otherwise, would obviate the requirements of the Legislation.[23]

---

[23]    Defendants' remaining discussion of matters outside the scope of the suit, specifically the notion of falling land prices and the notion that baseball will be lost to the city forever should Plaintiffs succeed, is irrelevant and distracting.  (*See* Defs.' Mem. at 3, 9.)  Plaintiffs seek no monetary damages, nor has there been any discussion of fluctuating land values.  The sole requested relief is the cessation of the District's unconstitutional actions in acquiring Plaintiffs' property – such relief is appropriate and not dependent on Defendants' irrelevant speculation. The baseball stadium will not be stopped "in its tracks" as pejoratively described by Defendants. (Defs.' Mem. at 3); *see* Ballpark Omnibus Financing and Revenue Act of 2004 §§ 105(b)(2), 107(e).

Lastly, Defendants' heavy reliance on *Rumber v. District of Columbia*, Civ. Action No. 04-1170 (RMU) (May 31, 2005), is misplaced in the context of this case.  (*See* App. A to Defs.' Opp'n.)  *Rumber* involved claims completely different than those at issue here.  In *Rumber*, the plaintiffs challenged the substance of the Council's public use determination and whether that determination – to promote economic development – is valid under the Fifth Amendment.  (See Exhibit 1 hereto, *Rumber v. D.C.*, Second Amended Complaint, Count I ¶¶ 75 - 81.)  For example, plaintiffs questioned whether there was adequate consideration of benefit to the public of the agency action, and the speculative nature of the benefits that will be accorded.  (*See id.*)  Judge Urbina found, citing *Berman*, that the defendants were acting within the broad purpose that the law authorized, and therefore it was not substantially likely that Plaintiffs would succeed on the merits demonstrating otherwise. (*See* App. A to Defs.' Opp'n at 13.)  Our case presents no such claim.  In this case, we do not challenge the Council's determination of public use; in fact, Plaintiffs embrace it.  But the Council's public use justification in this case is far narrower than that which was at issue in *Rumber* or in *Berman*, and as the Supreme Court said in *Kelo*, 125 S. Ct. at n.13: "Had the public use in *Berman* been defined more narrowly, it would have been difficult to justify the taking of the plaintiff's [property]."  Plaintiffs' claims here focus on Defendants' plans to acquire Plaintiffs' property even though they are clearly not acting in accordance with the public purpose ***that the Council established***.

6.  <u>Plaintiffs State a Cognizable Claim Based on the Substantive Due Process Clause and Plaintiffs are Very Likely to Succeed on the Merits of this Claim</u>

Plaintiffs argued in their opening brief that there cannot possibly be a rational relationship between the Defendants' actions to acquire Plaintiffs' property for a ballpark when the law pursuant to which Defendants are purportedly acting expressly precludes use of that site for that purpose.  (Appl. at 22-25.)  Plaintiffs have alleged facts illustrating in concrete detail how Defendants have turned the entire process required by the Council on its head:  (a) Defendants' scorn for the Council's specific concerns that a stadium not exceed a certain cap; (b)

Defendants' violation of the express requirement that before moving forward they provide a valid re-estimate showing that the costs of acquiring land and infrastructure for the ballpark would not exceed $165,000,000; (c) Defendants' conscious decision not to conduct parcel-by-parcel appraisals for the estimate, even though the Legislation specifically requires such appraisals; and (d) Defendants' bizarre statement that the figure they did produce as an estimate of land acquisition costs to the District cannot be relied on as an estimate of what those costs to the District will be.  (*Id.*)  At least one member of the Council which enacted the law described the process engaged in by Defendants as "manipulation," not estimation.  (Councilmember Catania, Ex. 6 to Appl. at 50:5-7.)

