IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SOUTHEAST LAND DEVELOPMENT ASSOCIATES, L.P., et al. <br><br> Plaintiffs, <br><br> vs. <br><br> THE DISTRICT OF COLUMBIA, et al. <br><br> Defendants. | Civil Action No. 05-1413 (RWR) |

**BRIEF *AMICUS CURIAE* OF DISTRICT OF COLUMBIA COUNCILMEMBERS
DAVID A. CATANIA AND JIM GRAHAM IN
<u>OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>**

**INTEREST OF THE AMICI**

David A. Catania and Jim Graham (hereafter, "Amici Councilmembers") are members of the Council of the District of Columbia ("DC Council"). The DC Council has the authority to enact laws on behalf of and for the benefit of the citizens of the District of Columbia. Each of the undersigned was directly and personally involved in the drafting, consideration and enactment of the Private or Alternative Stadium Financing and Cost Trigger Emergency Act of 2004 (D.C. Official Code § 3-1401) and the Ballpark Omnibus Financing and Revenue Act of 2004 (D.C. Official Code § 10-1601) (collectively, the "Legislation"). Because of our involvement in this process, Amici Councilmembers believe that we may be able to provide information that will assist the Court in its review of this matter.

We understand the Fifth Amendment to the United States Constitution authorizes the taking of private property for a public use and that the determination of whether a particular use is a valid public use is made by the legislature. We also understand that the public use that the

legislature determines justifies taking private property is afforded great deference by courts and may well be more narrow than the Fifth Amendment permits. We further understand that if the confiscation is not consistent with that public use as determined by the legislature, then the Fifth Amendment prevents the property from being taken. This submission is intended to provide the Court with information related to the valid public use that the DC Council determined in the Legislation would justify taking the plaintiffs' property for a baseball stadium. We believe that it is important for the Court to be aware that, as members of the DC Council, we considered the justification for taking private property for a stadium to be a valid public use only if the costs of doing so would not exceed $165,000,000, and we believe the Legislation as enacted clearly states the DC Council's intent. We further believe it is important for the Court to be aware that the Legislation did not give the District or Mayor *carte blanc* to acquire plaintiffs' property for the stadium, nor did the DC Council determine that a municipal stadium was a valid public use of plaintiffs' property regardless of cost.

**The Legislation**

On December 21, 2004, the DC Council enacted the Legislation that together embodied the DC Council's policy determination regarding whether and how construction of a publicly-owned baseball stadium on the plaintiffs' property in the District would be a valid public use consistent with the interests of the District and its residents. The Legislation provided that building a stadium in the District on the plaintiffs' property was a valid public use that justified taking private property only if the total cost for land acquisition and infrastructure at the "primary ballpark site" in Anacostia would not exceed $165,000,000. Limiting this cost was and is at the heart of and inextricably linked to the DC Council's determination that there existed a valid public use that justified taking plaintiffs' private property for the stadium.

**This Case**

We understand that on or about July 15, 2005, the plaintiffs sued the Mayor and the District of Columbia. We understand that the plaintiffs claimed that taking their property for a baseball stadium violated the "public use" clause of the Fifth Amendment to the United States Constitution because it is inconsistent with the definition of "public use" that the DC Council determined would justify taking their property. We understand that the plaintiffs are arguing that because the Legislation determined that taking their property is only a valid public use of their property for a baseball stadium if certain costs of acquiring that property and infrastructure to build the ballpark will not exceed $165,000,000.

We understand that the Mayor and District have filed a Motion to Dismiss this case, arguing that public use findings justifying confiscation of the property is simply that a baseball stadium will benefit the District, and "[t]here is not a word in either this statute or the "Private or Alternative Stadium Financing and Cost Trigger Emergency Act of 2004 . . . . . ..even faintly suggesting that the 'public use' findings are in any way dependent on whether the re-estimated costs exceed $165 million or not." (Defendants' Memorandum in Support of Motion to Dismiss at 1). We understand that in ruling on the Motion to Dismiss, this Court will be required to identify the public use that the DC Council said justified taking plaintiffs' property.

