UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SOUTHEAST LAND DEVELOPMENT ASSOCIATES, L.P., et al. )<br>)<br>Plaintiffs )<br>)<br>v. )<br>)<br>DISTRICT OF COLUMBIA, et al. )<br>)<br>Defendants )<br>) | C.A. No. 05-1413 (RWR) |

REPLY TO PLAINTIFF'S OPPOSITION TO MOTION
BY NON-PARTY BASEBALL EXPOS, L.P. TO QUASH OR
MODIFY SUBPOENA REQUESTING DISCOVERY BY OCTOBER 25, 2005

Non-party Baseball Expos, L.P., known as the Washington Nationals ("Nationals"), through counsel, submits this brief reply to the Plaintiffs' opposition to the Nationals' Motion to Quash or Modify the Subpoena. The Motion to Quash was filed on October 24, 2005.[1]

Plaintiffs argue in their opposition that the mere pendency of the motion to dismiss the underlying case should not preclude their taking discovery from non-parties. However, this is not a matter where a motion to dismiss is merely pending. Rather, Judge

---

[1] Unfortunately, Plaintiffs have mischaracterized their communications with counsel for non-party the Nationals in advance of the filing of the motion to quash. There were several communications among counsel and Plaintiffs were aware as of October 19 that non-party the Nationals were likely to file a motion to quash if Plaintiffs did not agree to defer a response to the subpoena until after Defendants' motions to dismiss and to stay discovery were ruled upon. There were also discussions by October 21 that the motion would be filed on October 24. It is inaccurate for Plaintiffs to imply that they were unaware of the Nationals' intentions until the "eleventh hour." Plaintiffs' counsel was also advised in advance that non-party the Nationals would not appear on October 25 as requested in the subpoena because the Nationals counsel was advised by Judge Roberts' chambers that the Court would deal with the motion to quash on the papers and that counsel should not appear for an emergency hearing on October 24 when the motion was filed. Counsel for the Nationals told Plaintiffs' counsel that the Nationals had taken all reasonable steps to obtain an order prior to the deposition and would, therefore, not appear unless or until the Court ruled.

Roberts has already denied preliminary relief requested by the Plaintiffs and has ruled that they are not likely to succeed on the merits of their alleged constitutional claims. Thus, the likelihood that this matter will be dismissed enhances the undue burden on non-party the Nationals if it is forced to provide discovery to Plaintiffs prior to that motion being ruled upon.

I.   The Court has Already Ruled that Plaintiffs are Not Likely to Succeed

Since filing the Motion to Quash on October 24, 2005, non-party the Nationals has obtained a copy of the transcript of the August 5, 2005 preliminary injunction hearing before the Court. A copy of the transcript is attached as Exhibit 1. After extended argument about Plaintiffs' claims for preliminary relief and the merits of their underlying claims, the Court issued its ruling from the bench rejecting Plaintiffs' claims that the District of Columbia has violated the constitutional public use doctrine.[2] The Court's comments included the following:

> With respect to the substantial likelihood of success on the merits, Plaintiffs have also not shown that they are likely to succeed, in my judgment, on the merits. What the Fifth Amendment prohibits is a sovereign taking property from one party for the sole purpose of transferring it to another private party even though the first party is paid just compensation in one aspect at least.
>
> The plaintiffs certainly are unable to show that the District's conduct, assuming it exercises power of eminent domain, runs afoul of that requirement of the federal takings clause. And a publicly owned stadium meets the Fifth Amendment's public use requirement.
>
> The Supreme Court's recent rulings do reiterate its position on public use jurisprudence and that is that it's the role of the legislature and not the Federal Courts to determine what will serve the public use, and that legislature's determination is due a good measure of deference.

---

[2] *See* Exhibit A, pp. 71-79.

Now, the Ballpark Act relating to public use does plainly say, as everybody concedes: 'The ownership of a publicly financed stadium in the District of Columbia for use primarily for professional athletic team events is a municipal use that is in the interest of and for the benefit of the citizens of the District of Columbia.'

Nothing in the emergency legislation, in my judgment, vitiates that finding. The plaintiffs' hopes for establishing success on the merits, it seems to me, depend on a single critical premise and that is that for the purpose of the ballpark legislation, 'public use' is defined by the $165 million cost trigger built into the District's authorizing emergency legislation. Plaintiffs have argued that if the $165 million estimate cap is exceeded, the District is acting outside of the public use authorization from the council and, therefore, not authorized to take under the takings clause.