Defendants do not dispute any of these facts.  Instead they argue that Plaintiffs have failed to state a claim for a violation of substantive due process because: (a) a substantive due process claim cannot be brought where a more specific constitutional provision applies; (b) a substantive due process claim cannot lie merely for violations of local law; (c) "private use" cases are rarely successful; and (d) this is not the kind of "truly horrendous" situation that supports a substantive due process claim.  Defendants' arguments are off the mark.

First, Defendants can point to no case holding that a substantive due process claim cannot be brought along with a taking claim where the remedy sought is not "just compensation."[24]  The very case Defendants rely on to seek dismissal explains why they are wrong:

> A plaintiff's claim that she was denied substantive due process is different, however, from her claim that she was denied just compensation.  Here she is arguing not the state owes her purchase money for compelling her to sell it land but that it is in wrongful possession of the land and must give it back….

---

[24]    Defendants rely on *Graham v. O'Connor*, 490 U.S. 386 (1989), which holds that a claim of unlawful search and seizure must be brought under the Fourth Amendment rather than as a substantive due process claim.  This holding does not and has not been applied to cases which involved the Public Use Clause of the Fifth Amendment.  In *Williamson*, the court analyzed both a Just Compensation Clause claim and a Due Process Claim without ever suggesting that the latter was somehow foreclosed by the former because of the more specific nature of the Just Compensation Clause. *Williamson*, 473 U.S. at 147.

*Gamble v. Eau Claire County*, 5 F.3d 285, 286 (7th Cir. 1993).

Second, Defendants' argument that a substantive due process violation cannot lie for "mere" violations of local law is wrong, and even if correct, that is not the allegation being made here. For purposes of this Motion, all of Plaintiffs' allegations must be taken as true, and if true, reflect conduct far more serious than "mere violations" of law. Defendants conduct cuts the heart out of the law they claim to be acting under. The remainder of Defendants' "local law" argument is a restatement of its argument that there are adequate alternative local law remedies that allow this Court to avoid exercising jurisdiction. This is addressed in Section II.A.1(e) above.

Third, Defendants' argument that Count II should be dismissed because "private use" cases have seldom been successful has no merit. Count II is not a "private use" case. Plaintiffs' substantive due process claim is that Defendants' plans to acquire Plaintiffs' property for a ballpark have no conceivable rational relationship to any legitimate public purpose when the law authorizing construction of a ballpark specifically prohibits acquiring this particular land under these particular circumstances for this particular purpose. Defendants do not dispute this.

Fourth, Defendants' argument that this is not the kind of "horrendous" situation that is appropriate for a substantive due process claim is based on an incorrect application of the standards governing a motion to dismiss. Defendants are required to accept all allegations in the Complaint as true. *See Chavous v. District of Columbia Fin. Responsibility and Mgmt. Assistance Auth.*, 154 F. Supp. 2d 40, 44 (D.D.C. 2001). Instead, Defendants pick and choose which allegations they wish to accept. They ignore the allegations supported by extensive facts upon which the wholly irrational nature of Defendants' conduct can be seen. For example, Defendants ignore (thus do not contest) that: (a) Defendants did not conduct a valid re-estimate, blatantly violating the requirements of the law; (b) the data Defendants did provide unquestionably demonstrates that the estimated land acquisition and infrastructure cost to the District will far exceed $165,000,000, by tens of millions of dollars; (c) the bizarre statement by Defendants that the alleged estimate that was done to determine costs to be incurred by the

District for acquisition of land cannot be relied upon to estimate what the costs will actually be incurred for these acquisitions; and (d) Defendants' actions have already impacted Plaintiffs' use of their property and will unquestionably result in the imminent and complete loss of all of Plaintiffs' property rights.