**POINTS TO CONSIDER**

First, prior to enactment of the Legislation, the Mayor and District had no power to take property for use as a publicly-owned baseball stadium. The District's eminent domain authority at the time was specifically limited to "sites for schoolhouses, fire or police stations, rights-of-way for roads, highways, streets and alleys or parts thereof, rights-of-way for water mains or sewers, or any authorized municipal use ...." DC Official Code § 16-1311. The Agreement with

Major League Baseball specifically acknowledged this. See ¶ 7.01 of Agreement, attached as Exhibit 5 to Plaintiffs' Memorandum is Support of Application for Preliminary Injunction. We respectfully suggest that the deference the Court acknowledges should be afforded the DC Council for purposes of determining the breadth of the grant of power to take private property for public purposes, should also apply to the limits that the DC Council chose to place on that power. *See Kelo v. City of New London*, 125 S. Ct. 2655, 2666 n.13 (2005) ("Had the public use in *Berman* been defined more narrowly, it would have been difficult to justify the taking of the plaintiff's nonblighted department store."). The DC Council narrowly defined the public use justifying confiscation of private property. Neither the DC Council nor the Legislation simply determined that building a stadium on the plaintiffs' properties would be a valid public use; it specifically reflects the Council's view that this is only a valid use of plaintiffs' property if certain costs of doing so are no more than $165,000,000.

Second, we respectfully suggest that the Court should not constrain the deference it gives to the DC Council by limiting its analysis of the DC Council's intent to one sentence in one section of one statute. Rather, the Court should consider the specific language of the entire Legislation. The Legislation authorized acquisition of private property for a ballpark because the DC Council concluded it was a valid public use if it did not cost more than $165,000,000 to acquire the plaintiffs' property, among other things. There is nothing irrational about the DC Council's determination in this respect, and we ask the Court to defer to the Council's determination in this regard.

Third, we recently learned that during the oral argument on the Motion for Preliminary Injunction a colloquy took place in which the Court and counsel for the District discussed how the statute might have been worded. (Transcript of August 5, 2005, Hearing on Motion for

Preliminary Injunction, at 44-46.) We respectfully suggest to the Court that the DC Council, or any Legislature, cannot know exactly what "magic" words will be acceptable to a reviewing court when it seeks to determine the public use that has been articulated to justify taking private property. In our view that is why the Supreme Court counsels deference to these determinations by legislatures.

We ask that the Court recognize and defer to the clear and unambiguous language of the Legislation, which, when combined with the legislative history that is before the Court, makes it irrefutably clear that the DC Council did not believe that a stadium was a valid public use for plaintiffs' property if it was going to cost more than $165,000,000 to acquire the property and infrastructure. As members of the DC Council who, with others, are responsible for drafting legislation, we agree with this Court's observation "that it's the role of the legislature and not the Federal Courts to determine what will serve the public use, and that the legislature's determination is due a good measure of deference."[1] We respectfully note, however, that if the Court decides to dismiss this case based on the premise that the DC Council did not consider the cost associated with taking plaintiffs' property for a stadium to be inextricably linked to its determination that a publicly financed and owned baseball stadium on plaintiffs' property would serve a valid public purpose justifying confiscation of that private property, the Court will be substituting its judgment for that of the DC Council and undermining the Council's very specific decisions in this regard. Finally, we note for the Court's benefit that the District has now admitted that the cost associated with taking plaintiffs' property will be more than $20 million more than the cap contained in the Legislation.

**CONCLUSION**

---

[1] The Court made this observation in a ruling from the Bench on August 5, 2005, which denied the Plaintiffs' Motion for a Preliminary Injunction. See Hearing Transcript at 74.

Amici Councilmembers respectfully request that the Court take these points into account to defer to and preserve the DC Council's unambiguous direction and intent that there is no valid public use that justifies taking the plaintiffs' property to build a stadium if the costs of acquiring such property and infrastructure exceed $165,000,000.

Respectfully submitted,

Dated: October 20, 2005

_____
David A. Catania, Councilmember
Council of the District of Columbia
Room 110
1350 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 724-7772

Dated: October 20, 2005

_____
Jim Graham, Councilmember
Council of the District of Columbia
Room 105
1350 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 724-8181