But this argument fails to recognize that the public use for Fifth Amendment purposes is not defined by reference to the District's authorizing legislation, but is defined by Supreme Court jurisprudence for Fifth Amendment purposes.

\*   \*   \*   \*

In short, the Court has made clear, and I am quoting from *Midkiff*, that it 'will not substitute its judgment for a legislature's judgment as to what constitutes a public use unless the use be palpably without reasonable foundation. Where the exercise of the eminent domain powers is rationally related to a conceivable public purpose,' the court has never held a compensated taking to be proscribed by the public use clause.[3]

Clearly, the Plaintiffs' argument is that the District has not satisfied and cannot satisfy the $165 million trigger and that, therefore, there is no public use. The Court rejected that claim and also held that, even if true, that does not entitle the Plaintiffs to any relief.

Now, while it may well be the case that the cost trigger will not be fairly met or hasn't been fairly met at this point, those are details that this Court can't enforce as part of a Fifth Amendment analysis. The Fifth Amendment doesn't require an efficient public use or even a public use at reasonable cost; nor is it capable of enforcing

---

[3] *See* Exhibit A at pp. 73-75.

details of local legislation that are more stringent that the Constitution's own use requirements.[4]

Finally, the Court commented further:

I think their dispute really turns on what the District's legislation requires and whether the District has complied with that legislation. And even if the District exercises eminent domain powers to acquire the Plaintiff's property and even if in doing so, the District acts *ultra vires*, there is no indication that the District's conduct is going to offend the takings clause of the Fifth Amendment.

\*   \*   \*   \*

The Fifth Amendment's takings clause requires nothing more than a public use and a just compensation and it does not require that a state executive follow the dictates in particulars of the state legislation outside of the fact that the State or locality has declared public use.[5]

Plaintiffs state that condemnation proceedings began in the District of Columbia Superior Court earlier this week. They concede that those proceedings relate to the acquisition of land for the proposed baseball stadium site, which the D.C. Council has declared a public use. Pursuant to the Court's analysis, the Superior Court proceedings are "rationally related to a conceivable public purpose."

The Court has made it quite clear that the Plaintiffs have not stated an adequate claim for relief and has already denied their request for preliminary injunction. The same issues are presented, although not yet ruled upon, in the dispositive motion to dismiss. Under these circumstances, with little, if any, likelihood that Plaintiffs' claims will survive according to the

---

[4] *See* Exhibit A at p. 76.

[5] *See* Exhibit A at p. 78.

WASH_1488499.1

Court, it would create undue burden to make a non-party produce discovery. It would certainly cause an undue burden to require this before the parties engage in discovery themselves.

It also makes most sense for the Court to rule upon the Defendants' motion to stay discovery before requiring non-parties to produce discovery. However, to the undersigned's understanding, that motion is not yet even fully briefed. It would clearly be burdensome upon non-party the Nationals to have to produce documents and a witness for testimony given the likelihood that this case, or at least discovery, will not continue.

      II.    Discovery From Non-Party the Nationals Would also be Inappropriate if it is Intended to be Used in a Separate Litigation

As noted, the District of Columbia apparently commenced condemnation proceedings as of two days ago. Plaintiffs will presumably have the opportunity in that separate litigation to explore all grounds to challenge the condemnation as well as the value that the District of Columbia has attached to the Plaintiffs' properties. Since there is a substantial likelihood that this case will be dismissed, but that the condemnation case will continue, it would be inappropriate to require non-party the Nationals to provide information in discovery that may only potentially be used in a separate litigation involving the Plaintiffs' property.

      III.    The Plaintiffs' Proffered Reasons for Needing Discovery from Non-Party the National Are Unpersuasive

Plaintiffs suggest that they need discovery from non-party the Nationals for several reasons including because Defendants have filed a motion to stay discovery and have indicated that they will not participate in discovery absent a ruling from the Court denying their motion to stay. Non-party the Nationals respectfully submits that that is an issue between Plaintiffs and Defendants which Plaintiffs have the opportunity to address directly with the Court without burdening third parties. Recalcitrance by a party in providing discovery should not

justify burdening a non-party. If expedited discovery is needed, Plaintiffs should obtain it from the Defendants and they have emphasized their need to do so in a filing yesterday in opposition to the Defendants' motion to stay discovery.