Assuming for the purposes of the Motion to Dismiss that it is true that there is no valid re-estimate demonstrating that the costs to the District to acquire land and infrastructure to construct a ballpark on Plaintiffs' property will be less than $165,000,000, then the Legislation flatly prohibits Defendants from acquiring Plaintiffs' land and constructing a ballpark on it. There is no conceivable rationale, and Defendants have offered none, that would justify Defendants' acquisition of Plaintiffs' property to build a ballpark pursuant to a law that expressly prohibits them from doing so. Regardless of what label is placed on the test for when an agency's conduct violates substantive due process, it is clear that if there exists no possible rationale for the action, substantive due process is implicated. *See Lingle,* 125 S. Ct. at 2084. Defendants have not offered even a colorable reason why they may acquire Plaintiffs' property for a ballpark when the law expressly prohibits such action.

### B.    Irreparable Injury To Plaintiffs

Plaintiffs stated in their Complaint that they are entitled to a preliminary injunction because there is no adequate remedy at law. (Compl. ¶ 8, 43, 58, 68.) Plaintiffs emphasize again that this case arises under the Public Use and Due Process Clauses, not under the Just Compensation Clause. Accordingly, the relief Plaintiffs seek is protection from having property taken away from them by the Defendants, who have no authority to take it, and to ensure that Plaintiffs can retain ownership of that property and pursue legitimate activities on their land. Defendants ignore the Supreme Court's recent teaching that if Defendants' actions are "found to be impermissible—for instance because it fails to meet the 'public use' requirement or is so arbitrary as to violate due process—***that is the end of the inquiry***. ***No amount of compensation can authorize such action***." *Lingle*, 125 S. Ct. at 2084 (emphasis added). *See also Daniels v.*

*Area Plan Comm'n of Allen County*, 306 F.3d 445 (7th Cir. 2002).  Despite this, Defendants point to the "just compensation" procedures available in eminent domain proceedings under the District Code and say that that procedure permits Plaintiffs to raise their constitutional claims.[25] D.C. Code § 16-1301 et seq.  Defendants fail to address the reality that the statute itself, the case law, and the undisputed facts demonstrate that the equitable relief sought in this case may not and cannot be provided in the District eminent domain procedures.

Defendants also once again mistakenly rely on the *Rumber* decision.  In *Rumber*, Judge Urbina determined that there was an adequate remedy at law because "it is uncontested that D.C. provides a mechanism for property owners to seek compensation through condemnation proceedings, should the defendants initiate such proceedings." (*See* App. A to Def. Opp'n at 9, 17.)  The reasons why no such remedy exists in this case were not present before Judge Urbina. Among other things, the *Rumber* plaintiffs sought monetary damages, and Plaintiffs here do not. As *Daniels* teaches, that is a material distinction when there is an argument that eminent domain proceedings will afford the requested relief.

        1.       <u>The Eminent Domain Statute Does Not Permit Injunctive Relief Ordering Return of Title Once Title is Taken</u>

The D.C. eminent domain taking statute provides:

> § 16-1314. Declaration of taking; contents; deposit; transfer of title; determination; interest
>
> (a) In an action pursuant to this subchapter, the plaintiffs may file in a cause, with the complaint or at any time before judgment, a declaration of taking, signed by the Mayor, declaring that the property is thereby taken for use of the District of Columbia. The declaration of taking shall contain or have annexed thereto a --
>
> > (1) statement of the authority under which and the public use for which the property is taken;

---

[25]     Inverse condemnation is not an available remedy where the taking is confiscatory rather than regulatory.  *See Mekuria v. WMATA*, 45 F. Supp. 2d. 19 (D.D.C. 1999) (inverse condemnation only available for regulatory taking case, not physical taking).

(2) description of the property taken sufficient for the identification thereof;

(3) statement of the estate or interest in the property taken for public use;

(4) plan showing the property taken; and

(5) statement of the sum of money estimated by the Mayor to be just compensation for the property taken.