Plaintiffs also suggest that they informed the undersigned that they would be willing to "conditionally modify" and narrow the subpoena to apply only to documents that would not be duplicative of those obtainable from the Defendants. The Nationals question how internal Nationals documents could be relevant to whether or how the Defendants complied with the stadium legislation and raised that point in the Motion to Quash. In any event, the Plaintiffs never modified their requests so, at this point, they seek to enforce the subpoena in its entirety without limitation. Plaintiffs' opposition concedes that their subpoena is indeed duplicative of discovery they can obtain, but have not yet sought, from the Defendants. At a minimum, then, it would create undue burden on the Nationals to respond to the subpoena until after the parties exchange discovery. It is only then that the parties, non-party the Nationals and the Court can assess whether any discovery from the Nationals is appropriate or whether all of it is duplicative of discovery from the Defendants.

Much of the opposition to the motion to quash focuses on allegations about the District of Columbia's intent regarding the proposed site or other sites considered by the Defendants. However, Plaintiffs argument, as fully explored in the August 5 hearing on its request for issuance of a preliminary injunction, and the allegations in the Complaint focus on whether exceeding the $165 million cap negates the public use nature of the proposed baseball stadium. There are no allegations of intent. Plaintiffs have presented a purely legal question of the Defendants' legal authority under the stadium legislation. Moreover, even if the Defendants' intent is relevant, Plaintiffs should pursue that theory in discovery with the Defendants and not

WASH_1488499.1

embark on a fishing expedition with non-party the Nationals for what might have been discussed by the Nationals "amongst themselves" about other possible stadium sites.[6]

Another illustration of the Plaintiffs seeking from the Nationals what they can obtain from others is the reference to Deloitte & Touche. Plaintiffs argue that if Deloitte & Touche had a relationship with Major League Baseball, Deloitte & Touche "may have had an incentive" to, essentially, write a report which "intentionally underestimated the land acquisition and infrastructure costs."[7] Shouldn't the Plaintiffs request discovery about Deloitte & Touche's report, its intent, incentives and motivations from Deloitte itself?

## **CONCLUSION**

Based on all of the foregoing, non-party the Nationals respectfully requests that the subpoena be quashed or modified including to require compliance, if at all, only after the Court has ruled on the pending motions to stay discovery and/or to dismiss because the granting of either motion will render the subpoena moot and relieve non-party the Nationals of any obligation to respond.

Dated: October 28, 2005

---

[6] Counsel's suggestion that non-party the Nationals did not object to the document request in the subpoena is curious since they then go on in their opposition brief to address the objections which were made pursuant to Rule 45(c).

[7] *See* Opposition at pp. 4-5.

Respectfully submitted,


_____*PAUL  R.  MONSEES*_____
Paul R. Monsees, D.C. Bar No. 367138
Akita Adkins, D.C. Bar No. 489446
FOLEY & LARDNER, LLP
Suite 500
3000 K Street, N.W.
Washington, D.C. 20007
(202) 672-5300

Counsel for Non-Party Washington Nationals/
Baseball Expos, L.P.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that copies of the foregoing Response to Opposition to Motion by Non-Party Baseball Expos, L.P. to Quash or Modify Subpoena Requesting Discovery by October 25, 2005 were served, via electronic mail, this 28th day of October, 2005 on:

Barry M. Hartman, Esq.
Christopher E. Dominguez, Esq.
Kirkpatrick & Lockhart, Nicholson Graham
1800 Massachusetts Avenue, N.W.
Washington, D.C. 20036
bhartman@klng.com
cdominguez@klng.com


Daniel A. Rezneck, Esq.
Assistant Attorney General
Office of the Attorney General
One Judiciary Square
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001
daniel.rezneck@dc.gov


John Jay Range, Esq.
Hunton & Williams
1900 K Street, N.W.
Washington, D.C. 20006
jrange@hunton.com


_____*PAUL R. MONSEES*_____
Paul R. Monsees
Counsel for non-party Baseball Expos, L.P.