(b) Notwithstanding section 16-1319, *upon the filing of the declaration of taking* and the deposit in the registry of the court, to the use of the persons entitled thereto, of the amount of the estimated *compensation* stated in the declaration, *title to the property in fee simple absolute*, or such less estate or interest therein as is specified in the declaration, *shall vest in the District of Columbia,* and the property shall be deemed to be condemned and taken for the use of the District*, and the right to just compensation therefore shall vest in the persons entitled thereto*. The *compensation* shall be ascertained and awarded in the proceedings and established by judgment therein, and the judgment shall include, as part of the *just compensation* awarded, interest at the rate of 6 per centum per annum on the amount finally awarded as the value of the property as of the date of taking, from that date to the date of payment. Interest may not be allowed on as much thereof as has been paid into the registry. A sum so paid into the registry may not be charged with commissions or poundage.

*See* D.C. Code § 16-1314 (2001); *see also District of Columbia Redevelopment Land Agency v. Dowdey*, 618 A.2d 153 (D.C. 1992) ("In proceeding by condemnation, title vested indefeasibly in the United States pursuant to statute, D.C. Code § 16-1353," the statutory equivalent of Section 16-1314) that applies to certain federal takings. Once title vests indefeasibly, it cannot be returned in a just compensation proceeding. "Compensation" is the only remedy even mentioned and nothing in the taking statute speaks of a remedy through injunctive relief and return of title.

*Catlin v. United States*, 324 U.S. 229 (1945), upon which Defendants rely to suggest that Plaintiffs can effectively obtain return of their property in the eminent domain proceeding, does not support their position. It construed statutory provisions *that are not included in the*

***District's current eminent domain statute***.  *Catlin* construed the provisions of the Declaration of

Taking Act of 1931 ("Taking Act of 1931"), which was the precursor to the District's eminent

domain statute.  The Court concluded that though the "taking" section of the law, Section 1

(which is virtually identical to Section 16-1314 cited above),[26] spoke only to compensation and

apparently indicated that title transferred indefeasibly, that section was "counterbalanced by

other provisions . . ." *Id*. at 240.  The Court then looked to other provisions of the 1931 Act[27] and

concluded that although the issue was "not entirely clear," these other provisions provided a

basis upon which the Court could construe the statute to permit the possibility of return of the

title.[28]

Defendants fail to mention that the provisions of the 1931 Act that permitted the Court to

conclude that title might be returnable at the end of a just compensation proceeding because it

was not transferred indefeasibly, ***were not enacted in the current D.C. eminent domain statute***.

*See* D.C. Code § 16-1301 et seq.  Rather, the only provision analyzed under *Catlin* (Section 1)

that was enacted by the District of Columbia (Section 16-1314), was that which is virtually

identical to the one that the *Dowdey* court concluded transfers title "indefeasibly" (Section 16-

1353).  *See Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 573-74 (1982) (holding that

where an older statute awarding damages was the basis for a current statute and that current

statute eliminates restrictions on the amount of damages awarded, the Court properly concluded

that the legislature intentionally intended to exclude the removed section.)  Thus, the eminent

domain proceeding upon which Defendants argue that Plaintiffs should rely, results in an

indefeasible transfer of title that cannot be returned.

---

[26]     *See Catlin*, 324 U.S. at n.13 (Section 1), *compare* D.C. Code § 16-1314.

[27]     *See Catlin*, 342 U.S. at 238 (Sections 2 and 4).

[28]     The issue in *Catlin* was whether a party that challenged the authority to take property in a
compensation proceeding and lost, had to wait until the compensation portion of the proceeding
was concluded to appeal the authority question.  The Court's concern was that once title
transferred indefeasibly upon the declaration of taking, it could not be returned in the event the
plaintiff prevailed on the authority issue after just compensation was determined.

Defendants then argue that a rule of procedure, SCR-Civ. 71A, which allows Plaintiffs to raise "all defenses" and is "virtually identical" to Fed. R. Civ. P. 71A, which according to two cases cited by Defendants permits "taking authority" issues to be raised, somehow authorizes the return of wrongfully-taken property. Based on this strained analysis, Defendants argue that Plaintiffs are "fully protected by their right to raise defenses in an eminent domain proceeding," and that Plaintiffs can challenge the District's claim to title in eminent domain proceedings. (Defs.' Mem. at 16.) However, neither case addresses the question of whether Plaintiffs can obtain injunctive relief in the form of having their title returned if it is determined that it was taken without authority.

*United States v. South Dakota Game, Fish, and Parks Dep't*, 329 F.2d 665 (8th Cir. 1964) only discusses market value and just compensation, making only a passing and not particularly informative reference to authority for the taking. *Nicodemus v. Washington Water Power Co.*, 264 F.2d 614 (9th Cir. 1959), is equally unavailing and its analysis provides no assurance that Plaintiffs' remedy of injunctive relief will be available in the District's condemnation proceedings.[29] The court in *Nicodemus* notes only that plaintiffs denied the authority of appellee to condemn. It does not discuss the Idaho taking statute that was at issue. Moreover, the case concerned only an easement and not a complete confiscatory taking, which easement could possibly have been reversed if plaintiffs had prevailed.

As the Supreme Court held in *Terrace v. Thompson*, 263 U.S. 197, 214 (1923):

> …the legal remedy must be as complete, practical and efficient as that which equity could afford. Equity jurisdiction will be exercised to enjoin the threatened enforcement of state law which contravenes the federal Constitution wherever it is essential in order effectually to protect property rights . . . .") (citations omitted).

---

[29]    Defendants' reliance on *United States v. Herring*, 750 F.2d 669 (8th Cir. 1984) is also not instructive, as it relies on *Catlin* and does not discuss whether title can be returned in such a proceeding.

Defendants' claim that "Plaintiffs can **try** to raise the defense of lack of statutory authority . . . ." (Defs.' Mem. at 17) (emphasis added), is not persuasive that an eminent domain proceeding can effectively protect Plaintiffs' property rights.

> 2.    As a Practical Matter, Plaintiffs' Claims Cannot be Remedied in an Eminent Domain Proceeding

Even if Plaintiffs could obtain a judicial determination in an eminent domain proceeding that Defendants took their property in violation of the Public Use Clause, there will be nothing left to return except title to far right field and a parking lot.  This Circuit has long held that forcing a Plaintiff to go through such a process is unnecessary and inappropriate.  This Court can and should decide the matter on the merits now for at least two reasons.  First, given the time constraints here, as a practical matter by the time a final judgment had been entered in the eminent domain proceeding there will be nothing left to return to Plaintiffs.

> [N]o interest would be served by an unnecessary prolongation of litigation over the validity of this taking.  Everybody's interest . . . would be best served . . . by an expeditious and uncomplicated resolution of this basic issue.  Certainly efforts to deny the owners' right to test the validity of the taking would result in indefinite contesting and in doubtful title.  On the other hand, a prompt decision on the question of validity would either permit the venture to go forward without ancillary complication or nullify the project entirely.

*Loughran v. United States*, 317 F.2d 896, 899 (D.C. Cir. 1963).[30]

In *Loughran*, the government invoked *Catlin* in an attempt to prevent landowners from appealing a ruling of the District Court granting the government possession of the landowners' property.[31]  This Circuit determined that the practicalities justified permitting the case to be

---

[30]    In this case, the only impact would be to stop acquisition of private property in one location.

[31]    The *Loughlin* case arose under the same Declaration of Takings Act as *Catlin*. As explained above, the provisions of that law that might allow return of title do not exist under District law in the current eminent domain statutes.

heard in federal district court immediately.  Just as in *Loughran*, the interests of all parties will best be served by this Court determining the merits of this case.

Defendants' own evidence demonstrates that the practicalities and time constraints in the current situation compel this Court to hear this matter now.  According to the Declaration of Mark H. Tuohey III, in support of Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction, construction of the stadium must begin no later than the first quarter of 2006.  (*See* Touhey Decl., App. B ¶ 5.d, Defs.' Opp'n.)  For this to occur, Defendants must not only take Plaintiffs' property within the next few weeks, they must demolish all standing structures on the 63 parcels in short order.  As a matter of law, title will vest in the District of Columbia upon the filing of a declaration of taking.  *See* D.C. Code § 16-1314 (2001); *see also District of Columbia Redevelopment Land Agency v. Dowdey*, 618 A.2d 153 (D.C. 1992).  Once title transfers indefeasibly, there is nothing to stop Defendants from beginning to construct the ballpark.

Second, there is no legal requirement that this claim be raised only in an eminent domain proceeding, or that an alternative proceeding be used.[32]  Thus, although *Catlin* involved a challenge to the validity of the taking under the Public Use Clause in a compensation proceeding under a different law,[33] this Circuit has also heard similar challenges brought as direct constitutional claims.  *See, e.g., Berman v. Parker*, 348 U.S. 26 (1954).[34]

----

[32]    Though Defendants cite *Donnelly v. District of Columbia Redevelopment Land Agency*, 269 F.2d 546 (D.C. Cir. 1959), for the proposition that Plaintiffs have an adequate remedy of just compensation, (*see* Defs.' Mem. at 15), Defendants fail to acknowledge that the District Court accepted subject matter jurisdiction in the first instance to hear the case on the merits challenging the public purpose for the taking of her property.

[33]    Among other things, it appears that in *Catlin* it might have been too late to return the property in any event. *Catlin*, 324 U.S. at 243-44.

[34]    Defendants' desire to relieve the court of "having to wade through the huge volume of Plaintiffs' exhibits" and becoming involved in "excruciating details of cost and budget estimating procedures" is not only incorrect, but is hardly grounds for permitting violations of constitutional rights to occur.  Plaintiffs' arguments are straightforward and require no excruciating review of details, especially in light of Defendants' failure to present any evidence, by affidavit or otherwise, that a valid re-estimate could possibly result in a figure that is below $165,000,000.  Defendants do not offer a single word to dispute the arbitrary and irrational nature of the re-estimate.  There is nothing complicated about what Defendants have done here.

**C.    The Balance Of Equities Strongly Favor Plaintiffs Because Any Hypothesized "Injury" To Defendants Is Within Their Control To Prevent**

Despite Defendants' assertions to the contrary, the balance of the equities indeed favors the Plaintiffs.  When balancing the equities in an injunction proceeding, a defendant may not claim injury when the defendant "brought any and all difficulties occasioned by the issuance of an injunction upon itself."  *Opticians Ass'n of America v. Independent Opticians of America*, 920 F.2d 187, 197 (3d Cir. 1990); *see also Utahns For Better Transp. v. U.S. Dept. of Transp.*, No. 01-4216, 2001 WL 1739458, at *2 (10th Cir. Nov. 16, 2001) ("'The self-inflicted nature of defendant's harm ... weighs in favor of granting preliminary injunctive relief.'"), *quoting Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 806 (3d Cir. 1998).

Defendants claim that if a preliminary injunction is issued preventing acquisition or seizure of Defendants' property, even temporarily, Major League Baseball might (a) move the team out of Washington if the stadium is not completed at this location by March 1, 2010, which would eliminate the financial benefits that might have otherwise accrued had the stadium been built at this location, or (b) claim damages under the contract if the stadium is not completed by March 1, 2008. (*See* Defs.' Opp'n at 8-9.)  Neither claim has any credence.

The Legislation and MLB contract both anticipate the possibility that the stadium would be located somewhere else if the cost of acquisition and infrastructure at the primary ballpark site exceeds the $165 million statutory cap.  The Legislation requires that Defendants consider other sites.

> (e)  If the total amount of these re-estimated costs to the District exceeds $165 million, the primary ballpark site ***shall be deemed financially unavailable by the District*** pursuant to this title. Pursuant to this title, the Mayor and the Sports and Entertainment Commission ***shall pursue replacement of the primary ballpark site with a substantially less costly site*** in the District . . . .

(*See* Ex. 8 to Appl., Ballpark Omnibus Financing and Revenue Act of 2004 § 107(e).)  The MLB contract anticipates the possibility as well, and permits the parties to consider other sites:  "The

Baseball Stadium Site shall be the site described in Exhibit B ***unless the parties mutually determine that some other site should be selected instead***." (*See* Ex. 5 to Appl. at § 4.01) (Emphasis added.) If Defendants choose not to follow the law or the permissible avenues under the contract, and the team leaves, Defendants can hardly claim that any of their alleged potential injuries will have been caused by a preliminary injunction. With respect to the damages issue, this also is entirely within the control of Defendants to avoid or mitigate. As shown above, Defendants need only follow the law and use the process permitted in the MLB contract to build a stadium at an alternative site.

The MLB contract anticipates that all of the benefits Defendants claim will accrue to the District will occur at any location in the District. Ex. 5 to Appl. at § 6.12. Such benefits will be even greater if the cost of land acquisition is below $165,000,000 as is required by the Legislation. Nothing about this case will "stop the projects in its tracks." That will only happen if Defendants continue to flout the statutory requirements that have been put in place.

In arguing that Plaintiffs are not entitled to an injunction, Defendants again cite to Judge Urbina's Memorandum Opinion in *Rumber*. Reliance on this case, however, is misplaced because there was no evidence that defendants had the power to prevent the potential injuries this alleged would occur. Moreover, any reliance on the Declaration of Mark H. Tuohey, III, chairman of the D.C. Sports and Entertainment Commission would also be misplaced. A court need not assign evidentiary value to an affidavit if it finds the affidavit to be conclusory or not based on personal knowledge. *Jones v. Grieg*, 829 A.2d 195, 199 (D.C. 2003). Although Mr. Tuohey may be chairman of the Commission that brought baseball to D.C., and an outstanding trial lawyer, there is no apparent basis for his speculation regarding the sale of bonds or property values.

A preliminary injunction is particularly appropriate here, given Defendants' actions related to the *Rumber* case. In that case, a preliminary injunction was not sought until after some of the targeted property had been "voluntarily" acquired by the District. In opposing the

Application, the Defendants argued that one of the equities in favor of them was the impact of an injunction on "frustrating the agreements between the NCRC and the owners that voluntarily entered contracts to transfer title…." *Rumber v. District of Columbia*, Civ. Action No. 04-1170 (RMU) (May 31, 2005), s*ee* App. A to Defs.' Opp'n. at 18. In this case, such "voluntary" acquisitions have not occurred – yet. Defendants should not be permitted to go forward with action that, if illegal as we claim, may then be used by them to create an equity argument favoring denial of a permanent injunction.

The alleged future harm purported by Defendants will only occur if no stadium is built anywhere in the District, not just the primary ballpark site. Because the statute itself requires a change in venue if the estimate of land acquisition is too high, it is ludicrous to believe that proper application of the statute will prove to be the downfall of the entire stadium project.

## D.    The Public Interest

Defendants agree that the best source of determining the public interest for purposes of injunctive relief is to look to the statute involved. Accordingly in *Rumber*, Judge Urbina noted that the public interest reflected in the Skyland Act was a general concern for eradicating blight in that location, as well as other public interest considerations including retaining, expanding, and attracting new businesses, and inducing job creation. The legislation which authorized the condemnation of property for the Skyland project stated as its public purpose the retaining and expanding of businesses, the attraction of new businesses, the creation of new jobs, and the removal of slum and blight. (App. A to Defs.' Opp'n at 12). Such a broadly worded public purpose stands in direct contrast to the Legislation at issue in this case, whose public purpose has been carefully circumscribed by the showing of a valid cost re-estimate below $165,000,000.

Here, both the Legislation and its legislative history make clear that the public interest is not just in building a ballpark; it is in building a ballpark in a particular location only if the cost will not exceed a certain cap, because that is directly tied to the economic benefits that such a project might provide. The legislation stated its purpose as:

> to require the review of cost estimates by the Chief Financial
> Officer ***and, if the re-estimated cost exceeds $165 million, to
> deem the designated site financially unavailable and to require
> the Mayor and the Sports and Entertainment Commission to
> pursue a replacement site***….

(Ballpark Omnibus Financing and Revenue Act of 2004, Preamble.) (emphasis added.)

The Council defined the "primary ballpark site" as:

> [T]he site bounded by N Street, S.E., Potomac Avenue, S.E., South
> Capitol Street, S.E., and 1st Street, S.E., *or such other site* as
> determined in accordance with subsection (b)(2) of this section *if
> this primary site shall be unavailable to be acquired by the Mayor*.

(Id. § 105(a)(2) (emphasis added).)

This passage envisions that an alternate site might be chosen.  The statute continues with

the requirement that a re-estimate prior to May 15, 2005 be under $165 million:

> (d)  **Prior to May 15, 2005**, and prior to the date upon which the
> District enters into any obligation to acquire or purchase any
> property on a site bounded by N Street, S.E., Potomac Avenue,
> S.E., South Capitol Street, S.E., and 1st Street, S.E. ("primary
> ballpark site"), the Chief Financial Officer shall re-estimate the
> costs to the District for land acquisition and infrastructure . . . .

> (e)  If the total amount of these re-estimated costs to the District
> exceeds $165 million, the primary ballpark site ***shall be deemed
> financially unavailable by the District*** pursuant to this title. . . .
> [and] the Mayor and the Sports and Entertainment Commission
> ***shall pursue replacement of the primary ballpark site with a
> substantially less costly site*** in the District, . . .

(Id. §107(d), (e) (emphasis added).)  Legislative history confirms that these conditions

are absolute pre-conditions to any further use of the primary ballpark site:

> The idea is a two step process:  One, if in fact, this number is
> reached, the trigger is set off, the site is then deemed unavailable.
> It's unavailable.  That's what the legislation says.  It is unavailable.
> It's written in black and white – unavailable.

(Councilmember Cropp, Ex. 6 to Appl. at 33.)  In the legislative history, Councilmember

Cropp goes on to succinctly describe the reason for the inclusion of the $165 million safeguard:

> The intent of this [provision] was to at least push the District
> government to move forward at some point, to say at some point,
> folks this has proven to be too costly.… Prior to this language
> being added the last time, there was nothing that would move the
> District government forward in looking for an alternative site.

(Ex. 6 to Appl. at 31:12-18.) Clearly the provision was designed as a protective measure against the Defendants overreaching the carefully considered public purpose of the Legislation to build a ballpark that will provide economic benefit to the District if it is not too expensive. As a result, there can be no doubt that issuing an injunction is in the public interest. Whether the District will be mired in delays depends entirely on Defendants themselves – they are authorized to find a new site for the ballpark if they choose to do so. (*See* Ex. 5 to Appl. at § 4.01; Ex. 8 to Appl. § 107.)

## III.    CONCLUSION

For the foregoing reasons the Court should grant Plaintiffs' Application for Preliminary Injunction and deny Defendants' Motion to Dismiss.

Dated: August 4, 2005                    Respectfully submitted,

KIRKPATRICK & LOCKHART NICHOLSON
GRAHAM, LLP


_____
Barry M. Hartman, (D.C. Bar No. 291617)
Charles L. Eisen (D.C. Bar No. 003764)
Christopher E. Dominguez, (D.C. Bar No. 460141)
1800 Massachusetts Avenue, N.W.
Washington, D.C.  20036
(202) 778-9000
(202) 778-9100 (fax)

Counsel for Plaintiffs